James S. Yu (JY-9734)
Andrew T. Hahn, Esq. (AH-6283)
SEYFARTH SHAW LLP
1270 Avenue of the Americas, Suite 2500
New York, New York 10020-1801
(212) 218-5500

ORIGINAL

William L. Prickett (To be admitted *pro hac vice*)
Heidsha Sheldon (To be admitted *pro hac vice*)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA  02210-2028

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   DEC 0 4 2006   ★

BROOKLYN OFFICE

Attorneys for Plaintiff Travel Sentry, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

TRAVEL SENTRY, INC.,

      Plaintiff,

    vs.

DAVID A. TROPP,

      Defendant.

---------------------------------------------------------------x

CV 06 6415

Civil Action No. _____ VITALIANO, J.

**COMPLAINT**   MANN, M.J.

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DECLARATORY JUDGMENT OF
## PATENT NONINFRINGEMENT, INVALIDITY, AND NON-LIABILITY

Plaintiff, Travel Sentry, Inc. ("Travel Sentry"), through its undersigned counsel, brings

this Complaint against David A. Tropp ("Tropp" or "Defendant") and respectfully states and

alleges as follows:

## PARTIES

1.      Plaintiff, Travel Sentry, Inc., is a Florida corporation, having its principal place of business at 19 Deer Meadow Road, Durham, NH 03824.

2.      Upon information and belief, David Tropp ("Tropp") is a citizen of New York residing at 165 Norfolk Street, Brooklyn, New York.

## JURISDICTION AND VENUE

3.      This is an action for declaratory judgment.  There is an actual controversy between the parties with regard to the invalidity, noninfringement, and non-liability of United States Patent Nos. 7,021,537 (the "'537 Patent") and 7,036,728 (the " '728 Patent").  Defendant or those acting for Defendant have created a reasonable apprehension of a suit for infringement of the '537 and '728 Patents with respect to Plaintiff's ability to license or to make, use, or sell at least some of its technology, products and/or services.  Defendant's position as to Travel Sentry's alleged infringement of the '537 and '728 Patents is outlined in a letter from Steve Horowitz, Esq. to Travel Sentry dated November 17, 2003, which is attached as **Exhibit A**.  This Court has subject matter jurisdiction in accordance with 28 U.S.C. § 2201, 2202, and 1338.

4.      Defendant resides and does business within this district.  Accordingly, venue is proper under 28 U.S.C. § 1391.

5.      Upon information and belief, Tropp is the named inventor of the '537 Patent entitled "Method of Improving Airline Luggage Inspection;" issued April 4, 2006.  The '537 Patent is attached as **Exhibit B**.

6.      Upon information and belief, Tropp is also the named inventor of the '728 Patent entitled "Method of Improving Airline Luggage Inspection;" issued May 2, 2006.  The '728 Patent is attached as **Exhibit C**.

2

7.     Travel Sentry's business includes the licensing of its travel lock technology for luggage which uses a dual lock system that allows access only by the luggage owner and by TSA baggage screeners through a set of standard, proprietary keys developed by Travel Sentry for TSA use.

## COUNT I

### DECLARATION OF INVALIDITY
### UNITED STATES PATENT NOS. 7,021,537 and 7,036,728

8.     The '537 and '728 Patents are invalid, at least for failure to comply with the provisions of 35 U.S.C. § 101, 102, 103, and/or 112.

## COUNT II

### DECLARATION OF NON-LIABILITY
### UNITED STATES PATENT NOS. 7,021,537 and 7,036,728

9.     Travel Sentry is not liable for infringement of the '537 and '728 Patents to the extent that Defendant's threatened suit for infringement is barred by the doctrines of laches, estoppel, acquiescence, license and waiver, inequitable conduct before the U.S. Patent and Trademark Office, intervening rights, and/or a statute of limitations.

10.    Travel Sentry is further immune from liability for infringement of the '537 and '728 Patents because one or more steps in the use of Travel Sentry's technology are performed by an agency of the U.S. Government, the TSA.  Accordingly, under 28 U.S.C. § 1498, Defendant's sole remedy for any claim of infringement lies against the United States Government and not Travel Sentry.

3

## COUNT III

DECLARATION OF NONINFRINGEMENT
UNITED STATES PATENT NOS. 7,021,537 and 7,036,728

11.     Travel Sentry's licensed technology for dual locking systems for use in TSA baggage screening processes does not infringe any valid claim of the '537 or '728 Patents. Moreover, Travel Sentry does not make, use or sell the technology which Defendant claims infringes the '537 or '728 Patents.

12.     Accordingly, Travel Sentry has not infringed, and has not contributorily infringed, or induced infringement of the '537 or '728 Patents.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) Travel Sentry requests a trial by Jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     Declaratory judgment stating that:

    a.     United States Patent Nos. 7,021,537 and 7,036,728 are not infringed, contributorily infringed, or infringed though inducement by Travel Sentry;

    b.     United States Patent Nos. 7,021,537 and 7,036,728 are invalid;

    c.     Defendant is without the right or authority to threaten or maintain suit against Travel Sentry for the alleged infringement of United States Patent Nos. 7,021,537 or 7,036,728; and

    d.     Defendant, and those in active concert or participation with Defendant who receive actual notice thereof, are permanently enjoined from initiating patent infringement litigation against Travel Sentry, or threatening Travel Sentry or any of its customers, dealers,

licensees, agents, servants, or employees, or any prospective or present sellers, dealers, licensees, distributors, customers, or users of Travel Sentry's technology (other than the U.S. Government), with patent infringement litigation based on U.S. Patent Nos. 7,021,537 or 7,036,728 charging any of them either verbally or in writing with infringement of U.S. Patent Nos. 7,021,537 or 7,036,728.

     2.     An order awarding Travel Sentry its costs in addition to its attorneys' fees, in accordance with 35 U.S.C. § 285, and otherwise according to law.

     3.     Such other and further relief as this Court may deem just and equitable.

Dated: New York, New York        **SEYFARTH SHAW LLP**
       December 4, 2006

James S. Yu (JY-9734)
Andrew T. Hahn (AH-6283)
1270 Avenue of the Americas
Suite 2500
New York, New York 10020-1801
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

William L. Prickett (To be admitted *pro hac vice*)
Heidsha Sheldon (To be admitted *pro hac* vice)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800
Facsimile:  (617) 946-4801

## STEVEN HOROWITZ

COUNSELOR AT LAW

295 MADISON AVENUE

SUITE 700

NEW YORK, NEW YORK 10017

TELEPHONE (212) 867-6800

REGISTERED TO PRACTICE BEFORE
U.S. PATENT & TRADEMARK OFFICE

FACSIMILE (212) 685-6962
E-MAIL: patentattorney@aol.com

November 17, 2003

By Fax and By Fed Ex

John Ware Vermilye
Managing Director
Travel Sentry LLC a/k/a Travel Sentry
2020 Pennsylvania Avenue, Suite 727
Washington, D.C. 20006

Travel Sentry LLC a/k/a Travel Sentry
2228 Fountain Key Circle
Suite 100
Windermere, FL 34786

Re: Misappropriation of David Tropp's Trade Secrets

Dear Mr. Vermilye:

My client, David Tropp, sent a confidential proposal to the Transportation Security Administration ("TSA") detailing his proprietary invention, which is a method of making luggage screening by the TSA more secure while accommodating the needs of the traveler. The idea includes making a special lock available to airline travelers, the special lock having a combination or other lock portion along with a master key lock portion, the master key lock portion receiving a master key that can open the master key lock portion of any special lock of this type. The TSA obtains exclusive access to the master key, although the manufacturers who provide the lock and key can retain access. The special lock is designed to be used on airline luggage and has indicia thereon conveying to luggage purchasers and to the TSA that the luggage can be opened by the master key. Other details and/or variations of the invention were also disclosed to the TSA.

