**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**TRAVEL SENTRY, INC.,**

                      **Plaintiff,**                  **MEMORANDUM AND ORDER**

      -against-

                                                  **06-CV-6415 (ENV)**

**DAVID A. TROPP,**

                      **Defendant.**
-----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Currently pending before this Court, on a referral from the Honorable Eric N. Vitaliano, is a motion by plaintiff Travel Sentry ("Travel Sentry") and its attorneys Seyfarth Shaw LLP ("Seyfarth") (collectively, "movants") for reconsideration of this Court's February 11, 2008 Memorandum and Order ("2/11/08 M&O"), which granted, in part, a motion for sanctions filed by defendant David Tropp ("Tropp"). For the reasons that follow, and having reconsidered its prior opinion, the Court declines to disturb its imposition of sanctions.

## BACKGROUND

The factual background of movants' misconduct is fully set forth in the Court's prior opinion and is only summarized below.

On December 4, 2006, Travel Sentry commenced this action seeking declarations of invalidity and non-infringement of two patents issued to Tropp protecting a dual access luggage lock system.[1] Later that month, while looking into Travel Sentry's claims, Seyfarth came into possession of 193 Transportation Security Administration ("TSA") documents, forty-one of

---

[1] The 2/11/08 M&O mischaracterized the patents as protecting a locking device as opposed to a method. See 2/11/08 M&O at 1-2. That error has no bearing on the issues before the Court.

which related to luggage screening and a lock opening program (the "2002 Program") that Travel Sentry contends constitutes invalidating prior art. 2/11/08 M&O at 2, 7. The documents were sent to Seyfarth by Kurt Krause ("Krause"), a former TSA employee, who, along with Travel Sentry's founder and CEO, worked on the design and implementation of the 2002 Program. Id. at 2.

In spite of Tropp's February 15, 2007 document demands requesting disclosure of all prior art and TSA materials, movants elected not to produce or in any way disclose their possession of the documents obtained from Krause. Id. at 2-3. Movants made this decision in order to protect Travel Sentry's business relationships with Krause and the TSA; since some of the Krause documents were marked as containing sensitive security information ("SSI"),[2] and TSA regulations prohibited Krause from disclosing them to Seyfarth, revealing Seyfarth's possession of them risked both exposing Krause and antagonizing the TSA. Id. at 3. While movants thus wanted to conceal their possession of the Krause documents, they were nevertheless interested in using some as evidence of prior art. Id. at 4. Movants therefore sought to independently procure a subset of the Krause documents through a series of so-called *Touhy* requests. Id. at 4-5. Significantly, these requests were neither pursued expeditiously nor drafted to ensure that all documents responsive to Tropp's requests would be produced. Id. at 4.

Movants' initial *Touhy* request was made to the TSA on May 9, 2007, three months

---

[2] The Court's review of the forty-one Krause documents relating to the 2002 Program and/or baggage screening reveals that only five were marked as containing "sensitive security information" and one was marked "confidential" without further explanation.

2

after Tropp served his document demands. Id. Movants then proceeded to stand by while the TSA struggled for four months to conduct a search that ultimately, on September 18, 2007, yielded only two documents responsive to their request. Id. at 5. At that point, rather than acknowledge that other documents existed and were in their possession, movants instead served a similar *Touhy* request on Krause himself. Id. That request, however, proved less successful than the first, as Krause turned over just one additional responsive document. Id. at 6. Meanwhile, during the pendency of these unproductive efforts, movants twice requested and obtained extensions of the discovery deadline, citing, as justifications, their need for the documents and the TSA's delay. Id. at 4-5.

Finally, on October 17, 2007, faced with the prospect of receiving only a fraction of the documents that they knew existed and wanted to use, movants told the TSA of Krause's earlier production and sent the agency eighteen documents for review, stating that these were the only documents relevant to the litigation. Id. Thereafter, at the TSA's insistence, movants relinquished the remaining 175 documents to the agency. Id. Movants simultaneously told Tropp that the eighteen documents sought by their earlier *Touhy* requests had previously been provided to them by Krause and that the documents had been turned over to the TSA for screening. Id. at 7. Tropp in turn alerted the Court and, on October 22, 2007, moved to preclude use of the Krause documents and Krause's testimony. Id.

Despite these belated revelations, movants maintained their less than forthcoming attitude towards both Tropp and the Court by persisting in making misleading representations regarding Krause's earlier production. Id. at 7 & n.8. Accordingly, on November 19, 2007, the Court, with the parties' consent, contacted the TSA to clarify the status of its review. Id.

