UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                             :

TRAVEL SENTRY, INC.,                  :   Hon. Eric N. Vitaliano, U.S.D.J.
                                         :   Hon. Roanne L. Mann, U.S.M.J.

           Plaintiff,          :

                                         :

        v.                        :   Civil Action No. 1:06-cv-06415

                                         :

DAVID A. TROPP,                     :

                                       :

          Defendant.       :

                                       :

                                       :

-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF TRAVEL SENTRY'S MOTION FOR FEES AND COSTS PURSUANT TO 35 U.S.C. § 285 AND 28 U.S.C. § 1927

Dated:  Boston, Massachusetts
        September 24, 2010

William L. Prickett (WP-7278)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA  02210-2028
(617) 946-4800

Andrew T. Hahn, Esq. (AH-6283)
James S. Yu (JY-9734)
SEYFARTH SHAW LLP
620 8th Avenue
32nd Floor
New York, NY 10018
(212) 218-5500

**Attorneys for Plaintiff Travel Sentry, Inc.**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

RELEVANT BACKGROUND ....................................................................................... 1

    A.    Tropp's Bad Faith Towards Travel Sentry Began Before This Case. ..................... 1

    B.    Tropp's Groundless Infringement Claim. ................................................................ 4

    C.    Other Indicia of Bad Faith. ....................................................................................... 7

ARGUMENT .................................................................................................................. 10

    A.    Tropp's Unreasonable and Bad Faith Pursuit of His Baseless
           Infringement Claim Renders this an Exceptional Case for
           Which a Fee Award Under 35 U.S.C. § 285 is Appropriate ................................. 10

           1.    Tropp's Bad Faith Pursuit of a Frivolous Infringement Claim
                  Renders this Case Exceptional Under § 285 ............................................. 10

           2.    An Award of Attorneys' Fees is Appropriate To Deter Other
                  Patentees From Engaging In Similar Bad Faith Conduct and to
                  Compensate Travel Sentry for the Injustice Perpetrated by Tropp ........... 16

    B.    Tropp's Counsel's Unreasonable and Vexatious Conduct
           Also Warrants the Imposition of Attorneys' Fees Under
           28 U.S.C. § 1927 and the Court's Inherent Authority ......................................... 18

CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraskin v. Entrecap Corp.*,
    55 F. Supp. 2d 224 (S.D.N.Y 1999) ........................................................................16

*Astrazeneca AB, Aktiebolaget Hassle v. Dr. Reddy's Lab., Ltd.*,
    07 Civ. 6790 (CM), 2010 U.S. Dist. LEXIS 32883 (S.D.N.Y. Mar. 30, 2010) ...... 11-13, 15-16

*Baker v. Urban Outfitters, Inc.*,
    431 F. Supp.2d 351 (S.D.N.Y. 2006) .................................................................21, 22

*Barash v. Kates*,
    585 F. Supp.2d 1347 (S.D. Fla. 2006) .....................................................................19

*Beckman Instruments, Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989) ...............................................................................10

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) ...............................................................1, 5, 6, 19

*Borowski v. DePuy, Inc.*,
    850 F.2d 297 (7th Cir. 1988) .......................................................................................5

*Bowler v. U.S. Immigration & Naturalization Serv.*,
    901 F. Supp. 597 (S.D.N.Y. 1995) ..........................................................................19

*Cross Med. Prods. v. Medtronic Sofamor Danek*,
    424 F.3d 1293 (Fed. Cir. 2005) ..................................................................................4

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998) .........................................................................10, 16

*Danielson v. Winnfield Funeral Home of Jefferson, Inc.*,
    634 F. Supp. 1110 (E.D. La. 1986) ..........................................................................19

*Davey v. Dolan*,
    453 F. Supp. 2d 749 (S.D.N.Y. 2006) ......................................................................19

*Eltech Sys. Corp. v. PPG Indus.*,
    903 F.2d 805 (Fed. Cir. 1990) .......................................................................11, 12, 13

*Emtel, Inc. v. Lipidlabs, Inc.*,
    583 F. Supp. 2d 811 (S.D. Tex. 2008) .......................................................................6

Page(s)

*Fifth Third Bank v. Boswell*,
    125 F.R.D. 460 (S.D. Ohio 1989) .......................................................................... 19

*Frantz v. U.S. Powerlifting Fed'n*,
    836 F.2d 1063 (7th Cir. 1987) ................................................................................. 6

*Fromson v. Advance Offset Plate, Inc.*,
    720 F.2d 1565 (Fed. Cir. 1985) ............................................................................... 4

*Global Patent Holdings, LLC v. Panthers BRHC LLC*,
    586 F. Supp. 2d 1331 (S.D. Fla. 2008) ................................................................... 6

*Gollomp v. Spitzer*,
    568 F.3d 355 (2d Cir. 2009) ............................................................................. 18, 19

*Haynes Int'l Inc. v. Jessop Steel Co.*,
    8 F.3d 1573 (Fed. Cir. 1993) ................................................................................. 10

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, Civil No. 4:03-CV-1384-Y, 2010 U.S.
    Dist. LEXIS 31797 (N.D. Tex. Mar. 31, 2010) ...................................................... 14

*iLOR, LLC v. Google, Inc.*,
    Civil Action No. 5:07-109-JMH, 2009 U.S. Dist. LEXIS 98584 (E.D. Ky. Oct. 15,
    2009) ....................................................................................................................... 17

*In re 60 E. 8th St. Equities, Inc.*,
    218 F.3d 109 (2d Cir. 2000) ................................................................................... 18

*Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*,
    886 F.2d 1485 (7th Cir. 1989) ............................................................................... 18

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) ............................................................................... 17

*Microstrategy Inc. v. Crystal Decisions, Inc.*,
    555 F. Supp. 2d 475 (D. Del. 2008) ....................................................................... 17

*Multi-Tech, Inc. v. Components, Inc.*,
    708 F. Supp. 615 (D. Del. 1989) ............................................................................ 17

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) ............................................................................... 6

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986) ................................................................................. 18

*Ortiz v. D & W Foods, Inc.*,
    657 F. Supp.2d 1328 (S.D. Fla. 2009) ................................................................... 18

Page(s)

*Peters v. Winco Foods, Inc.*,
  320 F. Supp.2d 1035 (E.D. Cal. 2004)................................................................18

*Phonometrics, Inc. v. Choice Hotels Int'l, Inc.*,
  65 Fed. Appx. 284 (Fed. Cir. 2003)................................................10, 11, 13, 16

*Riley v. City of Philadelphia*,
  136 F.R.D. 571 (E.D. Pa. 1991)........................................................................19

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
  781 F.2d 198 (Fed. Cir. 1986)..........................................................................16

*Sony Electronics, Inc. v. Soundview Techs., Inc.*,
  389 F.Supp.2d 443 (D. Conn. 2005)..................................................................21

