UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

TRAVEL SENTRY, INC.,                                Hon. Eric Vitaliano, U.S.DJ.
                                                    Hon. Roanne 1. Mann, U.S.M.J.

              Plaintiff,

          v.                                   Civil Action No. 1 :06-cv-06415

DAVID A. TROPP,

              Defendant.

-------------------------------------------------------X

_____

### DAVID A. TROPP'S SUPPLEMENTAL BRIEF CONCERNING THE IMPACT OF THE FEDERAL CIRCUIT'S <u>EN BANC</u> AUGUST 13, 2015 <u>AKAMAI</u> DECISION UPON TRAVEL SENTRY'S MOTION FOR SUMMARY JUDGMENT BASED ON NON-INFRINGEMENT

_____

Goetz Fitzpatrick LLP
*Attorneys for Defendant*
*David A. Tropp*
One Penn Plaza, Suite 3100
New York, New York 10119
(212) 695-8100

Donald R. Dinan
Douglas Gross
Of Counsel

Dated:    October 26, 2015

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................. 4

I.    UNDER AKAMAI III, TRAVEL SENTRY IS NOT ENTITLED TO SUMMARY
      JUDGMENT OF NON-INFRINGEMENT ..............................................................4

      A.    New Standard For Direction and Control ....................................................4

      B.    Joint Enterprises ........................................................................................8

II.   THIS COURT IS OBLIGATED TO APPLY THE MOST RECENT  AKAMAI
      DECISION .........................................................................................................14

CONCLUSION............................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Akamai Technologies, Inc. v. Limelight Networks, Inc.,
786 F.3d 899 (Fed. Cir. 2015), reversed ...................................................................2

Akamai Technologies v. Limelight Networks, Inc.,
797 F.3d 1020 (Fed Cir 2015) (Akamai III) ........................................................ *passim*

Estate of Antonio v. Pedersen,
Index No. 5:11.cv-41, 2012 WL 6163190 (D. Vt. Dec. 11, 2012) ..................................8, 9, 11

BMC Res., Inc. v. Paymentech, L.P.,
498 F.3d 1373 (Fed. Cir. 2007)...................................................................................1

Eli Lilly and Co. v. Teva Parenteral Medicines, Inc.,
2015 WL 5032324, __ F. Supp. 3d __ (Aug. 25, 2015) ..........................................6, 7

Florida Power Corp. v. First Energy Corp.,
54 F. Supp.3d 860, 862 (N.D. Ohio 2014)...............................................................15

Geneva Pharm. Tech. Corp. v. Barr Labs Inc.,
386 F.3d 485 (2d Cir. 2004).....................................................................................9

Landgraf v. USI Film Products,
511 U.S. 244 (1994)...............................................................................................15

Limelight Networks, Inc. v. Akamai Technologies, Inc.,
134 S. Ct. 2111, 189 L. Ed. 2d 52 (2014) ..........................................................2, 6, 7

United States v. Seybold,
876 F.Supp. 991 (N.D. Ill. 1995) ............................................................................15

**Statutes**

35 U.S.C. §271(a) ...........................................................................................1, 2, 14

**Other Authorities**

Restatement of Torts ................................................................................................2, 8

**PRELIMINARY STATEMENT**

By order dated September 4, 2015, this Court directed Travel Sentry, Inc. ("Travel Sentry") and David A. Tropp ("Tropp") to provide supplemental briefing on the impact of the Federal Circuit's <u>en banc</u> decision in <u>Akamai Technologies v. Limelight Networks, Inc</u>., 797 F.3d 1020 (Fed Cir 2015) (<u>Akamai III</u>) established two new bases for finding that there is direct infringement under 35 U.S.C. §271(a) when the patented steps are performed by different entities. Travel Sentry is not possibly entitled to summary judgment of non-infringement. Rather, under this expanded set of circumstances when all steps of a claimed method are attributable to a single entity, it is Tropp who is entitled to summary judgment of infringement. At the very minimum, the two new bases for divided infringement raise issues of fact that prevent the grant of summary judgment to Travel Sentry.

