UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
TRAVEL SENTRY, INC.,

                Plaintiff,

   -against-

DAVID A. TROPP,

                Defendant.
-----------------------------------------------------------------
DAVID A. TROPP,

                Plaintiff,

   -against-

CONAIR CORPORATION, et al.,

                Defendants.
-----------------------------------------------------------------x

MEMORANDUM & ORDER

06-cv-6415 (ENV) (RLM)
08-cv-4446 (ENV) (RLM)

VITALIANO, D.J.,

      These related patent suits have made their way around the ferris wheel once more. In the first action, Travel Sentry, and in the second, all defendants, have moved for summary judgment on grounds of noninfringement, invalidity, and 28 U.S.C. § 1498. In both actions, Tropp has filed cross-motions for summary judgment on infringement, which prompted motions to strike certain exhibits. For the reasons that follow, Travel Sentry's motion for summary judgment on noninfringement (in the first action) is granted; defendants' motions for summary judgment on noninfringement in (in the second action) is granted; Tropp's cross-motions for infringement are denied in both actions; and the motions to strike in both actions are denied as moot.

## Background

      A recitation of the spasmodic path that brought these motions before the Court, again, is

1



in order. The essential facts, set forth at length in *Travel Sentry, Inc. v. Tropp*, 736 F. Supp. 2d 623 (E.D.N.Y. 2010), *vacated and remanded by Travel Sentry, Inc. v. Tropp*, 497 F. App'x 958, 959 (Fed. Cir. 2012), remain unchanged. In highlight, David Tropp owns two patents that describe a method of airline luggage screening through the use of a dual-access lock, which enables a traveler to secure his or her luggage while still permitting it to be accessed by a luggage screening entity, such as the Transportation Security Administration ("TSA"), with a master key. Travel Sentry, Inc. ("Travel Sentry") owns a trademark that it licenses to lock and luggage manufacturers and distributors for use on dual-access luggage locks. On December 4, 2006, Travel Sentry filed a complaint against Tropp seeking a declaratory judgment of noninfringment, invalidity, and non-liability with respect to Tropp's patents; Tropp subsequently counterclaimed for infringement. On November 3, 2008, Tropp commenced a related action against more than a dozen luggage manufacturers and/or distributors who are licensed to use Travel Sentry's trademark (the "Conair defendants"), claiming infringement of the same patents subject in the first action.

On September 10, 2010, this Court awarded summary judgment to Travel Sentry on the issue of noninfringment in the 06-cv-6415 action, finding that there was no direct infringement because no single actor performed, or directed or controlled the performance of, all of the steps of Tropp's patents. *Travel Sentry*, 736 F. Supp. 2d at 639. Without direct infringement, neither could there be indirect infringement. *Id.* On August 5, 2011, the 08-cv-4446 action was dismissed, as barred by collateral estoppel. *Tropp v. Conair Corp.*, No. 08-CV-4446, 2011 WL 3511001, at *1 (E.D.N.Y. Aug. 10, 2011), *vacated and remanded by Tropp v. Conair Corp.*, 484 F. App'x 568, 569 (Fed. Cir. 2012).

Tropp appealed these decisions to the Federal Circuit, which, grounding its opinion on

2

the then-recently and after-decided *Akamai Technologies, Inc., v. Limelight Networks, Inc.* ("*Akamai II*")[1], 692 F.3d 1301 (Fed. Cir. 2012) (*en banc*), affirmed this Court's decision as to direct infringement, but reversed and vacated as to indirect infringement. *Travel Sentry*, 497 F. App'x at 967. The Federal Circuit held that the new *Akamai* test, contrary to prior case law, no longer required that all steps of a claimed method be performed by a single entity. *Id.* Given that this Court "did not determine whether a genuine issue of material fact existed as to the performance of all the claim steps—whether by one entity or several"—nor did it "analyze whether Travel Sentry had knowledge of Tropp's patent and induced others to perform the claim steps that Travel Sentry did not itself perform"—reversal and remand were in order. Following vacatur, the parties eventually moved again on remand for summary judgment on the now pending motions.

Prudentially, the Court stayed those motions while *Akamai* was appealed. The Supreme Court reversed *Akamai*, holding that "[t]he statutory text and structure and our prior case law require" a finding that where there has been no direct infringement of a method patent, there can be no indirect infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.* ("*Akamai III*"), 134 S. Ct. 2111, 2115, 189 L. Ed. 2d 52 (2014). *Akamai* was then remanded to the Federal Circuit, which revisited the case as a panel in *Akamai Technologies, Inc. v. LimelightNetworks, Inc.* ("*Akamai IV*"), 786 F.3d 899, 903 (Fed. Cir. 2015), and affirmed the trial court's holding of no direct infringement in favor of Limelight. But on August 13, 2015, the Federal Circuit issued a *per curiam* order granting *en banc* review. *Akamai Techs., Inc. v. Limelight Networks, Inc.* ("Akamai V"), 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*) (cert. denied, *Limelight*

---

[1] The appeal was initially heard as a panel before rehearing *en banc*. *See Akamai Technologies, Inc. v. Limelight Networks, Inc.* ("*Akamai I*"), 629 F.3d 1311, 1318 (Fed. Cir. 2010).