Mr. Tropp, who is in his early 20's, sent his invention proposal to the TSA after seeing on the TSA's web site at page 6 of the TSA's "Unsolicited proposal Manual" section "V. Treatment of Data in Unsolicited Proposals" the fact that disclosure of such proposals should contain a "Required Legend" to the effect that "*this data shall not be disclosed outside the Government and shall not be duplicated, used or disclosed, in whole or in part, for any purpose other than*

-1-

DT0069

*evaluation of the proposal, provided that if a contract is awarded to this offeror as a result of or in connection with the submission of this data, the government shall have the right to duplicate, use, or disclose the data to the extend [sic] provided in the contract. This restriction does not limit the Government's right to use information contained in the data if it is obtainable from another source without restriction. The data subject to this restriction is contained on sheet number(s) ....*" This "Required Legend" or a reference to it appears on every page of the invention proposal that Mr. Tropp sent to the TSA last January. Accordingly, the TSA was obligated to maintain Mr. Tropp's invention and trade secret confidentially and not to use it unless an agreement was entered into.

You were a consultant to the TSA with respect to baggage and customer service initiatives during the time Mr. Tropp's idea was submitted to the TSA and undoubtedly had access to Mr. Tropp's innovation. Furthermore, based on information obtained through your web site, it is clear that your involvement with the Travel Sentry checked baggage project began in March 2003, several months after Mr. Tropp submitted the same idea to the TSA. A Press Release dated March 26, 2003 captioned "Travel Sentry launches partnership with the Travel Goods Association (TGA)" downloaded from your web site, states:

> "Travel Sentry is a new concept created in cooperation with the US Transportation Security Administration and the Travel Goods Association."

Although the March 26, 2003 Press Release was inexplicably removed from Travel Sentry's web site (and similar one from the TGA's web site) shortly after my client first complained to the TSA about misappropriation in October 2003, my client already had downloaded the revealing information contained therein. In addition, the following statement also appeared on the Travel Sentry web site: "[t]he Travel Goods Association, comprising lock and luggage manufacturers has worked with the Transportation Security Administration to create Travel Sentry and solve the conflicting needs of the government to screen baggage and of the passengers to be able to lock their bags."

Travel Sentry's "new concept" comes directly from David Tropp's confidential invention proposal that he sent to the TSA and that is patent pending. Yet, beginning a few days ago your company, Travel Sentry, has begun providing and certifying a special multi-access lock that is being made available to airline travelers by having manufacturing companies produce for use on airline luggage this multi-access lock that includes a master key lock portion opened by a master key, which master key is exclusively accessible by the TSA. It is apparent that Travel Sentry and you, along with the TSA, misappropriated Mr. Tropp's idea and are continuing to misappropriate it through your company, Travel Sentry, in conjunction with luggage manufacturing companies by using the very same idea submitted by Mr. Tropp to the TSA.

Please be advised that the evidence presented here that the Travel Sentry project is an unlawful misappropriation of Mr. Tropp's confidential invention proposal is only partial. My client and I have other strong evidence of this in our possession which will be provided at the

DT00'

proper time.

Travel Sentry's and your own continued misappropriation are unlawful, violate Mr. Tropp's common law trade secret rights and subject you and your company to damages and equitable relief. Moreover, to the extent that Travel Sentry's and your conduct is or was willful, Travel Sentry and you may be subjected to punitive damages. Furthermore, when Mr. Tropp's United States patent on his invention is issued, as we expect it to, Travel Sentry and you will be either engaging in patent infringement or working with entities that are engaging in patent infringement.

Travel Sentry's and your actions are continuing and subject both of you to accumulating damages and the award of injunctive relief, including preliminary injunctive relief. Consequently, it is hereby demanded of Travel Sentry and of you to immediately cease and desist from any further implementation of the Travel Sentry project and use of David Tropp's misappropriated invention since this project unlawfully uses Mr. Tropp's proprietary (and patent pending) method of luggage inspection that he disclosed to the TSA, the very agency that helped create Travel Sentry according to Travel Sentry's web site.

In order to ensure you the maximum opportunity to resolve this matter prior to litigation, Mr. Tropp will give Travel Sentry a short opportunity from its receipt of this letter in which to respond to this letter in a manner that makes it clear that Travel Sentry and you fully respect Mr. Tropp's intellectual property rights. Please be advised that short of this, I have been instructed to take all steps necessary in order to protect Mr. Tropp's intellectual property rights, including, if necessary, commencing litigation and requesting preliminary injunction relief.

Please be advised that Mr. Tropp expressly reserves all of his rights in regard to this matter and this letter shall not constitute or be construed to in any way constitute a waiver of any rights of Mr. Tropp.

Very truly yours,

Steven Horowitz

-3-

DT0071

*Exhibit B*

US007021537B2

(12) **United States Patent**

Tropp

(10) Patent No.: **US 7,021,537 B2**

(45) Date of Patent: **Apr. 4, 2006**

(54) **METHOD OF IMPROVING AIRLINE LUGGAGE INSPECTION**

(76) Inventor: **David Tropp**, 165 Norfolk St., Brooklyn, NY (US) 11235

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 8 days.

(21) Appl. No.: 10/706,500

(22) Filed: **Nov. 12, 2003**

(65) **Prior Publication Data**

US 2005/0098629 A1    May 12, 2005

(51) **Int. Cl.**
G07B 15/02    (2006.01)
(52) **U.S. Cl.** .......................... 235/384; 70/284; 283/72
(58) **Field of Classification Search** ............... 235/384, 235/382, 380; 70/284–285, 56, 278, 312, 70/331, 446; 283/68–69, 74, 80
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,932,559 A * | 4/1976 | Atkinson | 70/25 |
| 4,055,972 A | 11/1977 | Calegan | |
| 4,137,567 A | 1/1979 | Gribe | 364/567 |
| 4,499,745 A | 2/1985 | Ricourd et al. | 70/285 |
| 4,557,122 A | 12/1985 | Hwang | 70/312 |
| 4,671,088 A | 6/1987 | Jeang | 70/312 |
| 4,751,830 A * | 6/1988 | Cheng | 70/25 |
| 4,770,013 A | 9/1988 | Nakai | 70/285 |
| 4,838,052 A * | 6/1989 | Williams et al. | 70/63 |
| 4,866,958 A * | 9/1989 | Brefl et al. | 70/25 |
| 4,885,923 A | 12/1989 | Nakai | 70/284 |
| 4,952,228 A * | 8/1990 | Taylor et al. | 70/25 |
| 5,089,692 A | 2/1992 | Tonnesson | 235/382.5 |
| 5,134,869 A * | 8/1992 | Gable | 70/63 |
| 5,237,842 A | 8/1993 | Rasch et al. | 70/285 |
| 5,274,356 A | 12/1993 | Taricco | 340/515 |
| 5,345,798 A | 9/1994 | Nakai | 70/284 |

| | | | |
|---|---|---|---|
| 5,485,734 A | 1/1996 | Yang | 70/285 |
| 5,507,161 A | 4/1996 | Broekaert et al. | 70/71 |
| 5,582,049 A | 12/1996 | Mauer | 70/312 |
| 5,737,947 A * | 4/1998 | Ling | 70/63 |
| 6,173,592 B1 | 1/2001 | Yu | 70/69 |
| 6,508,089 B1 | 1/2003 | Tsai | 70/213 |
| 6,513,356 B1 | 2/2003 | Yang | 70/213 |

(Continued)

FOREIGN PATENT DOCUMENTS

EP    414165    2/1991

(Continued)

OTHER PUBLICATIONS

Travel Sentry Press Release, Nov. 12, 2003.*

(Continued)

*Primary Examiner*—Thien M. Le
*Assistant Examiner*—Edwyn Labaze
(74) *Attorney, Agent, or Firm*—Steven Horowitz

(57)    **ABSTRACT**

Method of making airline luggage inspection secure while accommodating the needs of the traveler comprises making a special lock available to airline travelers, the special lock having a combination lock portion and a master key lock, the master key lock portion receiving a master key that can open the master key lock portion of any special lock of this type. The special lock is designed to be applied to an individual piece of airline luggage and has an indicia thereon conveying to luggage purchasers that the special lock is "approved" by a luggage screening authority and conveying to the luggage screening authority that the special lock can be opened using the master key. The method includes providing the luggage screening authority directly or indirectly with exclusive access to the master key. The manufacturers and/or providers of the master key and special lock retain copies of the master key.