3

at 7.  Counsel for the TSA informed the Court that while movants had requested review of eighteen documents, there were additional documents that also related to checked baggage screening.  Id.  TSA's counsel agreed that, following the agency's review for SSI, the TSA would provide all relevant documents to the Court.  Id.  On November 28, 2007, the TSA completed its review and submitted forty-one documents to the Court, which, with the TSA's consent, released them to the parties.  Id. at 8.

After hearing oral argument, the Court ruled, in its 2/11/08 Memorandum and Order, that Tropp's discovery requests clearly encompassed the aforesaid forty-one documents, that movants' responses falsely suggested that full production had been made, and that movants' failure to identify or produce the documents was a willful violation of Rule 34 of the Federal Rules of Civil Procedure.  Id. at 11-12, 16-17.  Movants' reliance on the documents' potential SSI content did not justify having withheld the documents, inasmuch as movants had neither provided a privilege log nor moved for a protective order.[3]  Id. at 12-14.  The Court also rejected movants' claim that their *Touhy* requests adequately discharged their discovery duties, especially in light of movants' dilatory conduct in pursuing those requests.  Id. at 14-16.

For these and other reasons, the Court concluded that movants' conduct was sanctionable under Rule 37.[4]  Id. at 15-16.  Nevertheless, since the injury to Tropp's litigation

---

[3]  Moreover, only five of the forty-one documents were labeled as containing "sensitive security information that is controlled under the provisions of 49 CFR Part 1520."  See *supra* note 2.

[4]  Specifically, the Court held that sanctions were warranted under Rule 37(d).  2/11/08 M&O at 16; see also Elkay Mfg. Co. v. Ebco Mfg. Co., No. 93 C 5106, 1995 WL 389822 (N.D. Ill. Feb. 15, 1995) (imposing Rule 37(d) sanctions on party who interposed misleading answers
(continued…)

4

posture could be remedied, the Court concluded that the severe sanction of evidence preclusion was not necessary. Id. at 19. Instead, the Court granted Tropp a continuance to conduct any additional discovery warranted by the recently revealed information, and required movants to reimburse Tropp for its reasonable expenses in conducting that discovery and in litigating his motion for sanctions. Id. Additionally, pursuant to Rule 26(g) and the Court's inherent power, and upon finding that sanctions were warranted against Seyfarth for its repeated misrepresentations, the Court fined counsel in the amount of $10,000 to deter such conduct in the future. Id. at 17, 20-21.

On February 26, 2008, movants filed the instant motion challenging the February 11th Memorandum and Order. See Travel Sentry, Inc.'s Objections To, and Request for Reconsideration of, Magistrate Judge's Memorandum and Order Dated February 11, 2008 ("Pl. Mem."). Tropp filed papers in opposition on March 7, 2008. See Defendant's Opposition To Travel Sentry's Request for Reconsideration of Magistrate Judge's Memorandum and Order Dated February 11, 2008.

---

[4](…continued)
to document demands in furtherance of its efforts to conceal materials responsive to those demands). Movants' conduct was also sanctionable under Rule 26(g), which authorizes sanctions for improper certifications of discovery responses, since their evasive discovery responses were made for the improper purpose of covering up their willful withholding of documents. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1372-73 (11th Cir. 1997) (upholding district court's conclusion that party violated Rule 26(g) where it "withheld admittedly relevant information, and engaged in dilatory tactics"); Legault v. Zambarano, 105 F.3d 24, 28 (1st Cir. 1997) (upholding Rule 26(g) sanctions where attorney failed to make reasonable effort to ensure that client produced all responsive documents).

**DISCUSSION**

Movants offer several arguments in support of their challenge. None warrants disturbing the Court's prior ruling.[5]

1. Substantial Justification

Once again, movants argue that their dilatory attempts to procure production of the documents via *Touhy* request were substantially justified under the circumstances. See Pl. Mem. at 15. Specifically, movants contend that "because of the SSI issue, reasonable people could indeed differ on how to balance preserving SSI confidentiality against the discoverability of the documents in this case." Id. at 16-17.