*Standard Oil Co. v. American Cyanamid Co.*,
  774 F.2d 448 (Fed. Cir. 1985)..........................................................................10

*Stephens v. Tech Int'l, Inc.*,
  393 F.3d 1269 (Fed. Cir. 2004)........................................................................10

*Szabo Food Service v. Canteen Corp.*,
  823 F.2d 1073 (7th Cir. 1987)...........................................................................6

*Takeda Chem. Indus. v. Mylan Labs.*,
  549 F.3d 1381 (Fed. Cir. 2008)........................................................................17

*Tedeschi v. Smith Barney, Harris Upham & Co.*,
  579 F. Supp. 657 (S.D.N.Y. 1984)....................................................................18

*Terminix Int'l Co., L.P. v. Kay*,
  150 F.R.D. 532 (E.D. Pa. 1993).........................................................................6

*Veneziano v. Long Island Pipe Fabrication & Supply Corp.*,
  238 F. Supp.2d 683 (D.N.J. 2002)....................................................................19

**STATUTES**

28 U.S.C. § 1498.........................................................................................................9

28 U.S.C. § 1927.............................................................................................18, 21, 22

35 U.S.C. § 285......................................................................................................10-17

iv

## INTRODUCTION

Although defendant David A. Tropp's ("Tropp") infringement claim against Travel Sentry has always been frivolous, following the Federal Circuit's September 20, 2007 decision in *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) (hereinafter "*BMC*"), there was no good faith argument that Tropp could make to support his infringement claim and it should have been withdrawn.  Instead, however, Tropp and his counsel chose to ignore this clear and unambiguously preclusive precedent, and continued to advance what they knew was a baseless infringement claim against Travel Sentry.  Presumably, Tropp and his counsel vigorously pursued the claim in the hope that they would ultimately coerce Travel Sentry into a settlement (rather than incur the substantial costs necessary to defend it), or would somehow fool the Court or jury regarding the preclusive effect of *BMC* and its progeny.  When Tropp's coercion tactics did not work, Tropp tried to up the ante by suing a number of Travel Sentry's licensees in two other proceedings, asserting the very same frivolous infringement claims. Tropp's bad faith pursuit of what was clearly a baseless infringement claim renders this an exceptional case and exemplifies the conduct that § 285 and § 1927 were intended to redress. The courts are overburdened as it is with legitimate disputes and cannot be vehicles for advancing groundless ones.  As a result, Travel Sentry respectfully requests that the Court order Tropp and his counsel to pay the attorneys' fees and costs that Travel Sentry has incurred in litigating this suit since its inception, or, at a minimum, since *BMC* was decided in September 2007.

## RELEVANT BACKGROUND

### A.    Tropp's Bad Faith Towards Travel Sentry Began Before This Case.

Tropp's contentious relationship with Travel Sentry began in 2003.  By a memorandum dated September 30, 2003, which was sent to several Transportation Security Administration

("TSA") and Department of Homeland Security officials, certain members of the U.S. House of Representatives, the Wall Street Journal, USA Today, Travel Goods Association, and Samsonite Corporation, Tropp falsely accused Travel Sentry of stealing the airline luggage screening idea that he submitted to the TSA via a confidential proposal, and called for an investigation into Travel Sentry.  (*See* Affidavit of Zachary W. Berk ("Berk Aff."), submitted herewith,  Ex. A (Sept. 30, 2003 Tropp Memorandum)).  On November 6, 2003, the TSA responded to Tropp and informed him that it had investigated Tropp's allegations and concluded that they had no merit, and that neither Travel Sentry nor its founder, John Vermilye, a former TSA consultant, violated any law or governmental policy with respect to Tropp's confidential proposal.  (Berk Aff., Ex. B (Nov. 6, 2003 TSA Letter)).

Despite the TSA's letter, two weeks later, on November 17, 2003, Tropp's then attorney, Steven Horowitz, sent a letter to Travel Sentry and Mr. Vermilye ─ again without any factual basis ─ accusing Mr. Vermilye of misappropriating Tropp's luggage screening concept and threatening litigation.  (Berk Aff., Ex. C (Nov. 17, 2003 Horowitz Letter)).  Soon thereafter, Tropp sent letters to numerous Travel Sentry licensees ─ including, among others, Brookstone, L.L. Bean, The Sharper Image and Hammacher Schlemmer ─ informing them that he intended to sue Travel Sentry for patent infringement and misappropriation of trade secrets.  (Berk Aff., Ex. D (Collection of Tropp Letters)).

In an effort to stop the damage caused by these false and defamatory comments by Tropp, Travel Sentry eventually had to sue him and his company, Safe Skies, LLC.  That complaint was filed in this Court on May 13, 2005 as Civil Action No. 05-CV-2338 (the "Defamation Action").

(Berk Aff., Ex. E (Defamation Action Complaint)).[1]  After discovery and following Travel Sentry's filing of a motion for partial summary judgment, the case settled in August 2006 and Tropp entered into a stipulated injunction which barred him from making any further false statements regarding Travel Sentry and its business, including any statement that any of his "ideas" had been taken by Travel Sentry.  (Berk Aff., Ex. F (Injunction in Defamation Action)).  Notably, Tropp admitted during discovery in the Defamation Action that he sent several letters to Travel Sentry customers intending that such letters would cause the customers to cease doing business with Travel Sentry.  (Berk Aff., Ex. G (Oct. 18, 2005 Tropp Dep.), pp. 185:24-186:4, 194:11-17).  He further admitted that, contrary to his statements to several third parties — that he had evidence that Travel Sentry stole his airline luggage screening concept — he was not aware of any facts to support this claim.  (*Id.* at pp. 118:23-119:13, 119:17-120:4, 121:7-25, 122:16-21, 168:12-18, 179:8-21, 219:5-17).[2]

While the Defamation Action was pending, on April 4, 2006, the first of the patents at issue in this case, U. S. Patent No. 7,021,537 (the "'537 Patent"), issued.  That same day, Travel Sentry filed suit in the District of New Hampshire (Civil Action No. 06-cv-0118) seeking declarations of invalidity, non-liability and noninfringement.  (Berk Aff., Ex. I (N.H. Complaint)).  On December 1, 2006, the New Hampshire action was dismissed on personal

---

[1]  In the Defamation Action Complaint, Travel Sentry sued for violation of Section 43 of the Lanham Act, defamation, tortious interference with contractual relations, interference with advantageous business relations, and violation of N.Y. Gen. Bus. Law Section 349.  (*Id.*).