Travel Sentry cannot forthrightly admit the importance of <u>Akamai III</u>. It argues that the law "remains fundamentally the same", <u>Travel Sentry Mem</u>. at 1, while inconsistently conceding that <u>Akamai III</u> articulated new bases for liability. <u>Travel Sentry Mem</u>. at 6, 7, 11. Dkt. No. Although admitting that <u>Akamai III</u> established a new test for liability, Travel Sentry contradicts itself and argues that <u>Akamai III</u> merely "adds a new factual example that meets the direction and control test…." <u>Id</u>. at 1. The Akimai III Court, contrary to Travel Sentry, did not simply reaffirm the analysis for divided infringement established in <u>BMC Res., Inc. v. Paymentech, L.P.</u>, 498 F.3d 1373 (Fed. Cir. 2007).

Contrary to Travel Sentry's minimization of the importance of <u>Akamai III</u>, this recent decision of the Federal Circuit broadly expands direct infringement when more than one actor is involved in practicing the steps. <u>Akamai III</u> established two new bases for divided infringement under section 271(a). It expanded direction and control liability to encompass "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step

or steps of a patented method and establishes the manner or timing of that performance." Akamai III at 1023. It also added liability for joint enterprise, stating that "where two or more actors form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor." Id. It borrowed its definition of joint enterprise from §491, comment b, of the Restatement (Second) of Torts:

(1)    An agreement, express or implied, among the members of the group;

(2)    A common purpose to be carried out by the group;

(3)    A community of pecuniary interest in that purpose, among the members; and

(4)    An equal right to a voice in the direction of the enterprise, which gives an equal right of control.

Akamai III at 1023.

This expansion of liability for direct infringement when multiple actors are involved did not occur in a vacuum. The United States Supreme Court, in reversing the Federal Circuit's *en banc* decision in Akamai, wrote of "the possibility that [the Federal Circuit] erred by too narrowly circumscribing the scope of § 271(a)" and suggested that the Federal Circuit would "have the opportunity to revisit the § 271(a) question . . . ." Limelight Networks, Inc. v. Akamai Technologies, Inc., 134 S. Ct. 2111, 2119, 189 L. Ed. 2d 52 (2014).

After remand, a panel of the Federal Circuit affirmed the grant of judgment of non-infringement Akamai Technologies, Inc. v. Limelight Networks, Inc., 786 F.3d 899 (Fed. Cir. 2015), reversed by Akamai III. Judge Moore, in dissenting from this panel opinion, wrote of the harm of the single entity rule that vitiated broad classes of patents and created a gaping loophole in infringement liability. Id. at 918-19 (Moore, J. dissenting). This insistence upon a narrow construction of a single entity rule improperly and unnecessarily rendered worthless an entire class of interactive method patents according to Judge Moore. Id.

2

Obviously it made no sense and eroded public confidence in patents for the Patent and Trademark Office to issue interactive patents that required multiple actors to participate if these patents could never be enforced. It was for this reason that the Federal Circuit, *en banc*, reversed the decision of the panel. The Supreme Court had noted that the Federal Circuit may have too narrowly defined direct infringement so the entire Federal Circuit, including Judge Moore, expanded divided direct infringement to incorporate the two new categories mentioned above. The Federal Circuit <u>en banc</u> wrote the "[s]ection 271(a) is not limited solely to principal-agent relationships, contractual arrangements, and joint enterprise, as the vacated panel decision held." <u>Id.</u> at 1023. <u>Akamai III</u> did not merely overrule the panel, it overruled the decisions that formed the predicate for the panel's decision. <u>Akamai III</u> at 1025 n. 3.

Travel Sentry argues that under the prior standards of direct infringement, both this Court and the Federal Circuit had held that there was no direction or control here by Travel Sentry over the Transportation Safety Administration ("TSA"), which performs the third and fourth patented steps. Obviously, it is not the superseded standard that governs, but the new standards. As further established in Tropp's motion for summary judgment of infringement, Travel Sentry is a direct infringer of Tropp's patents because it conditions participation in an activity and receipt of a benefit by both the licensed manufacturers and the TSA upon performing steps of the patented method and Travel Sentry establishes the manner and timing of the performance. All four factors for finding a joint enterprise are also met between Travel Sentry and the luggage and lock manufacturer licensees and between Travel Sentry and the TSA. There are agreements between Travel Sentry and, the luggage/lock manufacturer licensees and between Travel Sentry and the TSA, there is a common purpose, there is a community of pecuniary interest and there is

effectively an equal right to a voice in the direction of the enterprise which effectively gives, at

the minimum, an equal right of control.