*Networks, Inc. v. Akamai Techs., Inc.*, 136 S. Ct. 1661 (2016)). That order also vacated the panel's May 13, 2015 decision. The *en banc* Court also wrote on the merits.

This time, the Federal Circuit re-affirmed the single entity rule for direct liability announced in *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) and *Akamai III*. It nevertheless found Limelight liable, under a direct infringement theory. Limelight performed all but the last step of Akamai's method patent regarding internet content delivery. The last step—the content tagging system—was performed by Limelight's customers. Those customers were contractually obligated to perform content tagging as a condition to receiving Limelight's service, and Limelight controlled the manner and timing of the customers' performance of the tagging step. *Akamai V* at 1025. As a result, *Akamai V* held that liability may be found under § 271(a) where "an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* at 1023.

All parties have submitted supplemental briefing on the impact of the Federal Circuit's *en banc* holding *Akamai V* on their outstanding motions.

## Discussion

That the travel path of this litigation is circular is not open to dispute. To the extent that the Federal Circuit reversed this Court's finding of noninfringement in these actions, that reversal was based on the Federal Circuit's holding in *Akamai II*. That holding was itself reversed by the Supreme Court in *Akamai III*, but subsequent to the mandate issued by the Court of Appeals in these actions. With the dust of precedent-setting litigation now settled, there can be no genuine disagreement, then, that the motions seeking a finding of indirect infringement must be denied in the absence of direct infringement.

4

The key question, then, is whether the line of *Akamai* cases—particularly the most recent Federal Circuit decision, *Akamai V*—has expanded the scope of direct infringement. Because this Court finds it has not, the analysis and conclusions set forth in the 2010 grant of summary judgment to Travel Sentry, and subsequent dismissal of the Conair action based on collateral estoppel, remain principally the same.[2]

The law of direct infringement post-*Akamai V* remains, certainly in relevant part, unchanged. "Infringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007). However, "where the actions of multiple parties combine to perform every step of a claimed method," those parties may be held jointly liable for direct infringement in the event that "one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008).

*Akamai V* does not disturb the *BMC Res./Muniauction* test. The court declared that "[w]e will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Akamai V*, 797 F.3d at 1022. While acknowledging it as imperfect analog, the Federal Circuit cited general principles of vicarious liability. *Id.* Acting through an agent, or contracting another to perform one or more steps of the claimed method, are

---

[2] In fact, the Federal Circuit expressly affirmed the findings in those two actions that there was no direct infringement. *Travel Sentry*, 497 F. App'x at 965-66. The conclusion that the law has not changed facilitates avoidance of the nettlesome question of whether the Court would be permitted under the mandate to disregard the affirmance by the Federal Circuit of the order granting partial summary judgment of no direct infringement to Travel Sentry and the Conair Defendants.

5

generally sufficient to hold a party liable for direct infringement even when some steps of the method are performed by another actor. *Id.* at 1023.

*Akamai V* added one additional circumstance: "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* In the *Akamai* saga, the patent at issue was a method for delivering content over the internet. *Id.* at 1024. Limelight, a content delivery service, performed all steps of the patented method except that its customers agreed to perform the last step, "tagging" and serving content, as a condition of their use of the service. *Id.* at 1024-25. Limelight's customers were sent a welcome letter with instructions on how to perform the tagging function, how to integrate Limelight's hostname into its webpages, and were assigned a Technical Account Manager, employed by Limelight, to lead the implementation of its service. *Id.* at 1025. "If Limelight's customers do not follow these precise steps, Limelight's service will not be available." *Id.* Moreover, "Limelight's engineers continuously engage with customers' activities." *Id.* In sum, "Limelight's customers do not merely take Limelight's guidance and act independently on their own." *Id.*

That hypothetical scenario—taking guidance and acting independently—is precisely what the TSA has done with Travel Sentry. Travel Sentry issued guidance to the TSA in the form of a single Memorandum of Understanding ("MOU"), agreeing to provide, *gratis*, master keys and training guidance on how to identify locks licensed through their trademark. The TSA merely agreed to test the keys, and, if it found them satisfactory, make a "good faith effort" to use the keys to open bags whenever the TSA found it "practicable" to do so. The TSA was under no obligation to use the keys, was absolved of any liability should the locks be damaged, and would suffer no consequences for failure to comply. There is no genuine material dispute about these

facts; there is simply no evidence that Travel Sentry had any influence whatsoever on the third and fourth steps of the method carried out by the TSA, let alone "masterminded" the entire patented process. The codicil to the existing law on direct infringement added by *Akamai V* is completely inapposite.