**21 Claims, 2 Drawing Sheets**



**US 7,021,537 B2**

Page 2

---

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,522,253 B1 * | 2/2003 | Saltus | 340/571 |
| 6,557,384 B1 | 5/2003 | Cuozta | |
| 6,568,225 B1 | 5/2003 | Chang | 70/69 |
| 6,598,434 B1 | 7/2003 | Yang | 70/213 |
| 2002/0129628 A1 | 9/2002 | Skalberg | 70/213 |
| 2002/0139155 A1 | 10/2002 | Franzen | 70/18 |
| 2002/0198731 A1 | 12/2002 | Barnes et al. | 705/1 |
| 2003/0089147 A1 | 5/2003 | Yang | 70/284 |
| 2004/0246096 A1 * | 12/2004 | Queenan | 340/5.61 |
| 2005/0081584 A1 | 4/2005 | Nugent | |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| FR | 2686493 | 7/1993 |
| WO | WO 03/003144 A2 | 1/2003 |

### OTHER PUBLICATIONS

The Eastern Company Reports Results for the 1st Quarter 2004, and 3rd Quarter 2003.*
CCL Security Products News Release, Nov. 12, 2003.*
Portside ™ Samsonite ™ 's New Lightweight Hardside, Nov. 12, 2003.*
The Travel Insider, Nov. 26, 2003.*

Brookstone Launches New Federally Recognized Travel Sentry™ Certified Luggage locks, Nov. 12, 2003.*
Travel Sentry Certified Locks by Austin House.*
SearchAlert classic.*
Transportation Security Administration Accepted and Recognized Locks.*
Jeffrey Leib, The Denver Post Knight Ridder/Tibune Business News (02891294 Supplier No.: 95623148; Dec. 19, 2002).*
Article "Making up for the Blackout" by Audrey Warren, The Wall Street Journal, Aug. 20, 2003.
"TSA Under Pressure To Stop Baggage Theft" by Sara Kehaulani Goo at washingtonpost.com, Jun. 2003.
"Be prepared for hand searches of luggage", by Engle, Los Angeles Times, Apr. 2003.
"Paris airport arms find: Man held" at cnn.com, Jan. 2003.
"FLiers flood TSA with inspection gripes" by De Lollis, at USA Today, Jul. 2003.
"Even how you secure Luggage has changed" by De Lollis at USA Today, Aug. 2003.
"Getting Back the Business", www.travelsentry.org Aug. 2003.

* cited by examiner

**U.S. Patent**          Apr. 4, 2006          **Sheet 1 of 2**          **US 7,021,537 B2**



**U.S. Patent**          Apr. 4, 2006          **Sheet 2 of 2**          **US 7,021,537 B2**



FIG.3

COMBINATION
CODE

FIG.4

ww.freepatentsonline.com

US 7,021,537 B2

1

## METHOD OF IMPROVING AIRLINE LUGGAGE INSPECTION

### FIELD OF THE INVENTION

The field of this invention is methods of improving airline luggage inspection, and more particularly, methods of making such inspection less intrusive and more secure.

### BACKGROUND OF THE INVENTION AND DISCUSSION OF THE PRIOR ART

Due to the threat of terrorism, in the weeks prior to Jan. 1, 2003, the Transportation Security Administration ("TSA"), a division of the United States Department of Homeland Security, announced that with respect to luggage at United States airports if a TSA baggage screener was unable to open a traveler's bag for inspection because the bag was locked, the screener would have to break the locks on the traveler's bag. Hence, passengers should leave their bags unlocked, according to the TSA. Beginning Jan. 1, 2003 the TSA's federal workers started screening luggage at U.S. airports and when it deemed it necessary it started clipping locks on this luggage in order to open and inspect the luggage.

Since by definition airport luggage screening occurs outside the presence of the passengers whose luggage is being inspected, it is impossible or at least impractical for airport luggage screening personnel to make use of combinations to open combination locks on airport luggage. Nonetheless, passengers may desire to use combination locks to avoid worrying about loss of a key or finding the key.

Although arguably necessary for security, the method of screening luggage that includes opening the passenger's luggage in a manner that leaves the luggage "unlockable" after the inspection process, for example by clipping the heretofore workable lock, suffers from several drawbacks. First, the passenger's belongings have been damaged either because the lock has been clipped or because the luggage has been opened forcibly or both. This causes monetary damage. it also causes aggravation. Second, a new security hazard is generated since the passenger gets back a piece of luggage with a broken or removed lock. This means that during the remainder of the passenger's trip his or her luggage is not secure and can be tampered with. The remainder of the trip may even include further domestic flights. Furthermore, if travelers consistently have their locks broken, travelers will see no value in using locks when traveling, thereby exposing their unlocked luggage to a constant risk of tampering.

One should not assume that security risks exist only among passengers. Terrorists have tried in the past and may try in the future to compromise the workers at the airports who inspect luggage. Accordingly, the no longer secure piece of luggage is subject to the risk that a terrorist or other dangerous person who is within the area of the airport luggage screening personnel—because he is a worker or because he penetrated the secure area—can insert a bomb or other hazardous material into the luggage by easily opening it since it not only does not have a lock anymore but its outward appearance, i.e. a damaged lock, may advertise that it has been tampered with and be easily opened.

Furthermore, the sale of padlocks plummeted after the TSA began the practice of clipping locks. Another thing that happened was that the number of claims for theft and damage allegedly caused by the government and/or airline personnel to passengers' luggage increased significantly since Jan. 1, 2003.

2

Another problem is that passengers are concerned about theft of the contents of their bags without the protection of locks (after their locks have been rendered useless by the luggage screening authorities)

Travelers understand and support the federal government's initiatives to thwart terrorism. This support of security regulations and procedures on the part of travelers is critical to their implementation and success. However, travelers, just getting accustomed to the new security laws, may have legitimate concerns about baggage inspections. It is crucial that the government or appropriate authorities act to diminish travelers' concerns in this regard.

In addition, working as a TSA luggage screener is a highly demanding and stressful job. Therefore, anything that reduces the physical strain would be highly appreciated by the screeners.

It should be born in mind that the number of airline travelers who pass through airports in the United States in a given year is close to half a billion. Thus, these concerns affect a great many individuals.

Accordingly, there is a compelling and immediate need for a method of inspecting luggage at airports that does not create a security risk and that is not damaging or aggravating to the passengers.

### SUMMARY OF THE PRESENT INVENTION

The present invention presents a method of making airline luggage inspection secure while accommodating the needs of the traveler includes a first step of making a special lock available to airline travelers, the special lock having a combination lock portion and a master key lock, the master key lock portion for receiving a master key that can open the master key lock portion of any special lock of this type. The special lock is designed to be applied to an individual piece of airline luggage and has an indicia thereon conveying to luggage purchasers that the special lock is "approved" by a luggage screening authority and conveying to the luggage screening authority that the special lock can be opened using the master key. Then providing the luggage screening authority with exclusive access to the master key. The manufacturers and/or providers of the master key and special lock retain copies of the master key. In accordance with the method of the present invention, therefore, the luggage screening authority need not clip or otherwise break open locks to inspect luggage, nor do they have to break into the luggage in some other manner. The workers need only be told that master keys are available to open locks that have the indicia on them.