The Court previously addressed whether movants' actions were substantially justified and, having considered the surrounding circumstances, concluded that they were not: movants could have sought to comply with their discovery obligations by timely disclosing (i.e., in

---

[5] The pending motion purports to both "object[] to and seek[] reconsideration of" the 2/11/08 M&O. See Pl. Mem. at 1. Judge Vitaliano treated the submission as a motion for reconsideration and referred it to the undersigned magistrate judge. In order to assist the district court in the event of a subsequent objection, this Court has considered all of plaintiff's arguments, and has not limited its review to those cognizable on a motion for reargument. See generally Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand LLP, 322 F.3d 147, 167 (2d Cir. 2003) (to prevail on a motion for reconsideration, the moving party must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice") (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)); Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998) (as a motion for reconsideration is not an opportunity for "a second bite at the apple," the parties may not simply reiterate facts and arguments that the court already considered and rejected); Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (motions for reconsideration are generally denied "unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court").

March 2007) that they had responsive documents in their possession that needed to be screened by the TSA before production. See 2/11/08 M&O at 13-16. Movants' claim that they were subject to "conflicting legal obligations," and were seeking to protect our "national security," Pl. Mem. at 1; see also id. at 5, 11, cannot withstand scrutiny. First, movants have repeatedly denied that they were "covered persons" subject to the confidentiality provisions of the Department of Homeland Security regulations, 49 C.F.R. § 1520 *et seq.* See, e.g., 10/23/07 Travel Sentry Letter at 1 n.1; 10/24/07 Travel Sentry Letter at 1. Second, of the eighteen Krause documents that movants were planning to use and eventually disclose, *not a single one* was labeled "sensitive security information."[6] Thus, neither conflicting legal obligations, nor national security, could even arguably excuse movants' failure to timely produce to Tropp those documents that were not marked "SSI."

The Court found, and movants do not dispute, that they were motivated by a desire to protect Krause (an important witness in this case) and thus maintain Travel Sentry's favorable business relationships with him and the TSA. See 2/11/08 M&O at 3-4, 16; Pl. Mem. at 4, 5, 16, 22. It was that self-interest that underlay their decision not to produce a privilege log or promptly relinquish the documents to the TSA for screening for sensitive governmental information. Movants cite no authority -- and the Court has located none -- to support their contention that their acts and omissions were substantially justified. By representing to Tropp that full document disclosure had been made, movants violated Tropp's right to an

---

[6] One of the eighteen was vaguely marked "confidential," with no reference to SSI or to the corresponding provision of the Code of Federal Regulations. Of the remaining twenty-three Krause documents that were responsive to Tropp's discovery demands and relevant to the claims and defenses, only five were labeled as containing SSI.

7

appropriately calculated and negotiated flow of information through the discovery process, and simultaneously risked undermining the TSA's official role in controlling access to and possession of SSI material. For these reasons, the Court adheres to its opinion that movants' course of conduct was not substantially justified.

2. Scope of the *Touhy* Requests and Ultimate Production of the Documents

Movants additionally argue that the *Touhy* requests served on the TSA and Krause sought production of all the documents responsive to Tropp's requests, and that "there simply is no basis for the Court to have concluded that Travel Sentry never intended to honor its discovery obligation to ensure that all of the Krause Documents were produced to Tropp." Pl. Mem. at 21. According to movants, therefore, the TSA would have reviewed and produced all of the documents at issue, even absent judicial intervention. Id. at 18-19.

Movant's argument is based on an unfairly selective reading of the record. While movants' *Touhy* requests listed twenty-four categories of documents, see, e.g., Exhibit B to 10/23/07 Travel Sentry Letter at 4-5, the Court's finding that those requests sought eighteen of the Krause documents was based on movants' own statements to the Court. For example, in a letter dated October 23, 2007, to which movants attached a copy of the request served on Krause, movants described the scope of the *Touhy* requests as follows:

> It was not until October 17, 2007 that Travel Sentry learned, in a call with TSA's in-house counsel, that Krause evidently did not produce all documents responsive to the subpoena. TSA's counsel stated that only one (1) of the approximately eighteen (18) 2002 Program documents described in the subpoena were sent to her by Mr. Krause.

10/23/07 Travel Sentry Letter at 2 (emphasis in original). Furthermore, movants originally

8

submitted only those eighteen documents to the TSA for review and production, based on their inaccurate assertion that the remaining Krause documents "were not relevant to the claims or defenses in this case . . . ." Id.