[2] In the same deposition, Tropp was also forced to admit that he had lied to Mr. Vermilye and had acted deliberately deceptively in several communications with him.  In September and October, 2003, Tropp sent several emails to Mr. Vermilye using a fake hotmail address and the alias "James Fenton."  Tropp (posing as "Mr. Fenton", a "student" interested in post 9/11 luggage logistics) asked Mr. Vermilye how he had developed the Travel Sentry concept.  Tropp also telephoned Mr. Vermilye to follow up on the emails, again posing as the fictional Mr. Fenton, and attempted to get Mr. Vermilye to admit that the Travel Sentry idea was not his.  On cross examination, Tropp conceded that his statements to Vermilye were untrue and that he deliberately misled him.  Tropp's cavalier position was that it would have been "ridiculous" to tell the truth.  (*Id.*, pp. 156:7-164:17; *see id.*, Ex. H (Oct. 19, 2005 Tropp Dep.), 240:9-246:6 & Dep. Ex. 15).

jurisdiction grounds.  Travel Sentry then filed the same claims in this action on December 4, 2006, seeking declarations of invalidity, non-liability and noninfringement of both the '537 Patent and Tropp's second patent, U. S. Patent No. 7,036,728 (the "'728 Patent"), which had issued on May 2, 2006.  (*See* Docket Entry "DE" 1).  Tropp served his Answer and Counterclaim on January 5, 2007, alleging that Travel Sentry willfully infringed both the '537 and '728 Patents.  (*See* DE 14).

## B.     Tropp's Groundless Infringement Claim.

As Travel Sentry explained prior to and in its Motion for Summary Judgment of Noninfringement (DE 134), and as the Court recognized in its September 10, 2010 Memorandum and Order (DE 154) (the "9/10/10 Order"), it was (and is) legally and factually impossible for Tropp to show any infringement by Travel Sentry.  Not only does Travel Sentry not perform each step of the claimed method (or control any others who may perform those steps), each of the claims of Tropp's patents includes a step, which Travel Sentry referred to as the "luggage screening step," that requires a luggage screening entity to perform a particular procedure in its screening of airline luggage.  Therefore, when Tropp filed his counterclaim for infringement on January 5, 2007, he knew (or should have known) that, under the applicable patent law, Travel Sentry had to either perform or exert a high level of control over another's performance of airline luggage screening procedures for it to be subject to any liability for either direct or indirect infringement.  *See, e.g., Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311 (Fed. Cir. 2005); *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1568 (Fed. Cir. 1985).

Instead, Tropp knew from the outset that the TSA performed *all* airline luggage screening in the U.S., and was never under either Travel Sentry's or his direction or control.[3]

Accordingly, Tropp never had any factual basis to assert claims against Travel Sentry. From the outset, Tropp's infringement claim hinged on the viability of his joint infringement theory and, specifically, whether Travel Sentry exerted the requisite direction or control over the TSA's luggage screening procedures (or any other steps of the process).  However, because his MOU with the TSA, which he entered into in 2004 — well before he filed his infringement claims — was the same as Travel Sentry's (and which made clear that the TSA was in *sole* control of its screening procedures), he never had any factual basis to assert or maintain his infringement claim against Travel Sentry.[4]

Moreover, to the extent Tropp argues that the law prior to *BMC* was sufficiently unsettled that his claim against Travel Sentry was just short of frivolous, following the *BMC* decision he simply had no basis to allege that Travel Sentry exercised the amount of direction and/or control over the TSA (because the MOU itself showed that the TSA maintained total control of all luggage screening) to meet the vicarious liability standard articulated by the Federal Circuit.  *See BMC Resources, Inc.,* 498 F.3d at 1379.[5]

_____

[3] Tropp was clearly aware of the fact that the TSA controlled all luggage screening *years* before filing his infringement claims, and at least by January 2003 when he submitted his luggage screening proposal to the TSA. He also testified that his "invention" was a response to the TSA's December 2002 announcement of its policy and that his concept would not work absent TSA performing the luggage screening step.  (Berk Aff., Ex. G, pp. 24:5-26:17, 83:16-84:7).  Further, Tropp's own Memorandum of Understanding ("MOU") with the TSA, like Travel Sentry's, did not create any semblance of control over the TSA.

[4] Indeed, Tropp was well aware of the content of Travel Sentry's MOU, its only "agreement" with the TSA, from discovery produced by Travel Sentry in the Defamation Action (and long before this action was filed).  *See infra* at n.15.   And, as this Court correctly recognized, Travel Sentry's MOU with the TSA (like Tropp's) is nothing more than a "relatively noncommittal 'understanding,'" and is a far cry from the level of control over the luggage screening step needed for a finding of infringement.

[5] If Tropp or his counsel tries to claim that they were not aware of *BMC* as of September 2007, such an argument would be unavailing as ignorance of the law is not a defense.  *See Borowski v. DePuy, Inc.*, 850 F.2d 297, 304-05

Ultimately, Travel Sentry had to litigate this case through the summary judgment stage due to Tropp's (and his counsel's) refusal to acknowledge the frivolousness of his infringement claim. Following his receipt of Travel Sentry's summary judgment memoranda on October 16, 2009, which spelled out yet again the frivolousness of Tropp's claim in light of *BMC* and its progeny,[6] rather than withdraw his claim, Tropp submitted an opposition that: (1) relied on nothing more than the MOU — which he knew full well establishes that the TSA was under *no* contractual obligation to or control by Travel Sentry to perform the luggage screening step; (2) blatantly misstated and misapplied the law of direct infringement articulated by *BMC*;[7] (3) failed to cite a single case to support his assertion that Travel Sentry "controlled" the TSA (or that it

_____

(7th Cir. 1988) (counsel's "'ostrich like tactic of pretending that potentially dispositive authority did not exist' [is] precisely the type of behavior" that justifies imposing sanctions) (quoting *Szabo Food Service v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir. 1987)); *Frantz v. U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1064 (7th Cir. 1987) ("[a] party may not strike out blindly and rely on its opponent to do the research to make the case or expose its fallacies"); *Terminix Int'l Co., L.P. v. Kay*, 150 F.R.D. 532, 537 (E.D. Pa. 1993) ("party's position, even if superficially plausible, cannot be accepted as a good faith argument for the extension of the existing law if, in framing the pleadings, the party ignores the controlling authority"). In any event, subsequent submissions by Travel Sentry, which referenced and discussed *BMC*, alerted Tropp and his counsel to the fact that his claim was entirely groundless. Travel Sentry first referenced the *BMC* decision and its impact as early as June 2, 2008, when it served Tropp with the Rebuttal Expert Report of Harry Manbeck, Jr. (Berk Aff., Ex. J (Rebuttal Manbeck Report), pp. 5-6). Soon thereafter, on June 17, 2008, the parties discussed Travel Sentry's bases for non-infringement, including the *BMC* case, at the mediation before Magistrate Judge Mann. Then, on August 21, 2008, Travel Sentry filed a letter requesting a pre-motion conference on its anticipated summary judgment motions, (DE 107), laying out why Tropp's infringement claims were baseless under *BMC*. (Berk Aff., Ex. K (DE 107)).