## ARGUMENT

I. **UNDER <u>AKAMAI III</u>, TRAVEL SENTRY IS NOT ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT**

### A.   <u>New Standard For Direction and Control</u>

The Supreme Court did not suggest that the Federal Circuit consider that its definition of

direct infringement was too narrow and the Federal Circuit did not reverse the panel and add a

new test for direct infringement merely to address the unique factual circumstances present in

<u>Akamai III</u>. Rather, the obvious goal was to set a new, broad framework. The Federal Circuit

wrote:

> Today we outline the governing legal framework for direct infringement and
> address the facts presented by this case. In the future, other factual scenarios may
> arise which warrant attributing others' performance of method steps to a single
> actor. Going forward, principles of attribution are to be considered in the context
> of the particular facts presented.

<u>Akamai III</u> at 1023.

In <u>Akamai III</u>, the Federal Circuit upheld the jury's verdict in favor of plaintiff patent

holder, Akamai. There was substantial evidence that defendant infringer, Limelight, directed or

controlled its customers' performance of each remaining step of the claimed method, such that

all steps were attributable to Limelight. <u>Id.</u> at 1024-25. First, if customers wished to use the

Limelight product, they were obligated to engage in tagging and serving content, which was a

step of Akamai's patented claimed methods. This obligation for a customer to engage in a

patented step if it used the Limelight process proved that Limelight conditioned its customers'

use on performance of this patented step. Second, Limelight provides instructions to customers

on how to perform the method steps. Failure to follow Limelight's instructions would mean

customers could not use the product. Limelight's engineers worked with customers for installation and thereafter on an ongoing basis to help resolve problems. These instructions and assistance satisfied the requirement of Limelight establishing the manner and timing of its customers' performance, so that customers could avail themselves of the Limelight service only upon performance of the method steps.

The same applies here to Travel Sentry. For TSA to be able to use the Travel Sentry product it was obligated to engage in the third and fourth patented steps. That satisfies the requirement that Travel Sentry condition performance upon TSA's performance of the patented steps. Travel Sentry establishes the manner and timing of the TSA's performance of the third and fourth steps by distributing to the TSA information on how and when to use the passkeys, by engaging in promotion of the Travel Sentry system with the TSA, by providing the TSA with all necessary screener materials and by working with the TSA to distribute training materials to all checked baggage screening sites. Travel Sentry also develops and provides the TSA on an ongoing basis with operational information and works with the TSA on problem-solving. Under Akamai III, these instructions and assistance satisfy the requirement of establishing the manner and timing of TSA's performance. TSA can avail itself of the benefits of the Travel Sentry system only upon performance of the third and fourth method steps.

As to the manufacturer licensees, Travel Sentry fails to argue that this new Akamai III test for direction and control is inapplicable. It argues only that these licensees are not part of a joint enterprise. Travel Sentry limits its contention regarding the new direction and control test to the TSA. Yet, at the minimum, these issues generally raise issues of fact, Akamai III at 1023, even if here the facts weigh so heavily in Tropp's favor that he is the party entitled to summary judgment.

5

In a recent decision issued after <u>Akamai</u>, the District Court for the Southern District of Indiana, on remand from the Federal Circuit, found that the defendant drug company liable for inducement of infringement. <u>Eli Lilly and Co. v. Teva Parenteral Medicines, Inc.</u>, 2015 WL 5032324, __ F. Supp. 3d __ (Aug. 25, 2015). The claims of the patent carved a method of administering a chemotherapy drug with vitamins (folic acid). The issue was if the physicians who administered the drug directly infringed, than subjecting the drug company Teva liable for inducement. The last steps of the claimed method required the patents to take the vitamins for a seven day period before the administration of the chemotherapy. The issue was whether the physicians directed or controlled the patients' administration of the folic acid. *Teva's* defense was that the patients obtained and took the drug on their own and that no one could control how or when the patients would take the drug or if they would take it at all. <u>Id</u>. at *4.

The court, relying entirely on the Federal Circuit's <u>Akamai</u> decision, found that the patients' administration of the drug by themselves could be attributed to the physicians. The physicians specified both the manner and timing in detail, including the exact dose, that had to be taken daily, and that these directions were in exact accordance with Teva's labeling. The court found that what was relevant under the new <u>Akamai III</u> test was not whether the physicians "administered" the folic acid, but whether:

> ". . . the physician sufficiently directs or controls the acts of the patients in such a manner as to condition participation in an activity or receipt of a benefit in this case, treatment with pemetrexed in the manner that reduces toxicities-upon the performance of a step of the patented method and establishes the manner and timing of the performance. . . ."