Tropp's effort to manufacture a resemblance to Limelight is unavailing. Plainly, there is no similarity between a binding contractual agreement in which a third-party customer must perform steps of the patented method in order to uphold its end of the bargain and the kind of nonbinding guidance and independent action set in motion here. Tropp's reliance on *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 126 F. Supp. 3d 1037, 1041 (S.D. Ind. 2015) is likewise without root. There, patients were required to take a seven-day course of vitamins, on their own, before commencing chemotherapy treatment. The physicians were found to sufficiently direct or control "the acts of the patients in such a manner as to condition participation in an activity or receipt of a benefit...." *Eli Lilly*, 126 F. Supp. 3d at 1042. Tropp argues that Travel Sentry's relationship to the TSA is similar, because in *Eli Lilly*, the physicians could not force patients to take the medication on the prescribed schedule, or at all, but were nevertheless held to direct and control the process. But if anything, this case undermines support for Tropp. The patients in *Eli Lilly* would be precluded from participating in the chemotherapy treatment if they did not follow the physicians' instructions to the letter. The TSA, on the other hand, faces no consequences from or by anyone for noncompliance if it choses at any time not to use the master keys, even if it did, at times, use the master keys. There is, bluntly, nothing to suggest that the TSA "needs" Travel Sentry to carry out the luggage screening mandated by Congress. It could design its own

7

keys, break the locks on the luggage, or screen the luggage in another way.³ It certainly does not take direction from Travel Sentry on the manner or timing of its luggage screening. In sum, the unusual circumstances of *Akamai* are not mimicked here.

Tropp's last-ditch argument is that, somehow, Travel Sentry and the TSA are engaged in a joint enterprise, and the Conair defendants and Travel Sentry are engaged in a joint enterprise, and the two "enterprises" together link all the entities for joint liability. In light of all else, this theory is absurd on its face. A joint enterprise requires proof of four elements:

1) an agreement, express or implied, among members of the group;
2) a common purpose to be carried out by the group;
3) a community of pecuniary interest in that purpose, among the members; and
4) equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Akamai V*, 797 F.3d at 1023 (citing Restatement (Second) of Torts § 491 cmt. c). Previously stated in the original summary judgment determination, "Tropp points to no evidence at all that could morph this relatively noncommittal 'understanding' between Travel Sentry and the TSA into a contract that renders Travel Sentry vicariously liable for the TSA's actions." *Travel Sentry, Inc.*, 736 F. Supp. 2d at 638. With no material facts in genuine dispute, the claim fails at

---

³ Tangentially, Tropp attempts to circumvent this defense by arguing the benefit prong—namely, that "the TSA will not receive the benefit, *i.e.* reduce theft, reduce claims, and satisfy public and political pressure for safe and secure luggage." Pl. Opp., 06-cv-6415, ECF Dkt. No. 229, at 7. This argument—which has no citation and is unsupported by any admissible evidence—strains belief. The TSA screens luggage because of the screening mandate of Congress, not because of any purported intangible benefits. The stated purpose on the TSA's MOU with Travel Sentry itself betrays such a grand set of motivations: "The purpose of this Agreement is to set forth terms by which Travel Sentry will provide TSA, at no cost, with 1,500 complete sets of passkeys for the TSA to distribute to field locations. These passkeys are designed to permit TSA screeners to open checked baggage secured with Travel Sentry certified locks without breaking such locks." Decl. of Donald R. Dinan, 06-cv-6415, ECF Dkt. No. 228, Ex. 10. No other purposes are stated, nor can they be reasonably read into the agreement.

8

the very first element.[4]

## Conclusion

For the foregoing reasons, as well as those set forth in *Travel Sentry, Inc. v. Tropp*, 736 F. Supp. 2d 623, which is adopted and incorporated in relevant part here, summary judgment is awarded to Travel Sentry and the Conair defendants. Tropp's cross-motions for infringement are denied, and the motions to strike are denied as moot.

The Clerk of Court is directed to enter judgments accordingly and close these cases.

So Ordered.

Dated: Brooklyn, New York
June 19, 2016

/s/ USDJ Vitaliano

ERIC N. VITALIANO
United States District Judge

---

[4] Nor is there a genuine dispute as to the absence of other elements of joint enterprise liability. Tropp's contentions to the contrary are without merit.

9