### IMPORTANT OBJECTS AND ADVANTAGES

The following important objects and advantages of the present invention are:

(1) to provide a method of screening luggage at airports that avoids forcible opening of the luggage;

(2) to provide a method of screening luggage at airports that employs special locks that remain viable after being subjected to airport luggage screening and inspection;

(3) to provide a method of non-intrusively searching passengers' luggage at airports;

(4) to provide a method of screening luggage that uses a master key exclusively maintained by the luggage screening authority;

(5) to provide a method of improving luggage screening at airports that avoids the need for clipping the locks on passenger luggage;

US 7,021,537 B2

3

(6) to provide a method of screening luggage at airports that eliminates a potential security threat of tampering with broken-into luggage or luggage whose locks have been broken;

(7) to provide a method of luggage screening that reduces the costs of the luggage screening authority;

(8) to provide a method of luggage screening that eliminates the need for lock clippers;

(9) to provide a luggage screening method that reduces injuries to luggage screeners that may arise from clipping locks;

(10) to provide an improved method of luggage screening at airports that requires essentially no new training;

(11) to provide a method of airport luggage screening that reduces the liability to the luggage screening authority;

(12) to provide an improved method of luggage screening that would not interfere with current policy of the luggage screening authority in that luggage locks could still be clipped if they did not display the indicia conveying that were "TSA approved" or authorized;

(13) to provide a luggage screening method that decreases the labor of luggage screeners in that opening the special lock of the method of the present invention requires less manual labor than breaking locks;

(14) to provide a method of luggage screening that provides a public relations benefit to the TSA or luggage screening authority in that travelers will appreciate the TSA or luggage screening authority's concern for their personal property, an important benefit for new agency;

(15) to provide a method of airport luggage screening that allows the luggage screening authority to get its work done more efficiently;

(16) to provide a method of airport luggage screening that allows a thorough search of the passenger's luggage while at the same time providing a less intrusive and more comfortable search to the passenger;

(17) to provide a method of screening luggage at airports that eliminates the danger of tampering with luggage that has been broken into subsequent to the screening process; and

(18) to provide a method that eliminates the need to break into the luggage at a point other than its lock.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front plan view of one embodiment of the special lock used in the method of the present invention in open position modified to show a key hole for a master key on the bottom.

FIG. 2 is a front plan view of a second embodiment of the special lock used in the method of the present invention.

FIG. 3 is a front plan view of a second embodiment of the special lock used in the method of the present invention modified to show a key hole for a master key on the bottom.

FIG. 4 shows the special lock depicted in FIG. 1 in closed position.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

The method of the present invention includes the step of making a special lock available to airline travelers, the special lock having a combination lock portion and having a master key lock, the master key lock portion for receiving a master key that can open the master key lock portion of any special lock of this type, the special lock designed to be applied to an individual piece of airline luggage. The special

4

lock also has indicia thereon conveying to luggage purchasers and to the luggage screening authority that the special lock is a lock that the luggage screening authority has agreed not to break. The indicia can state, for example, that the special lock is "approved", "accepted" or "authorized" by the luggage screening authority. Besides making the special lock more valuable to prospective luggage purchasers or lock purchasers, such indicia also tells the luggage screening authority that the special lock can be opened by the luggage screening authority using the master key and that the special lock is among those locks that the luggage screening authority agrees not to break in order to inspect the luggage. The phrase "approved", "accepted" or "authorized" is a broad phrase intended to include other words or terms that signify that the luggage screening authority agrees that locks having such indicia will not be broken into.

The method of the present invention also includes the step of providing the luggage screening authority, directly or indirectly, with access to the master key. The access is to be exclusive except that one or more of the following entities may retain copies of the master key: the manufacturer of the special lock, since it may need to retool the special lock, the provider to the passengers of the special lock, which may or may not be the same as the manufacturers, and/or the provider of the master key to the luggage screening authority. It is anticipated that the manufacturer of the special lock will also provide the master key but other possibilities are also contemplated by the present invention.

Access to the master key by the luggage screening authority includes having access to any appropriate number of such master keys by its workers or by any appropriate division of part of said luggage screening authority.

Although the present invention is a method of improving the inspection of airline luggage, the method of the present invention makes use of an apparatus. This apparatus is a special lock. The special lock is illustrated by reference to the accompanying drawings. Consequently, the special lock used in the method of the present invention has been assigned reference numeral 10 Other elements have been assigned the reference numerals referred to below.

Combination locks have certain advantages over locks with keys. For one thing, there is no need to fear loss of the key hence, it is advantageous to have combination locks on luggage used to fly with since flights tend to cause stress and stress can lead to loss of the key. Second, even if one has the key it takes time to retrieve it. If the luggage has to be opened suddenly then retrieval of the key is an inconvenience. Although combination locks require memorization of access to the coded combination, this is usually considered better than a key lock on balance to many passengers. Hence, there is a need for a method of improving luggage screening at airports that makes of a special lock that includes a unique combination but that is nonetheless convenient and secure for the passengers and for the airport luggage screening personnel.

As seen from FIGS. 1–4, special lock 10 includes a combination lock portion 20 having a unique combination and a master key lock. The master key lock portion is opened by a master key that is inserted in key hole 30. Typically, although not necessarily, the key hole would be inconspicuously placed on the bottom of the special lock 10. The combination lock portion can be any kind of combination lock portion suitable for use with a piece of luggage at an airport. The combination can be a front dial that is turned or several dials that are turned to set the combination.

Presently, the Transportation Security Administration, a division of the United States Department of Homeland

US 7,021,537 B2

5

Security has the task of screening travelers' luggage at airports. However, the term "luggage screening authority" is intended broadly to encompass both the Transportation Security Administration and any governmental entity or non-governmental organization whose task includes screening the luggage of travelers' at airports in the United States or a non-governmental organization. Furthermore, the luggage screening authority is also intended to broadly include individual workers who screen luggage at airports and other personnel of the TSA or of some other entity or organization whose task it is to screen such luggage.

Thus, the master key allows the authorized agency's workers to have the ability to open any of the luggage that the workers inspect in a manner without clipping the lock. The indicia notifies the luggage screening authority which pieces of luggage has locks that lock the master key opens and it notifying purchasers of the special lock of an added value of the special lock. Market research exists to support the fact that customers will spend significantly more on luggage if they know that it comes with a lock that the luggage screening authorities such as the TSA recognize as being openable by their master key and without forcibly opening the luggage.

As seen in FIG. 2, the indicia 50 can take the form of a phrase "approved by the TSA" or any similar phrase or it can be anything else that conveys the approval, authority, acceptance etc. by the TSA or other relevant luggage screening authority. It should be understood that although one example of the indicia appears in FIG. 2 only, the other embodiments of the special lock used in the method of the present invention would also have the indicia.

It should be noted that with the use of the special lock by the traveler, the traveler still selects a combination for the combination lock portion of the special lock 10 and the traveler has that combination for the combination lock portion part of the special lock. Accordingly, the traveler still has a useful secure lock after passing airport security. In addition, the luggage screening authority still maintains an effective and quick way of accessing airport luggage for inspection whenever it deems doing so necessary.

It should be noted that the terms "master key" and "master key lock portion" are broad terms intended to also include electronic or other sensor mechanisms for opening up the master key lock portion in special lock 10. Thus, the method of the present invention contemplates using in certain embodiments a special lock 10 that makes use of an electronic sensor instead of a traditional physical key even though such a traditional physical key is what is typically understood by the term "master key". In such a case the locking mechanism inside special lock 10 would not be a traditional master key lock mechanism but rather would be a locking mechanism that is opened by an electronic sensor.

The present invention also contemplates that in certain embodiments other lock mechanisms besides a traditional combination lock can be used as one of the locks in special lock 10. Hence, in an alternative embodiment, the method would employ a first lock portion instead of a combination lock portion in special lock 10. The first lock portion can be any kind of locking mechanism useful for and easily accessible by the passenger.