Equally unavailing is movants' contention that their own efforts resulted in full production of all forty-one of the relevant documents responsive to Tropp's demands. See Pl. Mem. at 7 & n.10, 18-19 & n.16. As a preliminary matter, "the fact that a party ultimately produces requested material does not absolve it of its original failure to produce." Elkay Mfg. Co. v. Ebco Mfg. Co., No. 93 C 5106, 1995 WL 389822, at *9 (N.D. Ill. Feb. 15, 1995). In any event, the record refutes movants' factual assertion. First, contrary to movants' suggestion, they did not act on their own initiative in producing all the Krause documents to the TSA. Rather, movants sent the TSA only the eighteen documents they intended to use, and it was not until the TSA demanded the remaining Krause documents that movants forwarded them to the agency. See 10/22/08 Tropp Letter at 2; 11/1/07 TSA Letter at 1-2 (attached to 11/1/07 Tropp Letter); 2/11/08 M&O at 6.

Even then, movants did not ask the TSA to screen any of the other documents for production to Tropp. When the Court, with the parties' consent, spoke by telephone with TSA's counsel in November 2007, she advised that the agency was preparing to produce only the eighteen documents specified by movants. Upon learning from the TSA that twenty-three additional documents related to baggage screening and the 2002 Program, the Court requested that those documents also be disclosed to the Court and counsel, and the TSA honored that request. See 2/11/08 M&O at 7-8. Therefore, the Court adheres to its finding that movants intended to produce only the eighteen documents they planned to use.

9

3. Prejudice

In challenging the Court's imposition of sanctions, movants assert that their actions were never intended to prejudice Tropp, see Pl. Mem. at 11-12, and that Tropp in fact suffered no prejudice. Id. at 12-15. Specifically, movants claim that (1) their possession of the documents afforded them no advantage over Tropp; and (2) Tropp allowed the depositions of two former TSA employees to go forward without objection after having learned of Krause's covert production. Id. at 12-15.

As an initial matter, movants' assertion that they did not specifically intend to prejudice Tropp, even if true, does not alter this Court's conclusion. Whatever movants' ultimate motive -- and the Court continues to believe that they acted out of self-interest[7] -- the fact remains that movants were aware of their discovery obligations, knew that their use of *Touhy* requests to produce eighteen of the Krause documents would delay disclosure, and nevertheless proceeded with deposition discovery, all the while misleading the Court and Tropp about the status of discovery and the completeness of their production. See 2/11/08 M&O at 4-5, 17.[8] As the Second Circuit has made clear in an analogous context, the "culpable state of mind" factor in determining whether to impose sanctions for discovery abuses does not require "bad faith" or even "gross negligence." See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108, 112 (2d Cir. 2002) (vacating and remanding case where trial court

---

[7] See *supra* p. 7.

[8] As noted in the Court's prior opinion, Seyfarth acknowledged that its applications for extensions of the discovery deadlines "could be read" to mean that movants did not possess the documents sought pursuant to the *Touhy* requests. See Transcript of 12/10/07 Oral Argument ("12/10/07 T.") at 6, 14; 2/11/08 M&O at 17.

erroneously denied defense request for adverse inference instruction, since a finding that plaintiff was "purposely sluggish" in producing discovery material could support such an instruction); see also Jackson v. Bankers Trust Co., No. 88 Civ. 4867 (JSM), 1991 WL 2844, at *2 (S.D.N.Y. Jan. 9, 1991) ("Even if defendant's conduct was less than wilful, simple negligence can result in the imposition of the lesser sanctions provided under Rule 37."). Here, as in Residential Funding, this principle applies with particular force, because "[t]he record also contains a number of at least careless, if not intentionally misleading, statements by [movants] both to [their adversary] and to the [] Court" regarding their discovery efforts. Residential Funding, 306 F.3d at 111.[9]

As regards the prejudice suffered by Tropp, the Court found that movants "benefitted from being able to conduct discovery with knowledge of the contents of the Krause documents, an opportunity that Tropp did not similarly enjoy." 2/11/08 M&O at 18. Movants challenge this finding as erroneous, claiming that the documents merely corroborate information about the 2002 Program that was already available to both parties. See Pl. Mem. at 6, 10. However, movants concede that corroborative documentary evidence is necessary to prove invalidity through prior art, see id. at 13 n.14 (collecting cases), and that the prior art documents produced by Krause are critical to their case. 12/10/07 T. at 21-22. Consequently, knowledge of the existence and precise contents of any corroborative documentary evidence is itself critical information. Having been deprived of that information for more than six months,

---

[9] This case thus bears no resemblance to the facts of Outley v. City of New York, 837 F.2d 587 (2d Cir. 1988), on which movants rely. There the Second Circuit concluded that the discovery violation resulted from a "good-faith oversight of an inexperienced practitioner." Id. at 590.