[6] Although there was no doubt about the non-viability of Tropp's infringement theory following *BMC*, the frivolousness of Tropp's claim was further highlighted by cases that subsequently applied the *BMC* standard. *See, e.g., Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008) ("the control or direction standard [for direct infringement] is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method"); *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008) ("mere guidance or instruction in how to conduct some of the steps of the method patent" does not constitute the "direction or control" required for a finding of direct infringement); *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 834 (S.D. Tex. 2008) ("the alleged infringer must *cause* third parties to perform steps of the claimed method in accordance with specific instructions *and* requirements") (emphasis added).

[7] As is noted in Travel Sentry's Reply in support of its Motion for Summary Judgment of Noninfringement, *see* DE 143 at p. 6, Tropp asserted that, under *BMC*, a party may be liable for direct infringement where it "performs or uses" each and every step of a claimed method, suggesting disingenuously that Travel Sentry's limited role in the process falls into the category of "use." Had Tropp cited to the next paragraph and beyond in *BMC*, he would have been forced to concede that the Federal Circuit's reference to "use" applied to a device, not a method patent like those here.

controlled any of its licensees) under the facts here; (4) failed to even attempt to distinguish any of the cases relied upon by Travel Sentry in its moving brief; and (5) intentionally combined several steps of the Patents' independent claims so as to try to conceal the baselessness of his infringement claim.  (Berk Aff., Ex. L (DE 139 - Tropp's opposition brief)).

## C.    Other Indicia of Bad Faith.

In addition to Tropp's failure to refrain from filing, or to withdraw, what was clearly a frivolous infringement claim, Tropp engaged in other actions that show his willfulness and intent to prosecute claims regardless of their merit.  Prior to filing this case, Tropp told several Travel Sentry customers, without any factual basis, that Travel Sentry infringed his Patents and filed his counterclaim for infringement in this case (and other subsequent proceedings), apparently without ever performing a pre-filing investigation with counsel to determine the viability of his infringement claim.  (Berk Aff., at ¶ 15, and Ex. M (Tropp's Responses and Objections to Travel Sentry's First Set of Interrogatories), pp. 5-6).[8]

During the course of this action, Tropp also failed to produce a claim chart that even so much as attempted to describe how Travel Sentry performed or directed another's performance of the luggage screening step.  Instead, on January 31, 2007, and by supplement on September 28, 2007, Tropp produced a claim chart that simply left the analysis section next to the luggage screening step entirely blank.  (Berk Aff., Ex. L, pp. 7-9, and Ex. O (Tropp's Supplemental Interrogatory Responses), pp. 4-12).  In addition, despite the clear noncommittal nature of the MOU, and the fact that Safe Skies had entered into a nearly identical version with

---

[8] Indeed, Tropp never produced anything in discovery or on a privilege log indicating that he had performed the required pre-suit investigation to determine if there was any good faith basis to sue Travel Sentry for infringement. (Berk Aff., at ¶ 15; *see also* Berk Aff., Ex. N (Sep. 25, 2007 Tropp Dep.), pp. 144:17-147:12).  Travel Sentry, on the other hand, performed a thorough pre-suit analysis and obtained an opinion of counsel that the Patents were both invalid and not infringed.

the TSA long before this case was filed, Tropp denied Travel Sentry's request for admission that stated that "neither Tropp nor Safe Skies has an agreement with the TSA that *requires* the TSA or its employees to inspect luggage by looking for an identification structure."  (Berk Aff., Ex. P (Tropp's Admission Responses), p. 7) (emphasis added).  Tropp also was very evasive at his depositions and repeatedly refused to provide any testimony as to the grounds for his infringement claim.  (Berk Aff., Ex. N, pp. 247:2-278:13).  In addition, Tropp's deposition answers were evasive on many other topics, requiring Travel Sentry to take several more days than should have been necessary to depose him.  Travel Sentry also had to move to compel answers to several areas of inquiry, which were allowed by the Court.  (Berk Aff., Exs. Q (DE 57 - motion to compel) and R (DE 65 - order granting motion to compel)).[9]

In addition, on November 2, 2008, well after *BMC* and several of its progeny were decided, and after Travel Sentry filed its pre-motion conference letter detailing its noninfringement arguments, Tropp initiated the related "licensee action" in this Court, *Tropp v. Conair Corp. et al.*, 08-cv-04446 (the "Related Action"), against seventeen (17) of Travel Sentry's licensees and distributors of Travel Sentry marked locks.  (Berk Aff., Ex. T (Related Action Complaint)).  Although Tropp's commencement of the Related Action does not directly impact Travel Sentry's fees and costs in this case (other than costs to respond to frivolous third party discovery), Tropp's escalation of the dispute by asserting equally baseless claims against Travel Sentry's licensees is strong evidence of his ill motives.  Not only did Tropp vexatiously multiply his dispute with Travel Sentry by commencing the Related Action, but he also made a

---

[9] In addition, as the Court noted in the 9/10/10 Order (at p. 12), Tropp radically changed his testimony between the Defamation Action and this action, in an attempt to stave off a finding of invalidity of the patents.  (Berk Aff., Ex. S (Plaintiff's Statement of Material Facts), ¶¶ 45-46; Ex. G, pp. 80:10-84:7; and Ex. N, pp. 196:6-201:20, 207:2-211:24, 219:3-221:23).  Tropp's contention that he was simply "supplementing" or "clarifying" his prior testimony is highly suspect, and is further evidence of his bad faith.

tacit admission of the baseless nature of his infringement claim, thereby further exposing his bad faith motives.  Specifically, in opposing the Related Action defendants' Motion for Summary Judgment Based on 28 U.S.C. § 1498, Tropp made the following assertion, which directly undermines his infringement argument in this case (*and* the Related Action) regarding Travel Sentry's control over the TSA:

> The relationship between Travel Sentry and the TSA was governed by nothing more than an [sic] Memorandum of Understanding (MOU), an aspirational expression of a joint hope that TSA would make "good faith efforts" to use Travel Sentry locks "whenever practical." No mandate, no specified government program and no contractual obligation was implicated.

(Berk Aff., Ex. U (Plaintiff's opposition brief), p. 4).

Similarly, on September 15, 2009, Tropp initiated yet another action before the International Trade Commission ("ITC") against nineteen (19) other Travel Sentry licensees, who are lock and luggage manufacturers in Europe and Asia, alleging patent infringement as a result of their manufacture and importation of Travel Sentry marked locks.  (Berk Aff., Ex. V (ITC's Mar. 18, 2010 Order granting summary determination)).[10]  The ITC action was also summarily dismissed on March 18, 2010, for essentially the same reasons articulated by this Court in its 9/10/10 Order.  (*Id.*)  Notably, although Tropp chose not to appeal the ITC ruling, which definitively explained the baseless nature of Tropp's infringement claim as it related to Travel Sentry and the lock manufacturer licensees, he did not withdraw his infringement claim in this case (or in the Related Action).  Like the Related Action, the groundless ITC proceeding does not directly impact the fees incurred by Travel Sentry in this case, but it does show the pattern of conduct by Tropp and strongly suggests his bad faith motives.