<u>Id</u>. at *5.

Citing the Supreme Court in <u>Limelight</u>, 134 S. Ct. at 2117, the District Court noted that a court must assume that all steps of the asserted claims are being carried out. Thus, in this case, the Court must assume that the TSA is practicing the last steps of the asserted claim. <u>Id</u>. In <u>Eli</u>

6

<u>Lilly</u>, the court continued that the patient taking the vitamins is not merely a suggestion or a recommendation but a critical step in the patented method that has a specific purpose and direct impact on the outcome of the patented method. <u>Id</u>. The taking of vitamins to reduce harmful side effect. Taking folic acid in the manner specified is a condition of the patients' participation in the chemotherapy treatment as described by the patent and is necessary in order to receive the benefit of such treatment. If the patient does not carry out the final step, he or she will not receive the benefit of this treatment (reducing the risk of potentially fatal toxicities). The physician, according to the patented method, directs the manner and timing of the patients' ingestion of the folic acid and the patient must do so in order to receive the full benefit of the treatment. <u>Id</u>.

Again, the situation is almost the same in this case. The TSA must perform the last steps of the patented method in order to participate in the Travel Sentry method, otherwise Travel Sentry will not provide the keys and training and TSA will not receive the benefit, <u>i.e.</u> reduce theft, reduce claims, and satisfy public and political pressure for safe and secure luggage. Further, as the Court in <u>Eli Lilly</u> noted, a court cannot base a finding of non-infringement upon the mere possibility that some patients might not follow their physician's instructions. <u>Id</u>. Likewise, in this case, a finding of non-infringement cannot be made on the possibility that the TSA may not always follow the patented method. Rather the Court must look to the specific acts of Travel Sentry, including providing the keys and the training, and the MOU, to determine if all the patented steps are followed, whether it would infringe the asserted claims. In this case, there can be no question that it does.

Therefore, under the new test of direction and control, set forth by the Federal Circuit in *Akamai*, Travel Sentry directly infringes the asserted claims of the patented method, barring the entry of summary judgment for Travel Sentry.

## B.     Joint Enterprises

Alternatively, the Federal Circuit stated where two or more actors form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor. Akamai III, at 1023. The Federal Circuit set forth a four part test for joint enterprises, quoted previously.

The Federal Circuit took this four part test from § 491 ("Joint Enterprise") of Restatement (Second) of Torts. "A 'joint enterprise' is in the nature of a partnership, but is a broader and more inclusive term." Id. Comment (b). Comment (b) continues:

> A joint enterprise includes a partnership, but it also includes less formal arrangements for cooperation, for a more limited period of time and a more limited purpose. It includes an undertaking to carry out a small number of activities or objectives, or even a single one, entered into by members of the group under such circumstances that all have a voice in directing the conduct of the enterprise. The law then considers that each is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest.

Section 491 focuses on joint enterprise liability for automobile trips. In that context it explains the factor of equal right to a voice or equal right of control:

> In order that a joint enterprise may be found, there must be some additional factors which indicate such an equal voice, or equal right of control. If there is a common destination, a common purpose in the journey, a common pecuniary interest in that purpose, and the circumstances are such as to indicate a power to determine or change the route or the manner of driving by majority vote or by mutual agreement, the joint enterprise may be found, and the sharing of expenses is a factor of importance in leading to the conclusion. It is, in other words, a significant element taken together with others, but in itself is not controlling.

Section 491 was applied within this Circuit in Estate of Antonio v. Pedersen, Index No. 5:11.cv-41, 2012 WL 6163190 (D. Vt. Dec. 11, 2012). The plaintiff was the estate of a woman

killed on a snowmobile tour of the Mount Snow ski area and alleged that the Mount Snow ski

area was in a joint enterprise with the snowmobile company which had conducted the tour. The

Mount Snow ski area moved for summary judgment, alleging, *inter alia*, that it did not have

equal control over the snowmobile tours operated by the snowmobile company, and thus could

not be held liable for the death. In denying summary judgment, the District Court explained that

the fourth factor of the Restatement § 491(b) test, which requires an equal right to control,

allowed delegation of control or responsibilities:

> Although "[t]he right of control is . . . essential[,] . . . management of the
> enterprise may be delegated to one or more of the joint venturers." 2-41 Matthew
> Bender, Business Organizations with Tax Planning § 41.05[1] (2012) (updated
> version of 2 Zolman Cavitch, Business Organizations (cited by Winey, 636 A.2d
> at 751)). Indeed, the majority of jurisdictions find that parties need not share
> control equally in a joint venture. See House v. Mine Safety Appliances Co., 573
> F.2d 609, 620 (9th Cir. 1978) ("[C]ontrol need not be shared equally between
> members of a joint venture, but can be delegated to one member of the group."),
> overruled on other grounds by Warren v. U.S. Dep't of Interior Bureau of Land
> Mgmt., 724 F.2d 776 (9th Cir. 1984); Sturm v. United Servs. Auto Ass'n, 2012
> WL 2135356, at *4 (N.D. Cal. June 12, 2012) (explaining that, while members of
> a joint venture must have joint control, they may delegate that control to one or
> more venturers); Halloran v. Ohlmeyer Comms. Co., 618 F. Supp. 1214, 1219
> (S.D.N.Y. 1985) (holding "parties to a joint venture may choose to divide the
> responsibilities between themselves and defer . . . to each other's different areas
> of expertise."); Payton v. Abbott Labs, 512 F. Supp. 1031, 1036 (D. Mass. 1981)
> ("All that is required is that every party have some degree of input into the
> operation of the venture.").

Estate of Antonio at *10.

Although other states require a showing only of the majority of factors to establish a joint

enterprise, (Geneva Pharm. Tech. Corp. v. Barr Labs Inc., 386 F.3d 485 (2d Cir. 2004) (applying

New Jersey law), Vermont required a showing of all four factors. Estate of Antonio at *6. The

above quoted explication satisfied the requirement of equal right to a voice giving an equal right

of control.

As concerns the TSA, the MOU internally refers to itself as an "Agreement." See Ex. 10 to Dinan Affirmation, Dkt. No. 228. There is a common purpose carried out by the TSA and Travel Sentry to allow travelers to lock their luggage and have security from theft, while allowing access for the TSA to the contents of the luggage. The common purpose satisfies the security need of the TSA for access to luggage, and the goal of Travel Sentry and the luggage and lock manufacturers to sell a luggage system that allows the TSA access without cutting locks or smashing open suitcases. This Travel Sentry system serves the common purpose of the TSA, Travel Sentry and luggage manufacturers to allow unimpeded security access to the TSA while sparing luggage from destruction.

There is a community of pecuniary purpose in the joint enterprise. If Travel Sentry succeeds in selling its system, it obviously obtains a pecuniary benefit from sales. Yet the TSA also benefits in a reduction of liability for broken locks and luggage.[1] Travel Sentry provides passkeys "designed to permit TSA screeners to open checked luggage secured with Travel Sentry certified locks without breaking such locks." MOU ¶3. As to sharing losses, the TSA had to spend funds testing the Travel Sentry system, MOU ¶3, arranging to distribute the passkeys, MOU ¶3, ¶4(a) providing information and training manuals to TSA screeners on how to use the Travel Sentry system, MOU ¶3, second ¶4(c), integrating the Travel Sentry system into the TSA property management system, MOU ¶4(b); and, coordinating in public announcements with Travel Sentry, MOU ¶4(c). Consequently, the use of the Travel Sentry system by the TSA involved a significant expenditure of time and effort, which translates to a significant expenditure of funds. If the Travel Sentry lock failed, both Travel Sentry and the TSA would suffer pecuniary losses. If the Travel Sentry lock system did not work as advertised, both Travel

---

[1] In the last five years, the TSA paid $3,000,000 in damages for claims related to luggage. See Ex. 22 to Dinan Affirmation.

Sentry and the TSA would also share losses for destroyed locks and luggage, or for items stolen from luggage.