It is to be understood that while the method of this invention have been described and illustrated in detail, the above-described embodiments are simply illustrative of the principles of the invention. It is to be understood also that various other modifications and changes may be devised by those skilled in the art which will embody the principles of the invention and fall within the spirit and scope thereof. It

6

is not desired to limit the invention to the exact construction and operation shown and described. The spirit and scope of this invention are limited only by the spirit and scope of the following claims.

What is claimed is:

1. A method of improving airline luggage inspection by a luggage screening entity, comprising:

making available to consumers a special lock having a combination lock portion and a master key lock portion, the master key lock portion for receiving a master key that can open the master key lock portion of this special lock, the special lock designed to be applied to an individual piece of airline luggage, the special lock also having an identification structure associated therewith that matches an identification structure previously provided to the luggage screening entity, which special lock the luggage screening entity has agreed to process in accordance with a special procedure,

marketing the special lock to the consumers in a manner that conveys to the consumers that the special lock will be subjected by the luggage screening entity to the special procedure,

the identification structure signaling to a luggage screener of the luggage screening entity who is screening luggage that the luggage screening entity has agreed to subject the special lock associated with the identification structure to the special procedure and that the luggage screening entity has a master key that opens the special lock, and

the luggage screening entity acting pursuant to a prior agreement to look for the identification structure while screening luggage and, upon finding said identification structure on an individual piece of luggage, to use the master key previously provided to the luggage screening entity to, if necessary, open the individual piece of luggage.

2. The method of claim 1, wherein the master key lock portion includes a key hole on a bottom of the special lock that receives the master key.

3. The method of claim 1, wherein a step of making available to consumers a special lock involves mass producing the special lock and selling the special lock to the consumers.

4. The method of claim 1, wherein the identification structure is located directly on the special lock.

5. The method of claim 1, wherein a step of making available to consumers a special lock involves mass producing the special lock and selling the special lock to the consumers.

6. The method of claim 1, wherein the identification structure is integrally formed with the special lock.

7. The method of claim 6, wherein the signaling involves a visual signal.

8. The method of claim 1, wherein the signaling involves a visual signal.

9. A method of improving airline luggage inspection by a luggage screening entity, comprising:

making available to consumers a special lock having a first lock portion and a master key lock portion, the master key lock portion for receiving a master key that can open the master key lock portion of this special lock, the special lock designed to be applied to an individual piece of airline luggage, the special lock also having an identification structure associated therewith that matches an identification structure previously provided to the luggage screening entity, which special

US 7,021,537 B2

7

lock the luggage screening entity has agreed to process in accordance with a special procedure,

marketing the special lock to the consumers in a manner that conveys to the consumers that the special lock will be subjected by the luggage screening entity to the special procedure,

the identification structure signaling to a luggage screener of the luggage screening entity who is screening luggage that the luggage screening entity has agreed to subject the special lock associated with the identification structure to the special procedure and that the luggage screening entity has a master key that opens the special lock, and

the luggage screening entity acting pursuant to a prior agreement to look for the identification structure while screening luggage and, upon finding said identification structure on an individual piece of luggage, to use the master key previously provided to the luggage screening entity to, if necessary, open the individual piece of luggage.

10. The method of claim 4, wherein the identification structure is located directly on the special lock.

11. The method of claim 9, wherein the identification structure is integrally formed with the special lock.

12. The method of claim 11, wherein the signaling involves a visual signal.

13. The method of claim 9, wherein the signaling involves a visual signal.

14. A method of improving airline luggage inspection by a luggage screening entity, comprising:

making available to consumers a special lock having a combination lock portion and a master key lock portion, the master key lock portion for receiving a master key that can open the master key lock portion of this special lock, the special lock designed to be applied to an individual piece of airline luggage, the special lock also having an identification structure associated therewith that corresponds with a corresponding identification structure previously provided to the luggage screening entity, which special lock the luggage screening entity has agreed to process in accordance with a special procedure,

marketing the special lock to the consumers in a manner that conveys to the consumers that the special lock will be subjected by the luggage screening entity to the special procedure,

the identification structure signaling to a luggage screener of the luggage screening entity who is screening luggage that the luggage screening entity has agreed to subject the special lock associated with the identification structure to the special procedure and that the luggage screening entity has a master key that opens the special lock, and

8

the luggage screening entity acting pursuant to a prior agreement to look for the corresponding identification structure while screening luggage and, upon finding said corresponding identification structure on an individual piece of luggage, to use the master key previously provided to the luggage screening entity to, if necessary, open the individual piece of luggage.

15. The method of claim 14, wherein the identification structure is integrally formed with the special lock.

16. The method of claim 15, wherein the signaling involves a visual signal.

17. The method of claim 14, wherein the signaling involves a visual signal.

18. A method of improving airline luggage inspection by a luggage screening entity, comprising:

making available to consumers a special lock having a first lock portion and a master key lock portion, the master key lock portion for receiving a master key that can open the master key lock portion of this special lock, the special lock designed to be applied to an individual piece of airline luggage, the special lock also having an identification structure associated therewith that corresponds with a corresponding identification structure previously provided to the luggage screening entity, which special lock the luggage screening entity has agreed to process in accordance with a special procedure,

marketing the special lock to the consumers in a manner that conveys to the consumers that the special lock will be subjected by the luggage screening entity to the special procedure,

the identification structure signaling to a luggage screener of the luggage screening entity who is screening luggage that the luggage screening entity has agreed to subject the special lock associated with the identification structure to the special procedure and that the luggage screening entity has a master key that opens the special lock, and

the luggage screening entity acting pursuant to a prior agreement to look for the corresponding identification structure while screening luggage and, upon finding said corresponding identification structure on an individual piece of luggage, to use the master key previously provided to the luggage screening entity to, if necessary, open the individual piece of luggage.

19. The method of claim 18, wherein the identification structure is integrally formed with the special lock.

20. The method of claim 19, wherein the signaling involves a visual signal.

21. The method of claim 18, wherein the signaling involves a visual signal.

* * * * *

Exhibit C



US007036728B2

(12) **United States Patent**

Tropp

(10) Patent No.: **US 7,036,728 B2**

(45) Date of Patent: **\*May 2, 2006**

(54) **METHOD OF IMPROVING AIRLINE LUGGAGE INSPECTION**

(76) Inventor: **David Tropp**, 165 Norfolk St., Brooklyn, NY (US) 11235

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/988,433**

(22) Filed: **Nov. 12, 2004**

(65) **Prior Publication Data**

US 2005/0167494 A1    Aug. 4, 2005

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/756,531, filed on Jan. 12, 2004, and a continuation-in-part of application No. 10/706,500, filed on Nov. 12, 2003.

(51) Int. Cl.
    *G07B 15/02*    (2006.01)

(52) U.S. Cl. ............................. 235/384; 70/284; 283/72

(58) Field of Classification Search .............. 235/384, 235/380, 382; 70/284–285, 56, 278, 312, 70/331; 283/68–69, 74, 80
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,055,972 A | 11/1977 | Calegan |
| 4,137,567 A | 1/1979 | Grube |
| 4,499,745 A | 2/1985 | Ricouard et al. |
| 4,557,122 A | 12/1985 | Hwang |
| 4,671,088 A | 6/1987 | Joang |
| 4,770,013 A | 9/1988 | Nakai |
| 4,866,958 A | 9/1989 | Brell et al. |
| 4,885,923 A | 12/1989 | Nakai |

| | | |
|---|---|---|
| 5,089,692 A | 2/1992 | Tonnesson |
| 5,237,842 A | 8/1993 | Rasch et al. |
| 5,274,356 A | 12/1993 | Taricco |
| 5,345,798 A | 9/1994 | Nakai |
| 5,485,734 A | 1/1996 | Yang |
| 5,507,161 A | 4/1996 | Broekaert et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0414165 | 2/1991 |
| FR | 2686493 | 7/1993 |
| WO | WO 03/003144 A2 | 9/2003 |

OTHER PUBLICATIONS

Travel Sentry Press Release, Nov. 12, 2003.\*

(Continued)

*Primary Examiner*—Thien M. Le
*Assistant Examiner*—Edwyn Labaze
(74) *Attorney, Agent, or Firm*—Steven Horowitz

(57)    **ABSTRACT**

Method of making airline luggage inspection secure while accommodating the needs of the traveler comprises making a special lock available to airline travelers, the special lock having a combination lock portion and a master key lock, the master key lock portion receiving a master key that can open the master key lock portion of any special lock of this type. The special lock is designed to be applied to an individual piece of airline luggage and has indicia conveying to luggage purchasers that the special lock is "approved" by a luggage screening authority and conveying to the luggage screening authority that the special lock can be opened using the master key. The method includes providing the luggage screening authority directly or indirectly with exclusive access to the master key. The manufacturers and/or providers of the master key and special lock retain copies of the master key.