11

Tropp was forced to operate at a disadvantage.[10]

Movants' contention that Tropp allowed certain depositions to go forward without objection after having learned of the existence of the Krause documents does not excuse movants' misconduct. "While [Tropp's] own behavior in this matter may affect the severity of the sanctions, it in no way relieves [movants] of [their] burden of complying with the rules of discovery." Elkay, 1995 WL 389822, at *8. In other words, "[t]he degree to which the offended person attempted to mitigate any prejudice suffered by him or her" is a factor in fashioning an appropriate sanction. ResQNet.com, Inc. v. Lansa, Inc., 533 F.Supp.2d 397, 421 (S.D.N.Y. 2008). To the extent that Tropp asks movants to reimburse him for costs and fees related to additional discovery that could have been avoided had Tropp sought an adjournment, movants can request that the Court either decline to reopen discovery or absolve them of responsibility for those expenses. Tropp's alleged failure to mitigate does not, however, affect movants' responsibility for the costs and fees incurred by Tropp in litigating his discovery motion, pursuant to Rule 37(d)(3).[11]

---

[10] The Court summarily rejects movants' claim that the "firewall" established by Seyfarth rendered the Krause documents "unavailable to the litigation team and effectively non-existent," and thereby prevented any prejudice. Pl. Mem. at 23; see also id. at 11 n.13, 16. Suffice it to say, the attorney at Seyfarth who reviewed the Krause documents was the same attorney who handled the depositions of several TSA employees. See 2/11/08 M&O at 18; 12/10/07 T. at 10-11, 23; 12/11/07 Travel Sentry Letter at 1.

[11] Movants object that Tropp did not seek monetary sanctions. See Pl. Mem. at 2, 7. To be sure, Tropp's moving papers sought a more drastic sanction -- preclusion -- and the Court, in its discretion, opted to impose a lesser sanction. See Jackson, 1991 WL 2844, at *2 (denying preclusion but awarding fees, based on delayed production). Furthermore, at oral argument, Tropp complained that movants' actions had caused Tropp to incur substantial expenses in litigating those discovery violations. See 12/11/07 T. at 29.

4. Appropriateness of the Fine

Seyfarth argues that the $10,000 fine imposed on the firm should be vacated because its actions were made in a good faith effort "to do the right thing, not only by Tropp, but also by the TSA, Mr. Krause and national security." Pl. Mem. at 21.

Seyfarth's attempt to justify its behavior as taken in the interests of its adversary and national security is disingenuous. See *supra* p. 7. As indicated above and in the 2/11/08 M&O, Seyfarth and its client proceeded in a self-serving manner that was inconsistent with their obligations under the Federal Rules of Civil Procedure. As a result, the Court and Tropp were constrained to spend hours investigating movants' discovery abuses.

Seyfarth's behavior fails to satisfy professional standards and should not go unsanctioned. The firm's eventual cooperation with the TSA, and the end result of full disclosure of the forty-one responsive documents, rendered preclusion too extreme a sanction, but did not leave the Court powerless to punish movants for their misconduct. "The district court has wide discretion in punishing failure to conform to the rules of discovery." Outley v. New York, 837 F.2d 587, 590-91 (2d Cir. 1988). Contrary to movants' suggestion, see Pl. Mem. at 2, sanctions are not merely remedial, but may be imposed for their punitive and deterrent effect. See Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643 (1976) (sanctions are available "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent"); U.S. Freight Co. v. Penn Cent. Transp. Co., 716 F.2d 954, 955 (2d Cir. 1983) ("General deterrence, rather than mere remediation of the particular parties' conduct, is a goal under Rule 37."). Seyfarth's disregard of its obligations to the Court and its

13

adversary, and its conscious concealment of the facts, should not be tolerated and must be discouraged. The Court reaffirms its sanction of $10,000.

## CONCLUSION

For the foregoing reasons, the Court reaffirms its ruling of February 11, 2008.

Any objections to the recommendations contained in this Memorandum and Order must be filed with the Honorable Eric N. Vitaliano on or before May 30, 2008. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

In the event no objections are filed, or Judge Vitaliano upholds the imposition of sanctions, this Court will set a schedule for the assessment of the fees and movants' payment of the sanctions.

**SO ORDERED.**

**Dated:** Brooklyn, New York
May 15, 2008

                                                           **ROANNE L. MANN**
                                                           **UNITED STATES MAGISTRATE JUDGE**