---

[10] It is worth noting that the identity of the nineteen (19) ITC respondents is not publicly disclosed by Travel Sentry. It is therefore not at all clear to Travel Sentry how Tropp could have learned the identity of these respondents absent a violation by Tropp and/or his counsel of the Protective Order in this case.

# ARGUMENT

**A.    Tropp's Unreasonable and Bad Faith Pursuit of His
Baseless Infringement Claim Renders this an Exceptional
Case for Which a Fee Award Under 35 U.S.C. § 285 is Appropriate.**

Under 35 U.S.C. § 285, a court "in exceptional cases may award reasonable attorney fees to the prevailing party."  "Among the types of conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit."  *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) (citing *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455 (Fed. Cir. 1985)).  "The determination of whether a case is exceptional and, thus, eligible for an award of attorney fees under § 285 is a two-step process."  *Phonometrics, Inc. v. Choice Hotels Int'l, Inc.*, 65 Fed. Appx. 284, 285 (Fed. Cir. 2003) (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc)).  First, the district court must undertake a factual inquiry to determine whether a case is exceptional.  *Id.* Second, "[a]fter determining that a case is exceptional, the district court must determine whether attorney fees are appropriate."  *Id.*

1.    Tropp's Bad Faith Pursuit of a Frivolous Infringement
        Claim Renders this Case Exceptional Under § 285.

Courts have repeatedly held that a case is exceptional when it is determined to be frivolous.  *See, e.g.*, *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1273-1274 (Fed. Cir. 2004).  "A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known was baseless."  *Id.* at 1272-1274 (quoting *Haynes Int'l Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993), reh'g granted on other grounds, 15 F.3d 1076 (Fed. Cir. 1994)).  The "reasonableness of the patentee in assessing infringement is a proper

10

consideration." *Astrazeneca AB*, 2010 U.S. Dist. 32883 at *10 (quoting *Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990)).  When a "patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." *Eltech Sys. Corp.*, 903 F.2d at 810-11.  Tropp's frivolous pursuit of his infringement claim here squares perfectly with the above standard for finding an exceptional case under § 285.

Numerous courts have held that conduct similar to Tropp's conduct rises to the level of an exceptional case under § 285.  In *Phonometrics, Inc. v. Choice Hotels Int'l, Inc.*, 65 Fed. Appx. 284, 284 (Fed Cir. 2003), the Federal Circuit affirmed a finding that the plaintiff's infringement suit was "vexatious and deserving of exceptional case status" when it failed to withdraw its infringement claim once a claim construction decision in another case rendered the plaintiff's claim meritless.  The Court's determination that the case was exceptional was based on the fact that the plaintiff, like Tropp here, "took no affirmative steps to end th[e] litigation and instead proceeded to oppose a motion for summary judgment of noninfringement" despite having "been unable to articulate any plausible basis for how the . . . accused system [met a particular] claim limitation[.]" *Id.* at 285.

In *Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805 (Fed. Cir. 1990), the Federal Circuit affirmed the lower court's exceptional case finding and corresponding § 285 attorneys' fees award where the plaintiffs' infringement claim was determined to be meritless.  The district court based its finding of noninfringement on the "total lack of evidence" that the accused method infringed the chemical "baking" method claimed in the patents at issue, because there was no evidence that a particular chemical powder melted at 425 degrees Fahrenheit as required by the

patents.  *Id.* at 807.  The Court upheld the district court's finding that the plaintiffs' infringement

claim was meritless and amounted to bad faith due to, among other things, the fact that the

plaintiffs relied on an expert who concluded that the defendant infringed the patents despite

performing no testing, the fact that the plaintiffs "submitted *no* evidence probative of

infringement," and the fact that the plaintiffs mischaracterized applicable law.  *Id.* at 810

(emphasis in original).  In reaching its decision, the Court also emphasized the fact that a party

cannot "attempt[] to escape the consequences of its conduct with the bare statement, 'I didn't

know.'"  *Id.*

The § 285 repercussions for frivolous litigation were also recently addressed by the

Southern District of New York in *Astrazeneca AB, Aktiebolaget Hassle v. Dr. Reddy's Lab., Ltd.*,

07 Civ. 6790 (CM), 2010 U.S. Dist. LEXIS 32883, *10 (S.D.N.Y. Mar. 30, 2010).  In that case,

the Court found that § 285 sanctions were "entirely appropriate" where the court was "forced to

deal with [the plaintiffs'] meritless litigation."  *Id.* at *1.  The Court held that the totality of the

circumstances rendered the case "exceptional"  where the plaintiffs continued to maintain their

infringement claim despite the fact that it "was apparent from a reading of the patent" that the

defendants did not use the patented process.  *Id.* at *2.  The Court found that the plaintiffs

pressed the case until summary judgment despite "never [putting] forward any evidence of

infringement."  *Id.* at *11.  The Court also found it noteworthy that, like here, "every court that

addressed the merits of [plaintiffs'] claim concluded without much effort that it was frivolous."

*Id.*  In conclusion, the Court explained that the case was exceptional under § 285 because it "was

not close," was maintained in bad faith as illustrated by the fact that the plaintiffs proceeded with

arguments "that a reasonable attorney would know are baseless," and "was obvious from very

early on that plaintiffs had brought and were maintaining th[e] lawsuit in a desperate effort to

keep any *competing* product from hitting the shelves." *Id.* at *2-3, *11, *14.

   As in the above cases, the totality of Tropp's conduct can lead to no other conclusion

than that Tropp's continued pursuit of this frivolous case, particularly following the *BMC*

decision, constituted bad faith and, thus, renders this case "exceptional" under § 285.  When the

*BMC* decision issued, any reasonable patentee or attorney would have known that the MOU (the

only fact Tropp cited as a basis of control by Travel Sentry, and which he later described as an

"aspirational expression of a joint hope" and this Court described as a "relatively noncommittal

'understanding'") did not come even close to the stringent, vicarious liability standard for

direction or control articulated by *BMC*.  Tropp failed to point to any other evidence (because

there is none) to support his claim that Travel Sentry either performed or controlled the TSA's

performance of the Patents' luggage screening step.  Despite this total lack of evidence, Tropp

continued to pursue his groundless claim against Travel Sentry.  As exemplified by the

*Phonometrics, Inc.*, *Eltech Sys. Corp.*, and *Astrazeneca* cases, such a pursuit of a frivolous claim

renders this case exceptional for purposes of § 285.