The negotiated MOU between Travel Sentry and the TSA meets the requirement for equal right to a voice in the direction of the enterprise, giving an equal right of control. There could have been no MOU unless both parties agreed to its terms. The right of either party to terminate the MOU on thirty days' notice, MOU ¶9, provides a practical right for each party to the MOU to have a voice of control or otherwise terminate the joint enterprise. Modifications of the MOU require mutual written consent. MOU ¶9. Travel Sentry provides instructions and necessary screening training manuals for the TSA to provide to its screeners. MOU ¶ 3, second ¶4(c). Both coordinate in public announcements. MOU ¶4(c). These provisions suffice to meet the fourth factor of the joint enterprise test. There is a common goal as a destination, a common purpose, a common pecuniary interest and a power to change by mutual agreement. That, by necessity, ultimate control over the TSA screeners is delegated to the TSA does not matter. Estate of Antonio, at *10. The TSA screeners are obligated to employ the Travel Sentry lock system as designed by Travel Sentry, otherwise the joint enterprise fails – the joint enterprise works only if both parties have a degree of input into that use of the Travel Sentry system by the TSA. Travel Sentry has the primary responsibility for use of its lock system and the TSA has primary responsibility for how its screeners operate, but that division of responsibilities is perfectly consistent with an equal voice giving an equal right of control.

Travel Sentry argues that there is no joint enterprise with the luggage and lock manufacturer licensees. First, Travel Sentry argues that there is no relationship between the licensees and the TSA. Travel Sentry Mem. at 10. That allegation is irrelevant. The Akamai III test is "where all steps of a claimed method are performed by or attributable to a single entity."

11

Id. at 1022. Since Travel Sentry is in a joint enterprise with the TSA and since it is in a joint enterprise with the licensed manufacturers, all steps of Tropp's claimed method are performed by or attributable to Travel Sentry. Travel Sentry's contention that even if it is in a joint enterprise with the TSA and in a joint enterprise with the licensed manufacturers, it can escape liability because the TSA and the licensed manufacturers are not in the same joint enterprise defies the logic of Akamai III. If TSA's infringing steps and the licensed manufacturers infringing steps are both attributable to Travel Sentry, then Travel Sentry has infringed all four steps of the patented method. Indeed, since Travel Sentry never contests that the steps of the licensed manufacturers are attributable to it under the expanded Akamai III direction and control test, the infringing steps of the licensed manufacturers are attributable to Travel Sentry whether or not these licensees are part of any joint enterprise.

Second, under the four part test joint enterprise test, the licensees are in a joint enterprise with Travel Sentry. The first factor is obviously met because there are express agreements between the licensees and Travel Sentry. The contention by Travel Sentry that these agreements must explicitly provide for a joint venture misstates the §491 test, which contains no such requirement. Second, there is a common purpose between Travel Sentry and the licensees to sell as much luggage and locks incorporating the Travel Sentry lock system as possible. For Travel Sentry to argue that there is no common purpose because Travel Sentry earns royalties for licensees selling products incorporating the Travel Sentry lock system whereas the licensees earn money directly from selling these products makes little sense. The common benefit to both in maximizing sales is irrefutable.

The third factor, a community of pecuniary interest in the common purpose is also met. Licensees would continue to pay royalties and renew license agreements only if the products sell.

The licensees pay a per lock basis. The more Travel Sentry locks sold by licensees, the more money made by Travel Sentry. S-16. If the Travel Sentry system fails to sell, Travel Sentry loses its license revenue and the licensees would have expended money manufacturing a product that does not sell. Accordingly, there both Travel Sentry and its licensees benefit if the licensees sell more products with Travel Sentry lock systems and both suffer losses if these products fail to sell.

The fourth factor, an equal right to a voice in the direction of the enterprise, giving an equal right if control is also met. Travel Sentry contends that it has no control or influence over a licensee, after the licensee receives a Travel Sentry license. Travel Sentry Mem. at 11. That argument begs the question, because Travel Sentry obviously has substantial control and influence through obligating the licensee to agree to the terms of the license agreement. As further described in Tropp's motion for summary judgment, that includes control through the trademark licenses S-15, S-21, control of sub-manufacturing, S-18, control of product standards, S-19, control of insurance standards, S-21, control of advertising and promotion, S-22, S-26, and control of the cylinder and passkey designs, S-27, S-28. Consequently, this substantial control that Travel Sentry has over its licensees suffices to establish at least equal control over the licensees in the joint enterprise. That responsibilities may be allocated does not negate this factor. In his motion for summary judgment, Tropp establishes that Travel Sentry's control is so predominant that the acts of the licensees are attributable to Travel Sentry under the direction and control tests, without any need to reach the joint enterprise test.

Travel Sentry, the licensed manufacturer, the lock and luggage manufacturers, and the TSA meet the joint enterprise tests and there is direct infringement. At the minimum, "[a]s with

13

direction and controls whether actors entered into a joint enterprise is a question of fact, reviewable on appeal for substantial evidence." <u>Akamai III</u> at 1023.