**20 Claims, 2 Drawing Sheets**



## US 7,036,728 B2
Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,582,049 A | 12/1996 | Mauer | |
| 6,173,592 B1 | 1/2001 | Yu | |
| 6,212,920 B1 * | 4/2001 | Winner | 70/38 C |
| 6,508,089 B1 | 1/2003 | Tsai | |
| 6,513,356 B1 | 2/2003 | Yang | |
| 6,557,384 B1 | 5/2003 | Cuesta | |
| 6,568,225 B1 | 5/2003 | Chang | |
| 6,598,434 B1 | 7/2003 | Yang | |
| 2002/0129628 A1 | 9/2002 | Skalberg | |
| 2002/0139155 A1 | 10/2002 | Franzen | |
| 2002/0198731 A1 | 12/2002 | Barnes et al. | |
| 2003/0089147 A1 | 5/2003 | Yang | |
| 2004/0246096 A1 * | 12/2004 | Queenan | 340/5.61 |
| 2005/0081584 A1 | 4/2005 | Nugent | |
| 2005/0111618 A1 * | 5/2005 | Sommer et al. | 378/57 |

### OTHER PUBLICATIONS

Brookstone press Release, Nov. 12, 2003.*

CCL Security Products New Product News Release, Nov. 12, 2003.*

The Eastern Company Reports Results for the 1st Quarter of 2004 {S/N 109401861}.*

Sara Kemaulani Goo, TSA Under Pressure To Stop Baggage Theft, WASHINGTONPOST.COM, Jun. 29, 2003, p. AO1.

Jane Engles, Be Prepared for Hand Searches of Luggage, Los Angeles Times, Apr. 13, 2003, Post-gazette.com.

CNN, Paris Airport Arms Find: Man Held, Dec. 30, 2002, Printed from CNN.COM on Jan. 12, 2003.

Barbara De Lollis, Fliers Flood TSA with Inspection Gripes, Travel News Section, USA Today, Jul. 21, 2003.

Barbara De Lollis, Even How you Secure Luggage has Change: Travel News Section: USA Today, Sep. 1, 2003.

Getting Back the Business, Travel Goods Showcase, Jul./Aug. 2003.

Audrey Warren, Making up for the Blackout, The Wall Street Journal, Aug. 20, 2003.

* cited by examiner

# FIG. 1



DIALS

MASTER
KEY

# FIG. 2

TSA APPROVED

DIAL
TURN

Case 1:06-cv-06415-ENV-RLM   Document 1   Filed 12/04/06   Page 23 of 28 PageID #: 25



FIG.3

COMBINATION
CODE

FIG.4

US 7,036,728 B2

1

## METHOD OF IMPROVING AIRLINE LUGGAGE INSPECTION

### PRIORITY INFORMATION

This patent application claims priority from and is a continuation-in-part patent application of U.S. patent application Ser. No. 10/706,500 previously filed by Applicant and Inventor David Tropp on Nov. 12, 2003 and which is presently pending and incorporated herein by reference in its entirety. This patent application also claims priority of and is a continuation-in-part patent application of U.S. patent application Ser. No. 10/756,531 previously filed by Applicant and Inventor David Tropp on Jan. 12, 2004 and which is presently pending and incorporated herein by reference in its entirety.

### FIELD OF THE INVENTION

The field of this invention is methods of improving airline luggage inspection, and more particularly, methods of making such inspection less intrusive and more secure.

### BACKGROUND OF THE INVENTION AND DISCUSSION OF THE PRIOR ART

Due to the threat of terrorism, in the weeks prior to Jan. 1, 2003, the Transportation Security Administration ("TSA"), a division of the United States Department of Homeland Security, announced that with respect to luggage at United States airports if a TSA baggage screener was unable to open a traveler's bag for inspection because the bag was locked, the screener would have to break the locks on the traveler's bag. Hence, passengers should leave their bags unlocked, according to the TSA. Beginning Jan. 1, 2003 the TSA's federal workers started screening luggage at U.S. airports and when it deemed it necessary it started clipping locks on this luggage in order to open and inspect the luggage.

Since by definition airport luggage screening occurs outside the presence of the passengers whose luggage is being inspected, it is impossible or at least impractical for airport luggage screening personnel to make use of combinations to open combination locks on airport luggage. Nonetheless, passengers may desire to use combination locks to avoid worrying about loss of a key or finding the key.

Although arguably necessary for security, the method of screening luggage that includes opening the passenger's luggage in a manner that leaves the luggage "unlockable" after the inspection process, for example by clipping the heretofore workable lock, suffers from several drawbacks. First, the passenger's belongings have been damaged either because the lock has been clipped or because the luggage has been opened forcibly or both. This causes monetary damage it also causes aggravation. Second, a new security hazard is generated since the passenger gets back a piece of luggage with a broken or removed lock. This means that during the remainder of the passenger's trip his or her luggage is not secure and can be tampered with. The remainder of the trip may even include further domestic flights. Furthermore, if travelers consistently have their locks broken, travelers will see no value in using locks when traveling, thereby exposing their unlocked luggage to a constant risk of tampering.

One should not assume that security risks exist only among passengers. Terrorists have tried in the past and may try in the future to compromise the workers at the airports who inspect luggage. Accordingly, the no longer secure

2

piece of luggage is subject to the risk that a terrorist or other dangerous person who is within the area of the airport luggage screening personnel—because he is a worker or because he penetrated the secure area—can insert a bomb or other hazardous material into the luggage by easily opening it since it not only does not have a lock anymore but its outward appearance, i.e. a damaged lock, may advertise that it has been tampered with and be easily opened.

Furthermore, the sale of padlocks plummeted after the TSA began the practice of clipping locks. Another thing that happened was that the number of claims for theft and damage allegedly caused by the government and/or airline personnel to passengers' luggage increased significantly since Jan. 1, 2003.

Another problem is that passengers are concerned about theft of the contents of their bags without the protection of locks (after their locks have been rendered useless by the luggage screening authorities).

Travelers understand and support the federal government's initiatives to thwart terrorism. This support of security regulations and procedures on the part of travelers is critical to their implementation and success. However, travelers, just getting accustomed to the new security laws, may have legitimate concerns about baggage inspections. It is crucial that the government or appropriate authorities act to diminish travelers' concerns in this regard.

In addition, working as a TSA luggage screener is a highly demanding and stressful job. Therefore, anything that reduces the physical strain would be highly appreciated by the screeners.

It should be born in mind that the number of airline travelers who pass through airports in the United States in a given year is close to half a billion. Thus, these concerns affect a great many individuals.

Accordingly, there is a compelling and immediate need for a method of inspecting luggage at airports that does not create a security risk and that is not damaging or aggravating to the passengers.