   While Tropp's continued pursuit of his frivolous claim is alone enough to warrant an

exceptional case finding, when coupled with his other dubious conduct, it is clear that Tropp

maintained his infringement claim in bad faith and to try to obtain an improper advantage in the

marketplace.  As is detailed above, Tropp's bad faith conduct dates back to well before the start

of this case, when, without any basis whatsoever, he publicly accused Travel Sentry and

Mr. Vermilye of stealing his luggage screening idea and threatened an infringement suit.  Travel

Sentry was subsequently forced to file the Defamation Action which led to Tropp entering into

an injunction barring any further false statements to third parties regarding Travel Sentry.

Thereafter, when his Patents issued, Tropp filed a counterclaim for infringement despite no evidence of ever investigating the validity of his claim. *See Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, Civil No. 4:03-CV-1384-Y, 2010 U.S. Dist. LEXIS 31797, at *14 n.2 (N.D. Tex. Mar. 31, 2010) ("the adequacy of counsel's pre-filing investigation is relevant to . . . fees under § 285") (citations omitted).

After this case was filed, as noted above, Tropp was repeatedly evasive regarding the basis for his infringement claim, and served several claim charts without *any* explanation as to how Travel Sentry could be found responsible for the performance of the luggage screening step. Other examples noted above include, among others:

- Tropp's inexplicable denial of a request for admission, in reliance on the MOU between Safe Skies and the TSA that was nearly identical to Travel Sentry's MOU, that neither he nor Safe Skies had an agreement with the TSA that required it to perform the luggage screening step;

- his refusal to answer several basic questions at his deposition regarding how the Travel Sentry concept infringed his patent;

- his challenge, without any basis or citation to the record, of several of Travel Sentry's statements of undisputed material fact regarding the TSA's statutory/regulatory authority in response to Travel Sentry's summary judgment motion; and

- his misstatement of the *BMC* standard for direct infringement in his opposition to Travel Sentry's noninfringement motion.

While the above is strong evidence of Tropp's bad faith intent, his motives became even more clear when he sued numerous Travel Sentry licensees in the Related Action in November 2008, asserting the *exact same* groundless theory of infringement. Tropp brought the Related Action more than a year after *BMC* was decided and long after he was aware of Travel Sentry's noninfringement position under *BMC*. Moreover, Tropp repeatedly fought motions by the Related Action defendants to stay that case until the outcome of this case was decided. In so

14

doing, Tropp knowingly escalated the costs of litigation based on groundless claims, both here and in the Related Action.

Tropp also initiated the ITC action in September 2009, two years after *BMC* and just before Travel Sentry served its summary judgment motions in this case.[11]  When the ITC case was dismissed on summary determination (based on *BMC* and its progeny), Tropp chose not to appeal that decision (presumably because he knew an appeal would be baseless and the decision by the Federal Circuit would gut his other pending claims here and in the Related Action).  At that point, the writing was clearly on the wall for Tropp, yet he still failed to withdraw his claims in either this case or the Related Action.[12]

Based on the above, Tropp cannot dispute that from very early on, similar to the plaintiffs in the *Astrazeneca* case, he knew his claim had no merit and that he had brought (and vigorously pursued) this lawsuit (in addition to the other groundless proceedings that he filed) in a "desperate effort to keep any *competing* product from hitting the shelves."  *Astrazeneca AB,*

---

[11] Tropp may argue that his claim was not frivolous in light of *BMC* because, if it were, Travel Sentry would not have waited more than a year from the close of discovery and its pre-motion letter to file its summary judgment motions.  Such an argument would ignore vital facts and would be deliberately disingenuous.  First, Travel Sentry needed to complete the *Markman* process before it could move for summary judgment.  Although Travel Sentry moved several times for an early *Markman* hearing (see DE 23, 27 and 83), that hearing did not occur until December 15, 2008 (*id.*), well after the close of fact discovery.  Then, during discussions with the Court (on October 10, 2008) during the pre-motion conference for its anticipated summary judgment motions, the Court granted leave to file the motions, but indicated that if summary judgment motions were filed prior to a *Markman* decision, the Court would not entertain any post-*Markman* summary judgment motions.  Because the *Markman* decision was relevant to Travel Sentry's invalidity motion, Travel Sentry chose to follow the Court's admonition to wait until after the Court construed the Patents' claims to file both of its summary judgment motions together.  The *Markman* decision was entered on September 24, 2009, and the summary judgment motions were served shortly thereafter on October 16, 2009.

[12] Most recently, in the Related Action, Tropp submitted a letter purporting to show cause why that action is not barred by the 9/10/10 Order.  (*See* Related Action DE 235).  Tropp's submission, however, simply escalates further the costs to the parties and the Court, because it fails to directly address the *Res Judicata* question that this Court asked him to address, makes no factual showing (because there is none) to support liability, and makes circular and contradictory arguments in support of a stay.  The less vexatious route for Tropp would have been to voluntarily agree to entry of judgment and, if he believes the 9/10/10 Order can be appealed in good faith, to appeal the two cases together in a joint appeal.

*Aktiebolaget Hassle,* 2010 U.S. Dist. LEXIS 32883, at *2 (emphasis in original). Unfortunately

for Tropp, as in *Astrazeneca*, such conduct amounts to bad faith when it is coupled with a

baseless infringement position and renders a case exceptional for purposes of § 285.

> 2.    An Award of Attorneys' Fees is Appropriate To Deter
>        Other Patentees From Engaging In Similar Bad Faith Conduct
>        <u>and to Compensate Travel Sentry for the Injustice Perpetrated by Tropp.</u>

After a Court has found that a case is exceptional for purposes of § 285, it should then

determine whether, in its discretion, an award of fees is justified. *Phonometrics, Inc.*, 65 Fed.

Appx. at 285 (citing *Cybor Corp.*, 138 F.3d at 1460). A Court must weighs factors such as

"closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that

may contribute to a fair allocation of the burdens of litigation as between winner and loser." *S.C.*

*Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). "Most

significantly, an award of attorney's fees is the only protection available to an unjustly accused

infringer." *Astrazeneca AB, Aktiebolaget Hassle,* 2010 U.S. Dist. LEXIS 32883, at *24 (citing

*Abraskin v. Entrecap Corp.*, 55 F. Supp. 2d 224, 229 (S.D.N.Y 1999), *aff'd*, 2000 U.S. App.

LEXIS 16060, 2000 WL 961362 (Fed. Cir. July 11, 2000) (per curiam) (unpublished)). "An

award of attorney's fees also allows a court to protect itself from patentees who maintain abusive

and frivolous litigation" *Id.* "The different interests of the patentee and alleged infringer are

adequately taken into account in the required evaluation of the totality of the circumstances." *Id.*

at *24-25.