## II.     THIS COURT IS OBLIGATED TO APPLY THE MOST RECENT <u>AKAMAI DECISION</u>

Travel Sentry inconsistently argues that this Court is obligated to follow the 2012 decision of the Federal Circuit in <u>Travel Sentry</u> with regard to direct infringement while ignoring the reversal on induced infringement because that analysis was rejected by the Supreme Court in its <u>Limelight</u> decision. According to Travel Sentry, to the extent <u>Travel Sentry</u> is no longer good law on direct infringement, having been substantially superseded by <u>Akamai III</u>, this Court should ignore the substantial intervening changes in the law. To the extent <u>Travel Sentry</u> is no longer good law on induced infringement, Travel Sentry argues (correctly) that this Court is obligated to adhere to the changes in law.

Travel Sentry's apparent contention that this Court is not obligated to apply the law of direct infringement articulated in <u>Akamai III</u> evidence a plain misunderstanding of basic legal principles. The <u>Travel Sentry</u> affirmance of this Court's holding of no direct infringement was explicitly premised on <u>Akamai II</u>. When reversing the prior *en banc* decision, the Supreme Court specifically noted that the Federal Circuit may have erred by too narrowly circumscribing the scope of direct infringement and suggested that the Federal Circuit review the scope of direct infringement. In <u>Akamai III</u>, the Federal Circuit substantially expanded the scope direct infringement. The Federal Circuit overruled decisions which formed the basis for a narrower interpretation of direct infringement. <u>Id</u>. at 1025 n.3. It is baffling that Travel Sentry seems to contend that the superseded 2012 Federal Circuit scope of §271(a) controls, rather than the expanded 2015 scope.

14

None of Travel Sentry's citations concern what happens when the law changes during the course of a litigation. A claim rejected on appeal "binds the district court unless there has been an intervening change of law." See, e.g., United States v. Seybold, 876 F.Supp. 991, 993 (N.D. Ill. 1995), citing Page v. United States; 884 F.2d 300, 302 (7th Cir. 1989). An intervening change in law is a basis for a District Court to reconsider a prior decision. Florida Power Corp. v. First Energy Corp., 54 F. Supp.3d 860, 862 (N.D. Ohio 2014).

A court must apply the law in effect at the time it renders its decision unless there would be a manifest injustice or there is a statutory direction or legislative history to the contrary. See, e.g., Landgraf v. USI Film Products, 511 U.S. 244, 249 (1994). The general rule is that an appellate court must apply the law in effect at the time that it renders its decision. See, e.g., Fresenius USA, Inc. v. Baxter Intern., Inc., 721 F.3d 1330, 1345 (Fed. Cir. 2013). There is no injustice, statutory direction or legislative history here that would provide any basis to depart from the general rule. Both this Court, together with the Federal Circuit on any appeal, are obligated to apply current law, not the law as it existed in 2012. Tropp is entitled to rely on the expansion of the direction and control analysis and upon the joint enterprise test set forth in Akamai III. The 2012 analysis of the Federal Circuit in Travel Sentry is no longer valid because of the intervening changes in the law.

## CONCLUSION

Tropp is the holder of valid patents. Under Travel Sentry's overly circumscribed view of the law, these patents are worthless and unenforceable because infringement is divided between Travel Sentry and the TSA (and the licensees). Yet both the Supreme Court and the Federal Circuit recognized that the Federal Circuit's prior limitations of liability for direct infringement when multiple entities were involved were too stringent. Akamai III expands liability for this divided infringement to add an additional category for direction and control when the infringer

"conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance."  Akamai III at 1023. The Federal Circuit also added a basis for liability based upon joint enterprise.

With this expansion of liability for divided direct infringement, Travel Sentry's motion for summary judgment should be denied.

Dated:   New York, New York
          October 26, 2015

                              Respectfully Submitted,
                              GOETZ FITZPATRICK LLP

                              By: /s/ Donald R. Dinan
                                  Donald R. Dinan (DD-7985)
                                  Douglas Gross (DG-5984)
                                  Brian Farkas (BF-3418)
                                  One Penn Plaza, Suite 3100
                                  New York, New York 10119
                                  Tel:  (212) 695-8100
                                  *Attorneys for Defendant*
                                  *David A. Tropp*