### SUMMARY OF THE PRESENT INVENTION

The present invention presents a method of making airline luggage inspection secure while accommodating the needs of the traveler includes a first step of making a special lock available to airline travelers, the special lock having a combination lock portion and a master key lock, the master key lock portion for receiving a master key that can open the master key lock portion of any special lock of this type. The special lock is designed to be applied to an individual piece of airline luggage and has an indicia thereon conveying to luggage purchasers that the special lock is "approved" by a luggage screening authority and conveying to the luggage screening authority that the special lock can be opened using the master key. Then providing the luggage screening authority with exclusive access to the master key. The manufacturers and/or providers of the master key and special lock retain copies of the master key. In accordance with the method of the present invention, therefore, the luggage screening authority need not clip or otherwise break open locks to inspect luggage, nor do they have to break into the luggage in some other manner. The workers need only be told that master keys are available to open locks that have the indicia on them.

US 7,036,728 B2

**3**

IMPORTANT OBJECTS AND ADVANTAGES

The following important objects and advantages of the present invention are:

(1) to provide a method of screening luggage at airports that avoids forcible opening of the luggage;

(2) to provide a method of screening luggage at airports that employs special locks that remain viable after being subjected to airport luggage screening and inspection;

(3) to provide a method of non-intrusively searching passenger's luggage at airports;

(4) to provide a method of screening luggage that uses a master key exclusively maintained by the luggage screening authority;

(5) to provide a method of improving luggage screening at airports that avoids the need for clipping the locks on passenger luggage;

(6) to provide a method of screening luggage at airports that eliminates a potential security threat of tampering with broken-into luggage or luggage whose locks have been broken;

(7) to provide a method of luggage screening that reduces the costs of the luggage screening authority;

(8) to provide a method of luggage screening that eliminates the need for lock clippers;

(9) to provide a luggage screening method that eliminates injuries to luggage screeners that may arise from clipping locks;

(10) to provide an improved method of luggage screening at airports that requires essentially no new training;

(11) to provide a method of airport luggage screening that reduces the liability to the luggage screening authority;

(12) to provide an improved method of luggage screening that would not interfere with current policy of the luggage screening authority in that luggage locks could still be clipped if they did not display the indicia conveying that were "TSA approved" or authorized;

(13) to provide a luggage screening method that decreases the labor of luggage screeners in that opening the special lock of the method of the present invention requires less manual labor than breaking locks;

(14) to provide a method of luggage screening that provides a public relations benefit to the TSA or luggage screening authority in that travelers will appreciate the TSA or luggage screening authority's concern for their personal property, an important benefit for new agency;

(15) to provide a method of airport luggage screening that allows the luggage screening authority to get its work done more efficiently;

(16) to provide a method of airport luggage screening that allows a thorough search of the passenger's luggage while at the same time providing a less intrusive and more comfortable search to the passenger;

(17) to provide a method of screening luggage at airports that eliminates the danger of tampering with luggage that has been broken into subsequent to the screening process; and

(18) to provide a method that eliminates the need to break into the luggage at a point other than its lock.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front plan view of one embodiment of the special lock used in the method of the present invention in open position modified to show a key hole for a master key on the bottom.

**4**

FIG. 2 is a front plan view of a second embodiment of the special lock used in the method of the present invention.

FIG. 3 is a front plan view of a second embodiment of the special lock used in the method of the present invention modified to show a key hole for a master key on the bottom.

FIG. 4 shows the special lock depicted in FIG. 1 in closed position.

DETAILED DESCRIPTION OF THE
PREFERRED EMBODIMENT

The method of the present invention includes the step of making a special lock available to airline travelers, the special lock having a combination lock portion and having a master key lock, the master key lock portion for receiving a master key that can open the master key lock portion of any special lock of this type, the special lock designed to be applied to an individual piece of airline luggage. The special lock also has indicia associated with the special lock. In a preferred embodiment the indicia is on the special lock but the present invention contemplates that the indicia may be near by on the luggage but not on the lock or other ways of association (on a tag near the lock, etc.).

As a result of marketing the special lock to consumers or to airline travelers, the indicia conveys to luggage purchasers that the special lock is a lock that the luggage screening authority has agreed not to break. The indicia also conveys to the luggage screening authority that the special lock is a lock that the luggage screening authority has agreed not to break. This is because the luggage screening authority has previously (previous to its screeners looking for the indicia) been provided with the indicia or a special lock having the indicia and has previously agreed to follow a special procedure for processing and screening luggage having the special lock and associated indicia—that is, to look for the indicia while screening luggage and, upon finding said indicia on an individual piece of luggage, to use the master key previously provided to the luggage screening authority to, if necessary, open the individual piece of luggage having the special lock and not try to break the individual piece of luggage.

The indicia can state, for example, that the special lock is "approved", "accepted" or "authorized" by the luggage screening authority. The term "indicia" is a broad term and can also include the special lock itself (or the special lock having associated therewith) a distinctive (and in a preferred embodiment a suitably conspicuous) physical characteristic such shape, texture, weight and/or other characteristic, such as color, that makes it instantly recognizable by individuals working for the luggage screening authority who are specifically for that characteristic. Alternatively, a distinctive chemical or electronic characteristic can be used—in short any distinctive characteristic that can be instantly recognized by persons looking for it.

The phrase "any special lock of this type" is intended to include special locks having a multiplicity of sub-types such as different sizes, different manufacturing designs or styles, etc.

Besides making the special lock more valuable to prospective luggage purchasers or lock purchasers, such indicia also tells the luggage screening authority that the special lock can be opened by the luggage screening authority using the master key and that the special lock is among those locks that the luggage screening authority agrees not to break in order to inspect the luggage. The phrase "approved", "accepted" or "authorized" is a broad phrase intended to

US 7,036,728 B2

5

include other words or terms that signify that the luggage screening authority agrees that locks having such indicia will not be broken into.

The method of the present invention also includes the step of providing the luggage screening authority, directly or indirectly, with access to the master key. This step includes providing such access with the help of or in conjunction with another business entity, i.e. a third party. The access is to be exclusive except that one or more of the following entities may retain copies of the master key: the manufacturer of the special lock, since it may need to retool the special lock, the provider to the passengers of the special lock, which may or may not be the same as the manufacturers, the manufacturer and/or the provider of the master key to the luggage screening authority. It is anticipated that the manufacturer of the special lock will also provide the master key but other possibilities are also contemplated by the present invention.

The step of providing access may be accomplished by delivering one or more master keys to the luggage screening authority or by delivering one or master keys to a company or organization whose responsibility it is to cause said one or more master keys to be delivered to the luggage screening authority.

Access to the master key by the luggage screening authority includes having access to any appropriate number of such master keys by its workers or by any appropriate division of part of said luggage screening authority.

The preferred embodiment of the method of the present invention thus can be summarized as follows: A method of improving airline luggage inspection by a luggage screening authority, comprising

making available to consumers a special lock, the special lock having a combination lock portion and having a master key lock portion, the master key lock portion for receiving a master key that can open the master key lock portion of any special lock of this type, the special lock designed to be applied to an individual piece of airline luggage, and making available to consumers an indicia associated with the special lock that matches an indicia previously provided to the luggage screening authority which the luggage screening authority has agreed to process in accordance with a certain procedure,

marketing the special lock to the consumers in a manner that conveys to the consumers that the special lock will be subjected by the luggage screening authority to the special procedure, and

the luggage screening authority acting pursuant to a prior agreement to look for the indicia while screening luggage and, upon finding said indicia on an individual piece of luggage, to use the master key previously provided to the luggage screening authority to, if necessary, open the individual piece of luggage and not try to break the individual piece of luggage.

Although the present invention is a method of improving the inspection of airline luggage, the method of the present invention makes use of an apparatus. This apparatus is a special lock. The special lock is illustrated by reference to the accompanying drawings. Consequently, the special lock used in the method of the present invention has been assigned reference numeral 10 Other elements have been assigned the reference numerals referred to below.

Combination locks have certain advantages over locks with keys. For one thing, there is no need to fear loss of the key. Hence, it is advantageous to have combination locks on luggage used to fly with since flights tend to cause stress and stress can lead to loss of the key. Second, even if one has the key it takes time to retrieve it. If the luggage has to be

6

opened suddenly then retrieval of the key is an inconvenience. Although combination locks require memorization of access to the coded combination, this is usually considered better than a key lock on balance to many passengers. Hence, there is a need for a method of improving luggage screening at airports that makes of a special lock that includes a unique combination but that is nonetheless convenient and secure for the passengers and for the airport luggage screening personnel.