As detailed above, Tropp maintained what was clearly a frivolous infringement claim

from the outset, and, in any event, after the *BMC* decision. This caused Travel Sentry

unnecessarily to expend significant resources to defend this litigation (as well as the Related

Action and the ITC action) for an additional three years.[13]  Tropp pursued his baseless claim in

bad faith in the hope of either pressuring Travel Sentry into a settlement (which became more

apparent as he proceeded to initiate other actions against Travel Sentry's licensees), deceiving

the Court and/or jury that his claim was sound, or driving Travel Sentry's licensees to give up

and begin doing business with his company, Safe Skies.  This is precisely the type of conduct

that warrants a fee award under § 285.  Not only would such an award serve to compensate

Travel Sentry, at least in part, for the injustice of having to endure the large cost and aggravation

of defending this groundless suit, but it would also deter other patentees from burdening courts

with frivolous infringement claims that are aimed at seizing an improper competitive business

advantage.  *See Takeda Chem. Indus. v. Mylan Labs.*, 549 F.3d 1381, 1388-90 (Fed. Cir. 2008)

(section 285 award affirmed where district court found that the parties made baseless filings and

engaged in other litigation misconduct); *Mathis v. Spears*, 857 F.2d 749, 753-754 (Fed. Cir.

1988) (section 285 award appropriate where plaintiff "severely injured [defendant], having

forced it to defend, at monstrous expense, its right freely to compete, subjecting [defendant] to a

totally unwarranted suit and two unwarranted appeals"); *iLOR, LLC v. Google, Inc.*, Civil Action

No. 5:07-109-JMH, 2009 U.S. Dist. LEXIS 98584, at *12-13 (E.D. Ky. Oct. 15, 2009) (section

285 sanctions awarded where "case was brought in objective bad faith and was frivolous based

on iLOR's awareness of or, at best, willful blindness to, [the infringement claim] flaws");

*Microstrategy Inc. v. Crystal Decisions, Inc.*, 555 F. Supp. 2d 475, 482 (D. Del. 2008) (court

awarded fees under § 285 where it found a "gross injustice" had been perpetrated as a result of

the patentee's "forcing an alleged infringer to defend against apparent baseless claims"); *Multi-*

---

[13] Tropp knew early on that several of the licensees he sued in the Related Action were indemnified by Travel
Sentry, causing those defendants' fees and costs to be borne by Travel Sentry.  (Berk Aff., ¶ 26 and Ex. W (sample
of license agreements produced in this action in 2007) at TS000239, TS000422).

*Tech, Inc. v. Components, Inc.*, 708 F. Supp. 615, 620 (D. Del. 1989) (finding of exceptional

case and awarding attorneys' fees after grating summary judgment for noninfringement).

**B.     Tropp's Counsel's Unreasonable and Vexatious
        Conduct Also Warrants the Imposition of Attorneys' Fees
        Under 28 U.S.C. § 1927 and the Court's Inherent Authority.**

28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any

case unreasonably and vexatiously may be required by the court to satisfy personally the excess

costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  That statute

authorizes sanctions when an attorney's actions are "so completely without merit as to require

the conclusion that they must have been undertaken for some improper purpose" and upon "a

finding of conduct constituting or akin to bad faith."  *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d

Cir. 2009) (citing *In re 60 E. 8th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000)); *Oliveri v.

Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).  The purpose of § 1927 is to "deter frivolous

litigation and abusive practices by attorneys . . . and to ensure that those who create unnecessary

costs also bear them."  *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th

Cir. 1989); *see also Gollomp*, 568 F.3d at 373 (sanctions granted as a result of claims that were

"frivolous in light of the well-established case law") (internal punctuation omitted).

An attorney's conduct constitutes bad faith when he "knowingly or recklessly raises a

frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."

*Peters v. Winco Foods, Inc.*, 320 F. Supp.2d 1035, 1041 (E.D. Cal. 2004); *see also Ortiz v. D &

W Foods, Inc.*, 657 F. Supp.2d 1328, 1330 (S.D. Fla. 2009) (section 1927 "provides relief against

an attorney who knowingly or recklessly pursues a frivolous claim").  Thus, as here, where an

attorney advances claims that he knows or should have known to be without merit, sanctions are

appropriate under § 1927.  *See Tedeschi v. Smith Barney, Harris Upham & Co.*, 579 F. Supp.

657, 661 (S.D.N.Y. 1984) (sanctions pursuant to § 1927 were justified where attorney acted in bad faith and must have known that claims advanced were groundless); *Bowler v. U.S. Immigration & Naturalization Serv.*, 901 F. Supp. 597, 605-06 (S.D.N.Y. 1995) (same); *Davey v. Dolan*, 453 F. Supp. 2d 749, 757 (S.D.N.Y. 2006) (attorneys' fees granted where claims were completely without merit and plaintiff "knew or should have known" that he was precluded from advancing claims in federal court); *Gollomp*, 568 F.3d at 369-71 (sanctions granted where plaintiff's attorney knew that claims were barred and thus acted in bad faith); *Barash v. Kates*, 585 F. Supp.2d 1347, 1359 (S.D. Fla. 2006) ("where an attorney 'knowingly or recklessly' pursues a frivolous claim, or needlessly obstructs the litigation of a non-frivolous claim, then the Court may impose sanctions under section 1927"); *Danielson v. Winnfield Funeral Home of Jefferson, Inc.*, 634 F. Supp. 1110, 1119 (E.D. La. 1986) (sanctioning attorney under § 1927 where plaintiff's claims were frivolous); *Veneziano v. Long Island Pipe Fabrication & Supply Corp.*, 238 F. Supp.2d 683, 685 (D.N.J. 2002) (same); *Fifth Third Bank v. Boswell*, 125 F.R.D. 460, 463 (S.D. Ohio 1989) (same); *Riley v. City of Philadelphia*, 136 F.R.D. 571, 574 (E.D. Pa. 1991) (same).

Here, Tropp's counsel initiated infringement claims without a legal or factual basis, and continued to pursue the frivolous claim even after the *BMC* decision made it clear that a party that did not perform each and every step of a claimed method could only be liable for direct infringement when it "controlled the conduct of the acting party" such that the law would impose vicarious liability. *BMC Resources, Inc.*, 498 F.3d at 1379.[14] Once *BMC* was decided, Tropp's counsel knew, or should have known, based on the MOU and the discovery produced in the case,

---

[14] Tropp was represented by Jenner & Block LLP from the inception of the case until April 3, 2009, when Jenner withdrew and Donald Dinan, of Roetzel & Andreas LPA entered his appearance and has represented Tropp to date. (*See* DE 119).

that Tropp would be unable to succeed on his infringement claim.[15]  Despite the unambiguous

law and lack of factual support, Tropp's counsel forced Travel Sentry to incur substantial fees in

defending against Tropp's baseless claim.