As seen from FIGS. 1-4, special lock 10 includes a combination lock portion 20 having a unique combination and a master key lock. The master key lock portion is opened by a master key that is inserted in key hole 30. Typically, although not necessarily, the key hole would be inconspicuously placed on the bottom of the special lock 10. The combination lock portion can be any kind of combination lock portion suitable for use with a piece of luggage at an airport. The combination can be a front dial that is turned or several dials that are turned to set the combination.

Presently, the Transportation Security Administration, a division of the United States Department of Homeland Security has the task of screening travelers' luggage at airports. However, the term "luggage screening authority" is intended broadly to encompass both the Transportation Security Administration and any governmental entity or non-governmental organization whose task includes screening the luggage of travelers at airports in the United States or a non-governmental organization. Alternatively, the luggage screening authority can be a governmental entity or non-governmental organization whose task includes screening the luggage of travelers at airports in Canada or another country. Furthermore, the luggage screening authority is also intended to broadly include individual workers who screen luggage at airports and other personnel of the TSA or of some other entity or organization whose task it is to screen such luggage.

Thus, the master key allows the authorized agency's workers to have the ability to open any of the luggage that the workers inspect in a manner without clipping the lock. The indicia notifies the luggage screening authority which pieces of luggage has locks that lock the master key opens and it notifying purchasers of the special lock of an added value of the special lock. Market research exists to support the fact that customers will spend significantly more on luggage if they know that it comes with a lock that the luggage screening authorities such as the TSA recognize as being openable by their master key and without forcibly opening the luggage.

As seen in FIG. 2, the indicia 50 can take the form of a phrase "approved by the TSA" or any similar phrase or it can be anything else that conveys the approval, authority, acceptance etc. by the TSA or other relevant luggage screening authority. It should be understood that although one example of the indicia appears in FIG. 2 only, the other embodiments of the special lock used in the method of the present invention would also have the indicia.

It should be noted that with the use of the special lock by the traveler, the traveler still selects a combination for the combination lock portion of the special lock 10 and the traveler has that combination for the combination lock portion part of the special lock. Accordingly, the traveler still has a useful secure lock after passing airport security. In addition, the luggage screening authority still maintains an effective and quick way of accessing airport luggage for inspection whenever it deems doing so necessary.

It should be noted that the terms "master key" and "master key lock portion" are broad terms intended to also include

US 7,036,728 B2

7

electronic or other sensor mechanisms for opening up the master key lock portion in special lock 10. Thus, the method of the present invention contemplates using in certain embodiments a special lock 10 that makes use of an electronic sensor instead of a traditional physical key even though such a traditional physical key is what is typically understood by the term "master key". In such a case the locking mechanism inside special lock 10 would not be a traditional master key lock mechanism but rather would be a locking mechanism that is opened by an electronic sensor.

The present invention also contemplates that in certain embodiments other lock mechanisms besides a traditional combination lock can be used as one of the locks in special lock 10. Hence, in an alternative embodiment, the method would employ a first lock portion instead of a combination lock portion in special lock 10. The first lock portion can be any kind of locking mechanism useful for and easily accessible by the passenger.

To Applicant's knowledge the luggage screening authority in the United States, namely the Transportation Security Administration, has no special requirements about the special lock for agreeing to accept the special lock in connection with the method of the present invention. In accordance with the method of the present invention, the TSA does of course have to be able to recognize the presence of and have the means to open the special lock.

It is to be understood that while the method of this invention have been described and illustrated in detail, the above-described embodiments are simply illustrative of the principles of the invention. It is to be understood also that various other modifications and changes may be devised by those skilled in the art which will embody the principles of the invention and fall within the spirit and scope thereof. It is not desired to limit the invention to the exact construction and operation shown and described. The spirit and scope of this invention are limited only by the spirit and scope of the following claims.

What is claimed is:

1. A method of improving carrier baggage inspection by a baggage screening entity, comprising:

making available to consumers a special lock, having a combination lock portion and having a master key lock portion, the master key lock portion for receiving a master key that can open the master key lock portion of this special lock, the special lock designed to be applied to an individual piece of carrier baggage, the special lock also having an identification structure associated therewith that matches a corresponding identification structure previously provided to the baggage screening entity, which special lock the baggage screening entity has agreed to process in accordance with a special procedure,

marketing the special lock to the consumers in a manner that conveys to the consumers that the special lock will be subjected by the baggage screening entity to the special procedure,

the identification structure signaling to a baggage screener of the baggage screening entity that the baggage screening entity has agreed to subject the special lock associated with the identification structure to the special procedure, and

the baggage screening entity acting pursuant to a prior agreement to look for the identification structure while screening baggage and, upon finding said identification structure on an individual piece of baggage, to use the

8

special procedure previously agreed to by the baggage screening entity to, if necessary, open the individual piece of baggage.

2. The method of claim 1, wherein the master key lock portion includes a key hole in the special lock that receives the master key.

3. The method of claim 1, wherein a step of making available to consumers a special lock involves selling the special lock directly or indirectly to the consumers.

4. The method of claim 1, wherein the identification structure is integrally formed with the special lock.

5. The method of claim 4, wherein the signaling involves a visual signal.

6. The method of claim 1, wherein the signaling involves a visual signal.

7. The method of claim 1, wherein a step of making available to consumers a special lock involves mass producing the special lock for ultimate provision to the consumer.

8. The method of claim 1, wherein a step of making available to consumers a special lock involves providing the identification structure to a third party and causing the especial lock to be made available to the consumer.

9. The method of claim 1, wherein a step of making available to consumers a special lock means causing the special lock having the identification structure to be made available to the consumers.

10. A method of improving carrier baggage inspection by a baggage screening entity comprising:

making available to consumers a special lock, having a first lock portion and a master key lock portion, the master key lock portion for receiving a master key that can open the master key lock portion of this special lock, the special lock designed to be applied to an individual piece of carrier baggage, the special lock also having an identification structure associated therewith that matches a corresponding identification structure previously provided to the baggage screening entity which special lock the baggage screening entity has agreed to process in accordance with a special procedure,

marketing the special lock to the consumers in a manner that conveys to the consumers that the special lock will be subjected by the baggage screening entity to the special procedure,

the identification structure signaling to a baggage screener of the baggage screening entity that the baggage screening entity has agreed to subject the special lock associated with the identification structure to the special procedure, and

the baggage screening entity acting pursuant to a prior agreement to look for the identification structure while screening baggage and, upon finding said identification structure on an individual piece of baggage, to use the special procedure previously agreed to by the baggage screening entity to, if necessary, open the individual piece of baggage.

11. The method of claim 1, wherein the identification structure is located directly on the special lock.

12. The method of claim 11, wherein a step of making available to consumers a special lock involves selling the special lock directly or indirectly to the consumers.

13. The method of claim 10, wherein the identification structure is located directly on the special lock.

14. The method of claim 13, wherein a step of making available to consumers a special lock involves selling the special lock directly or indirectly to the consumers.

US 7,036,728 B2

9

**15.** The method of claim **10**, wherein the identification structure is integrally formed with the special lock.

**16.** The method of claim **15**, wherein the signaling involves a visual signal.

**17.** The method of claim **10**, wherein the signaling involves a visual signal.

**18.** The method of claim **10**, wherein a step of making available to consumers a special lock involves mass producing the special lock for ultimate provision to the consumers.

10

**19.** The method of claim **10**, wherein a step of making available to consumers a special lock involves providing the identification structure to a third party and causing the special lock to be made available to the consumers.

**20.** The method of claim **10**, wherein a step of making available to consumers a special lock means causing the special lock having the identification structure to be made available to the consumers.

* * * * *