Moreover, despite receiving numerous submissions from Travel Sentry's counsel

regarding the *BMC* decision's clear preclusive effect on Tropp's claim, Tropp's counsel never

withdrew the infringement claim, forcing Travel Sentry to engage in additional protracted

motions, engage in additional discovery, prepare expert reports and draft its two summary

judgment motions.  Tropp's counsel even further showed its bad faith by filing an opposition that

blatantly misstated and misapplied the law, did not attempt to distinguish any of the cases cited

in Travel Sentry's moving brief, did not cite a single case to support the position that Travel

Sentry controlled the TSA (or its licensees), and provided no basis in fact for infringement.[16]

Even worse, while Travel Sentry's summary judgment motions were still pending,

Tropp's counsel failed to withdraw this case despite the fact that Tropp's attorneys in the Related

Action affirmatively acknowledged, on January 27, 2010, that Travel Sentry did not exercise any

control over the TSA.  (*See* Berk Aff., Ex. U, p. 4) (the "relationship between Travel Sentry and

the TSA was governed by nothing more than an . . . aspirational expression of a joint hope . . . .

***No mandate, no specified government program and no contractual obligation was***

***implicated***.") (emphasis added).  In light of Tropp's unusually candid analysis of the MOU in the

---

[15] Indeed, by September 20, 2007, Tropp's counsel had long had the Travel Sentry/TSA MOU (initially produced in the Defamation Action in October, 2005), had taken depositions of Travel Sentry representatives (on Oct. 19, 2005, Aug. 3, 2007, and Sept. 12, 2007) and thus knew that there was no contractual or other basis to claim that Travel Sentry directed or controlled the TSA in its luggage screening procedures.

[16] In fact, Tropp's new counsel, Mr. Dinan, began his representation of Tropp approximately six months before Travel Sentry filed its Motion for Summary Judgment of Noninfringement.  Thus, Tropp's new counsel should have been keenly aware of the import of the *BMC* decision when reviewing the merits of the case prior to stepping in for Tropp's former attorneys, and had sufficient time to withdraw the case prior to summary judgment.

Related Action, Tropp's counsel here could not have reasonably believed that there was a colorable claim for infringement.

Courts in this Circuit have previously determined that in circumstances similar to those here, an attorney's conduct is so unreasonable as to warrant the imposition of attorneys' fees under § 1927.  For example, in *Sony Electronics, Inc. v. Soundview Techs., Inc.*, 389 F.Supp.2d 443 (D. Conn. 2005), the plaintiffs, television manufacturers and industry associations, had brought an action seeking a declaration that "v-chip" televisions did not infringe the defendant's patent.  Following the court's finding of noninfringement, the court directed the parties to brief a motion for summary judgment on the defendant's antitrust counterclaim on the representation that "there is no antitrust liability without infringement."  *Id.* at 446.  The court then granted the plaintiffs' motion for summary judgment on the defendant's antitrust counterclaims.  In analyzing the plaintiffs' motion for attorneys fees pursuant to § 1927, the court noted that the defendant "persisted in its claim of a viable antitrust theory even after the Court granted summary judgment to the [plaintiffs] on non-infringement, at which point it should have been obvious that [the defendant's] antitrust claim was frivolous."  *Id.*  The court held that given this persistence, attorneys' fees were justified.  *Id.* at 446-47.  Likewise, Tropp's counsel's insistence on advancing his claim of infringement while aware that the claim was not viable, and, indeed, frivolous, constitutes conduct sufficient under § 1927 to impose attorneys' fees.

Similarly, in *Baker v. Urban Outfitters, Inc.*, 431 F. Supp.2d 351 (S.D.N.Y. 2006), the court considered the defendant's motion for attorneys' fees under § 1927.  The plaintiff had filed suit alleging copyright infringement, tortious misappropriation of goodwill, and infringement under the Digital Millennium Copyright Act.  In granting the defendant's motion, the Court noted that "[i]t is also significant that [plaintiff's attorney] clearly was aware of the law in this

area . . ." *Id.* at 363.  The Court further stated that in view of the clearly established law and considering the plaintiff's attorney's "knowledge of this point of law, it was unreasonable, vexatious, and clearly in bad faith" for plaintiff's attorney to pursue the frivolous claims.  *Id.* Further, "[n]ot only was it improper for [plaintiff's attorney] to plead such a claim, but it was also unreasonable and vexatious for [him] to maintain it for so long before agreeing to dismissal." *Id.*  Thus, the Court found that counsel's "actions in delaying the dismissal of this facially invalid claim were so lacking in merit as to amount to bad faith and vexatiously multiplied the proceedings," justifying an award of attorneys' fees under § 1927. *Id.* at 364.  *See also id.* at 364-65 (again determining that counsel's refusal to agree to an immediate dismissal of another claim he knew to be without merit constituted bad faith, and therefore justified the imposition of attorneys' fees).

Similarly, in this case, Tropp's counsel's persistence and aggressiveness in pursuing the infringement claim, particularly after it became indisputable that the *BMC* decision eviscerated such a claim, amounts to bad faith and has "vexatiously multiplied the proceedings."  This Court should therefore order Tropp's counsel to pay (jointly and severally with Tropp) the attorneys' fees and costs incurred by Travel Sentry since the inception of the case, or at least after September 20, 2007 (the date the *BMC* decision issued) pursuant to § 1927.

## CONCLUSION

Since the beginning of 2007, Tropp has burdened this Court in two separate proceedings, based on knowingly groundless infringement claims.  He has also put Travel Sentry through enormous expense, business distraction and angst for which it will have no redress absent a fee award.  Accordingly, Travel Sentry requests that the Court grant it an award of attorneys' fees pursuant to §§ 285 and 1927, from either the inception of the case, the date of the *BMC* decision

22

forward (or such other date that the Court deems appropriate), as a result of Tropp's and his counsel's bad faith pursuit of what was clearly a frivolous infringement claim.

Dated: Boston, Massachusetts
   September 24, 2010

**SEYFARTH SHAW LLP**

 */s/  William L. Prickett*
William L. Prickett (WP-7278)
Seyfarth Shaw LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800
Facsimile:  (617) 946-4801

**ATTORNEYS FOR TRAVEL SENTRY, INC.**

**CERTIFICATE OF SERVICE**

 I hereby certify that on September 24, 2010, I served the foregoing **MEMORANDUM OF LAW IN SUPPORT OF TRAVEL SENTRY'S MOTION FOR FEES AND COSTS PURSUANT TO 35 U.S.C. § 285 AND 28 U.S.C. § 1927** upon former and present counsel for Defendant, via ecf and e-mail (PDF version), and overnight mail.

       */s/ Zachary W. Berk*
       Zachary W. Berk

12723661v.4