UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TRAVEL SENTRY, INC.,

        Plaintiff,        **MEMORANDUM AND ORDER**

   - against -        06-CV-6415 (ENV) (RLM)

DAVID A. TROPP,

        Defendant.
-----------------------------------------------------------X
DAVID A. TROPP,

        Plaintiff,        **MEMORANDUM AND ORDER**

   - against -        08-CV-4446 (ENV) (RLM)

CONAIR CORP., et al.,

        Defendants.
-----------------------------------------------------------X
VITALIANO, D.J.

    In the latest installment of this litigation that has aged for 15 years with multiple round trips to the court of appeals, Travel Sentry, Inc. ("Travel Sentry") has moved for summary judgment, contending that the subject patent claims owned by David A. Tropp ("Tropp") are ineligible for patent protection under 35 U.S.C. § 101. Seeking essentially the same relief, Travel Sentry has additionally moved for summary judgment under 35 U.S.C. § 103 and 28 U.S.C. § 1498. Tropp opposes all three motions, and in doing so, has filed certain exhibits which Travel Sentry now moves to strike.

    For the reasons that follow, Travel Sentry's motion for summary judgment under 35 U.S.C. § 101 is granted. Travel Sentry's motion to strike is granted with respect to documents material to the instant motion for summary judgment under § 101. As a result, Travel Sentry's

1

second and third motions for summary judgment are denied as moot.[1]

Background[2]

The Court presumes familiarity with the prolonged history and facts of this case, which are set forth at length in *Travel Sentry, Inc. v. Tropp*, 736 F. Supp. 2d 623 (E.D.N.Y. 2010), *vacated*, 497 F. App'x. 958, 959 (Fed. Cir. 2012), *remanded to* 192 F. Supp. 3d 332, 333 (E.D.N.Y. 2016). Neither facts nor procedural history will be needlessly repeated.

In 2003 and 2004, Tropp registered two patents that describe a method of airline luggage screening through the use of a dual-access lock, which enables a traveler to secure his or her luggage while still permitting it to be accessed by a luggage screening entity with a master key, a concept as old as the forgotten high school locker key. Tropp 56.1 ¶ 54; Ex. 7, Dkt. 293. Travel

---

[1] In a related case, *David A. Tropp v. Conair Corp. et al.*, No. 8-CV-4446 (ENV) (RLM), defendants moved for summary judgment on the grounds that they did not directly or indirectly infringe upon Tropp's patents. Because this decision ultimately finds that Tropp's patents are directed to ineligible subject matter under 35 U.S.C. § 101, the motions for summary judgment on a non-infringement basis are similarly denied.

[2] Except where otherwise noted, the facts set forth in this opinion are admitted by the parties. Travel Sentry's statement of undisputed material facts pursuant to Local Rule 56.1, submitted in conjunction with both of its pending motions for summary judgment in the Travel Sentry action, is referenced as "TS 56.1 ¶ __"; Tropp's Rule 56.1 Statement submitted in opposition to Travel Sentry's motions is referenced as "Tropp 56.1 ¶ __"; and Travel Sentry's Reply to Tropp's Rule 56.1 Statement is referenced as "TS Reply 56.1 ¶ __". In order to extricate the facts relevant to the Court's summary judgment inquiry from this panoply of statements, the Court applies the following principles: (1) any fact alleged in a moving party's Rule 56.1 statement, supported in fact by the record, and not specifically and expressly contradicted by properly supported allegations in the nonmoving party's Rule 56.1 statement, is deemed admitted by the nonmoving party; (2) any fact alleged in a moving party's Rule 56.1 statement, supported in fact by the record, which is specifically and expressly controverted by allegations in the nonmoving party's Rule 56.1 statement that are properly supported in fact by the record, is not deemed admitted by the nonmoving party; (3) any fact alleged in a moving party's Rule 56.1 statement that is not supported by citations to admissible evidence in the record is not deemed admitted by the nonmoving party; and (4) any party's assertion of a legal conclusion in the guise of an undisputed statement of fact is disregarded. *See* E.D.N.Y. Local Rule 56.1(b), (e); *Wojcik v. 42nd St. Dev. Project, Inc.*, 386 F. Supp. 2d 442, 448 & n.5 (S.D.N.Y. 2005).

Sentry owns a trademark that it licenses to lock and luggage manufacturers and distributors for use on dual-access luggage locks.  Luggage manufactured in accord with the lock standard licensed by Travel Sentry enables the traveling public to lock their checked baggage during travel while still allowing TSA to open the lock and search the bags as needed, and then re-lock them.  TS 56.1 ¶ 2; Tropp 56.1 ¶ 2.

Both rely in part on a dual-access lock, a type of lock that can be opened using a combination code and a master key.  TS 56.1 ¶ 27; Tropp 56.1 ¶ 5; Ex.7.  Neither Tropp's patents nor Travel Sentry's license breaks new ground, which certainly helps explain the similarities between them.  The origins of this type of lock can be traced back to, at least, the 1950s and 60s, when Corbin Russwin, Inc. first developed a "construction master key system." TS 56.1 ¶ 57; Tropp 56.1 ¶ 57.  Since then, in addition to Corbin Russwin, other companies such as Master Lock Company, LLC ("Master Lock") and Smarte Carte, Inc. ("Smarte Carte"), have been selling dual-access lock products for decades.  TS 56.1 ¶ 59; Tropp 56.1 ¶ 59.

Luggage makers were no strangers to the concept.  For example, in the 1990s Samsonite sold an "Epsilon" lock line, which included locks that incorporated both combination and key portions.  TS 56.1 ¶ 69; Tropp ¶ 69.  In the early 1960s, Samsonite sold a Streamlite product line which could be opened using a single master key.  TS 56.1 ¶ 70; TS Reply 56.1 ¶ 70.  The Samsonite key bore an indicia code of "170S" and could open almost every hard-set Samsonite case made from 1965 until 1999.  TS 56.1 ¶ 70; TS Reply 56.1 ¶ 70.  Samsonite also sold, in as early as 1992, an individual piece of luggage titled the Samsonite's Oyster luggage that could be opened using a combination or key portion and was accessible by a master key.  TS 56.1 ¶ 75; TS Reply 56.1 ¶ 75.  Rings holding baggage "master keys" were present at airports and used by airline baggage personnel since the 1970s.  TS 56.1 ¶ 76; TS Reply 56.1 ¶ 76.  The key rings

3

allowed airline baggage agents to unlock checked baggage whenever the need arose for security purposes. TS 56.1 ¶ 76; TS Reply 56.1 ¶ 76. Baggage personnel would utilize the key rings by matching the indicia on the key to a manufacturer or other logo on the bag or number on the lock in order to open the lock. TS 56.1 ¶ 77; TS Reply 56.1 ¶ 77. These key rings were in existence in many U.S. and non-domestic airports up until TSA was formed in 2001. TS 56.1 ¶ 78; TS Reply 56.1 ¶ 78.

The patents in dispute are: (1) U.S. Patent No. 7,021,537, filed November 12, 2003, and dated April 4, 2006 ("537 patent"); and (2) U.S. Patent No. 7,036,728, filed November 12, 2004 and dated May 2, 2006 ("728 patent").[3] Both are entitled "Method of Improving Airline Luggage Inspection." According to the patents, Tropp's invention addresses "a compelling and immediate need" for a method of inspecting luggage that does not create security risks associated with unlocked baggage and does not damage luggage or aggravate passengers. ′537 patent col.2 ll.21–24.

The 728 patent claims priority from and is a continuation-in-part of the 537 patent. The 537 patent contains four independent claims: 1, 9, 14 and 10. The 728 patent contains two independent claims: 1 and 10. Claim 1 of the ′537 patent is representative:

> A method of improving airline luggage inspection by a luggage screening entity, comprising:
>
> making available to consumers a special lock having a combination lock portion and a master key lock portion, the master key lock portion for receiving a master key that can open the master key lock portion of this special lock, the special lock designed to be applied to an individual piece of airline luggage, the special lock also having an identification structure associated therewith that matches an identification structure previously provided to the

---

[3] Familiarity with the Court's September 24, 2009 *Markman* decision, construing the claims of the 537 and 728 patents, is presumed. *See Travel Sentry, Inc. v. Tropp*, 661 F. Supp. 2d 280 (E.D.N.Y. 2009).

4

>> luggage screening entity, which special lock the luggage screening entity has agreed to process in accordance with a special procedure,
>
> marketing the special lock to the consumers in a manner that conveys to the consumers that the special lock will be subjected by the luggage screening entity to the special procedure,
>
> the identification structure signaling to a luggage screener of the luggage screening entity who is screening luggage that the luggage screening entity has agreed to subject the special lock associated with the identification structure to the special procedure and that the luggage screening entity has a master key that opens the special lock, and
>
> the luggage screening entity acting pursuant to a prior agreement to look for the identification structure while screening luggage and, upon finding said identification structure on an individual piece of luggage, to use the master key previously provided to the luggage screening entity to, if necessary, open the individual piece of luggage.

Tropp Br. at 4, Dkt. 294; *Travel Sentry, Inc. v. Tropp*, 661 F. Supp. 2d 280, 286 (E.D.N.Y. 2009).

Gratefully, at this point, the relevant facts admit to a shortcut. The parties agree that this claim is representative of the independent claims of both patents. Tropp Br. at 7; TS Br. at 3, Dkt. 289.[4] Because the claims do not differ in any material way for purposes of patent subject matter eligibility, a separate analysis of each is unnecessary. *See Mortgage Grader, Inc. v. First Choice Loan Services Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016) (noting that there was no

---

[4] Claim 9 of the 537 patent is identical to claim 1 except for substitution of the phrase "having a combination lock portion" with "having a first lock portion." Claims 14 and 18 of the 537 patent mirror claims 1 and 9, but substitute the phrase "matches an identification structure" with "corresponds with a corresponding identification structure." Claims 1 and 10 of the 728 patent also mirror claims 1 and 9 of the 537 Patent, but: (a) substitute the word "luggage" with "baggage;" (b) substitute the phrase "matches an identification structure" with "matches a corresponding identification structure;" and (c) substitute the phrase "the master key previously provided to" with "the special procedure previously agreed to by."

5

need to address the four asserted claims individually because there was no contention that the claims differed in any material way as to the patent-eligibility inquiry).

## Legal Standard

A grant of summary judgment as permitted by Rule 56 of the Federal Rules of Civil Procedure is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831 (Fed. Cir. 1984) (summary judgment on issue of validity); *Townsend Eng'g Co. v. HiTec Co.*, 829 F.2d 1086, 1089 (Fed. Cir. 1987) (summary judgment on issue of infringement). Summary judgment may be granted in favor of a moving party on an ultimate issue of fact where the party carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553 (1986). *Celotex* went on to explain, when "a party [] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." 477 U.S. at 322–23, 106 S. Ct. at 2552.

Beyond that, "[w]hen deciding issues in a patent case, a district court applies the law of the circuit in which it sits to nonpatent issues and the law of the Federal Circuit to issues of substantive patent law." *In re Omeprazole Patent Litig.*, 490 F. Supp. 2d 381, 399 (S.D.N.Y. 2007) (citing *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378–79 (Fed. Cir. 2005)); *see, e.g.*, *Desenberg v. Google, Inc.*, No. 09-CV-10121, 2009 WL 2337122, at *5 (S.D.N.Y. July 30, 2009).

6

Discussion

1. Motions to Strike

At the outset, the Court notes that the parties have engaged in a flurry of muddled motion practice such that the docket is now filled with corrected motions, stricken motions, and attempts to "renew" motions to strike from several years ago. After wading through the morass of filings on the docket, the Court determines that the only exhibit referenced in the pending motions to strike remotely relevant to the Court's analysis under 35 U.S.C. § 101 is the patent ineligibility section of the Declaration of Timothy Laabs ("Laabs report"). Dkt. 422. None of the other challenged documents are relevant to this decision; nor are those cited to in any of the briefs in the instant motion. As a result, the requests to strike these exhibits are collectively denied as moot. *See, e.g.*, *Fubon Ins. Co. Ltd. v. OHL Int'l*, No. 12-CV-5035, 2014 WL 1383604, at *11 (S.D.N.Y. Mar. 31, 2014); *Data Engine Tech. LLC v. Google LLC*, No. 14-CV-1115, 2020 WL 5411188, at *6 (D. Del. 2020). As for the Laabs report, the Court only addresses the patent ineligibility section. The other portions of the report are not relevant to the Court's analysis under 35 U.S.C. § 101, and Travel Sentry's motion to strike them is similarly denied as moot.

Analytically, as required by Rule 26, a party must "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705," and must make such disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(A) & (D); *DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x. 378, 381 (2d Cir. 2012). In deciding whether to exercise discretion to preclude evidence submitted in violation of Rule 26(a), courts in this Circuit consider: "(1) plaintiffs' explanation for their failure to comply with the disclosure requirement; (2) the importance of the testimony of the potentially precluded witness; (3) the prejudice suffered by the opposing party

7

as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *BF Advance, LLC v. Sentinel Ins. Co., Ltd.*, No. 16-CV-5931, 2018 WL 4210209, at *6 (E.D.N.Y. Mar. 20, 2018) (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

The parties quibble over whether the Laabs report, which was disclosed for the first time in Tropp's opposition brief, exceeds the scope of expert opinions permitted by the March 4th discovery order, ("the March 4th Order"). At that time, Magistrate Judge Roanne L. Mann, who had the laboring oar in the pretrial management of this case, addressed whether discovery should be reopened in advance of yet another round of dispositive motions. Judge Mann only permitted limited fact discovery—taking care to expressly note that Tropp's demands must be "narrowly drawn" as to prevent abuse of this limited opportunity—and declined to reopen expert discovery prior to the resolution of the upcoming dispositive motions. She noted, however, that this ruling "[did] not preclude Tropp, in opposing summary judgment, from proffering expert opinions that reference *newly exchanged supplemental discovery*." Mem. and Order dated Mar. 4, 2020 at 3, Dkt. 398 (emphasis added). That is, new expert discovery was expressly prohibited unless it was tethered to new fact discovery concerning events occurring since May 28, 2013. *Id.*

Contrary to Tropp's argument here, the plain language of the March 4th Order leaves no room for doubt; it clearly states that opinions were solely permitted on new *discovery* not new *theories. Id.* Consequently, Judge Mann's directive is fatal to Tropp's proffer. The patent ineligibility section in the Laabs report, plainly and unmistakably, violates the Court's order. It contains not a single reference or rebuttal to any new discovery. Instead, the report opines on the purported advantages of Tropp's claims and makes legal conclusions as to their genericness. He bases these declarations primarily on the patent claims themselves—claims which have been at

8

the heart of this case from the very beginning.

Another stumbling block to the report's admissibility: it primarily offers impermissible legal conclusions disguised as opinions about facts offered to support legal conclusions. *See, e.g.*, Laabs report ¶ 79 ("[I]t is my opinion that Mr. Tropp's patent claims include steps that were not routine, well-known, or conventional at the time of invention."), ¶ 82 ("In my opinion, Mr. Tropp's claimed processes provide an inventive concept[.]"), ¶ 86 ("Travel Sentry's oversimplification of the claims and their inventive concept is incorrect.").

In short, whether Tropp's claims are patent eligible because they contain non-generic elements or contain an inventive concept are questions of law reserved to the Court's province. Laabs's statements would impermissibly intrude upon that province. *See, e.g.*, *ICON Health & Fitness, Inc. v. Polar Electro Oy*, 243 F. Supp. 3d 1229, 1241–42 (D. Utah 2017) (striking expert report because "patent-eligible subject matter is a question of law" and the report's "legal conclusions invade the province of the Court"); *Genband US LLC v. Metaswitch Networks Corp.*, No. 14-CV-33, 2016 WL 98745, at *3 (E.D. Tex. Jan. 8, 2016) ("The Court is responsible for deciding disputed questions of law, and the Federal Circuit has consistently disfavored reliance on expert testimony as the basis for legal conclusions.") (striking an expert's opinion on subject matter eligibility because it did nothing more than analyze the law and offer legal conclusions).

Nor do any of the remaining factors countenance against striking the ineligibility section of the Laabs report. The testimony is not important, which Tropp himself concedes. *See* Tropp Br. at 8 n. 3 ("Tropp need not rely on any expert testimony to defeat Travel Sentry's motion."). Nor need the Court rely on the Laabs report in deciding subject matter eligibility under 35 U.S.C. § 101. *See, e.g.*, *Mortgage Grader*, 811 F.3d at 1325–26 ("[T]he court did not rely on them in its

9

§ 101 analysis. Instead, in making its patent-eligibility determination, the district court looked only to the claims and specifications of the patents-in-suit."); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 991 n.4 (Fed. Cir. 1995) ("[a] patent law expert's opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all" (internal citations omitted)); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1564 (Fed. Cir. 1988) ("an expert's opinion on the legal conclusion of obviousness is neither necessary nor controlling"). And even if the Court were to consider the expert report, it would not change the Court's analysis. A single report does not necessarily raise a genuine issue of material fact. *See Mortgage Grader*, 811 F.3d at 1325–26 (collecting cases). Further, as mentioned, the Report merely rehashes many of Tropp's legal arguments in its opposition brief and makes generalized legal conclusions based on the patent claims already available to the Court.

The third and fourth factors also weigh in favor of preclusion. Allowing the ineligibility section of the Laabs report would prejudice Travel Sentry since it has not been given the opportunity to depose Tropp's expert or offer a rebuttal expert. *See BF Advance*, 2018 WL 4210209, at *7; *Richman v. Respironics, Inc.*, No. 8-CV-9407, 2012 WL 13102265, at *11 (S.D.N.Y. 2012) (post-discovery expert disallowed in long and protracted litigation with pending summary judgment motions; continuance would cause prejudice). Accordingly, the patent ineligibility section of the Laabs report is ordered stricken.

2. Patent Ineligibility[5]

---

[5] Tropp's brief inaccurately states that four years ago the Court considered and rejected Travel Sentry's argument that Tropp's patent are invalid under 35 U.S.C. § 101. In actuality, the Court merely denied Travel Sentry's request to submit supplemental briefing regarding the Supreme Court's decision in *Alice Corp.*, finding them unnecessary at the time given the already pending motions for summary judgment. The Court ultimately granted Travel Sentry's motion for summary judgment solely on non-infringement grounds and has not previously addressed any ineligibility arguments under § 101. *See Travel Sentry*, 736 F. Supp. 2d at 623.

10

Section 101 of the Patent Act defines patent-eligible subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has long-recognized, however, implicit exceptions to this provision: "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 216, 134 S.Ct. 2347, 189 L. Ed. 2d 296 (2014) (internal quotation marks omitted). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. V. Prometheus Labs., Inc.*, 566 U.S. 66, 86, 132 S. Ct. 1289, 1293, 182 L. Ed. 2d 321 (2012). "'[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws." *Alice Corp.*, 573 U.S. at 216 (quoting *Mayo*, 132 S. Ct. at 1923). Given the objectives of its statutory mission, it is not surprising that "[p]atent eligibility under § 101 is a pure question of law." *Iron Gate Security, Inc. v. Lowe's Companies, Inc.*, No. 15-CV-8814, 2016 WL 4146140, at *5 (S.D.N.Y. 2016) (internal quotation marks omitted).

To distinguish ineligible patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts, the Supreme Court has articulated a two-part test. *Alice Corp.*, 573 U.S. at 217. First, courts must determine whether the claims at issue are directed to one of those patent-ineligible concepts. *Id.* Second, if and only if the answer to the first question is yes, courts must next consider the elements of each claim, both "individually and as an ordered combination," to determine whether additional elements "transform the nature of the claim" into a patent-eligible application. *Id.* Step two of this test has been described as a search for an "inventive concept"—*i.e.* an element or

combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217–218 (internal quotation marks omitted).

      a. Abstract Idea

Travel Sentry contends that Tropp's patent claims are directed to an abstract idea. "The 'abstract ideas' category embodies the longstanding rule that an idea of itself is not patentable." *Id.* (internal quotation marks and alterations omitted).

"The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry. Rather, both [the Federal Circuit] and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). In addition, the Federal Circuit has articulated some other guiding principles. For instance, "fundamental economic practice[s] long prevalent in our system of commerce," "longstanding commercial practice[s]" and "method[s] of organizing human activity" are ineligible abstract ideas. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed Cir. 2016). In contrast, claims that purport to improve the functioning of the technology itself or improve an existing technological process are likely not directed towards an abstract idea. *Enfish*, 822 F.3d at 1335. That is, courts should examine whether the disputed patents "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

Here, the Court finds that Tropp's claims are directed to an ineligible abstract idea, namely the application of dual-access locks to airport luggage inspection. The Court agrees with Travel Sentry that Tropp's method patents have essentially described the basic steps of using and marketing a dual-access lock for luggage inspection, a long-standing fundamental economic practice and method of organizing human activity.

Tropp's main contention is that Travel Sentry has cast his claims in far too general a light, and that his claims actually describe specific equipment, a specific method of marketing, and specific arrangements with screening entities. Tropp Br. at 8–9.[6] He points to the patent language as proof, noting that the language explains that the patent involves a "special lock" with an "identification structure" that will be subject to a "special procedure" with the luggage entity that has the master key to open the "special lock." *Id.* But the cited language disproves Tropp's very point—they demonstrate that his claims are not specific at all; rather they involve generic and vague descriptions and an over-reliance on the word "special" without anything more. Notably absent from the patent claims are any technical specifications or concrete improvements. The methods described—"special procedure," "prior agreement," "marketing . . . in a manner that conveys"—are neither complex nor specific. The cited language simply describe an idea that has for a long time been incorporated in other uses.

Tropp next contends that his claims affect the "physical world" and as a result, should not be held as abstract or invalid under § 101. Tropp Br. at 11. The argument is foreclosed. The Federal Circuit has rejected this overly simplistic way of analyzing abstract ideas. *See Solutran,*

---

[6] Tropp's brief also includes a cursory throw-away line that his claims "do not preempt all marketing, selling, and inspecting luggage locks at airports." Tropp Br. at 9. No further briefing has been provided on this issue, nor did Travel Sentry mention preemption in its opening or reply brief. As such, the Court will not separately address the issue of preemption.

*Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) ("Contrary to Solutran's arguments, the physicality of the paper checks being processed and transported is not by itself enough to exempt the claims from being directed to an abstract idea."); *see also In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1161 (Fed. Cir. 2018) ("[T]he abstract idea exception does not turn solely on whether the claimed invention comprises physical versus mental steps.").

Simply put, the fact that Tropp's claims involve physical and tangible components does not change the conclusion that his claims are directed to an abstract idea. The very cases Tropp cites to help illuminate the difference between an abstract idea with physical components and a concrete claim that alters an underlying technology, and proves the counterpoint. For example, in *Carrum Techs., LLC v. BMW of N. Am. LLC*, the Court noted that the patent, an adaptive cruise control system with lateral acceleration sensors that change vehicle control, was not abstract because it was "directed to a physical system operating in three-dimensional space that, when certain conditions are met, physically impacts the speed of a moving object." No. 18-CV-1645, 2019 WL 1779863, at *3 (D. Del. Apr. 23, 2019). Similarly, in *Jaguar Land Rover v. Bentley Motors Ltd.*, the patents at issue made a technological improvement that "physically changes the subsystems of the vehicle." 18-CV-320, 2019 WL 2712288, at *9 (E.D. Va. 2019). In other words, the patents at issue actually changed how a physical object, like a luggage lock, operates by improving the underlying technology. In comparison, Tropp's claims are not directed towards improving how a physical object like a car operates; instead, they are directed at improving the economic practice of luggage inspection. As this abstract utility, Tropp's claims resemble other claims that have involved physical parts but have ultimately been found to be directed to nothing more than an ineligible abstract idea. *See, e.g., Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018) (holding that patent claim

14

which purported to improve self-verifying voting systems was directed to the abstract human activity of voting despite describing physical components such as ballots); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1371 (Fed. Cir. 2017) (method patent using physical bankcards to improve fare systems in mass transit was directed to the abstract concept of paying for a subway or bus ride with a credit card); *In re Smith*, 815 F.3d 816 (Fed. Cir. 2016) ("method of conducting a wagering game" using a deck of playing cards was drawn to an abstract idea).

Bluntly, Tropp's claims are not unlike many other ineligible claims which purport to improve a long-standing economic practice and rely on generic technology. *See, e.g.*, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093–95 (Fed. Cir. 2016) (holding that patent claims "purport[ing] to accelerate the process of analyzing audit log data" with general purpose computing technology did not describe patent eligible subject matter); *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*, 351 F. Supp. 3d 753, 760 (D. Del. 2019).

Recognizing that inquiries regarding a patent ineligibility challenge are fact intensive, analysis of the invalidation of a patent claim cut from similar cloth should prove helpful. For example, in *SP Plus Corp.*, the district court invalidated two patents, which allegedly created a "novel apparatus" of a self-releasing parking boot, because they were directed to the abstract idea of expediting the vehicle's release from an immobilization device via self-service. The Court noted that while the patent streamlined the tedious and annoying process of waiting for a parking attendant to release an immobilized vehicle from a parking boot, it was ultimately directed to improving a fundamental human activity. *SP Plus Corp. v. IPT, LLC*, No. 16-CV-2474, 2017 WL 2226240, at *10 (E.D. La. 2017), *aff'd*, 706 F. App'x 688 (Fed. Cir. 2017). It

15

was all the more telling that the patent claims described the boot and application method with generic terms such as "unique code" and "remote computer system." *Id.* Likewise, Tropp's patents attempt to alleviate the hassle of cut baggage locks. And while applying dual-access locks to luggage inspection may help streamline a tedious process, at bottom, the method merely describes the marketing and use of generic technology towards the fundamental economic practice of luggage inspection. Simply adding adjectives such as "special" and "specific" throughout the claims and briefing does not persuade otherwise. Therefore, the Court finds that Tropp's patents are directed to patent-ineligible subject matter.

      b. Inventive Concept

Having found that Tropp's claims are directed to an abstract idea, the Court must now "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 573 U.S. at 221 (internal quotations omitted). "A claim that recites an abstract idea must include additional features to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* (internal quotations omitted). "If a claim's only inventive concept is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) (internal quotation marks omitted). Recitation of generic functions of existing technology are similarly non-inventive, *see Affinity Labs of Tex. LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016), and the "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea," *In re TLI Comms. LLC Patent Lit.*, 823 F.3d 607, 613 (Fed. Cir. 2016). On the other hand, claims that "effect an improvement in any other technology

16

or technical field" may qualify as an inventive concept.[7] *Alice Corp.*, 573 U.S. at 225.

Here, no inventive concept exists to save Tropp's claims. Tropp's claims simply describe a well-understood and conventional device, a dual-access lock, and incorporates it with the fundamental economic practice of baggage inspection at airports. This is precisely the type of claim that has been rejected by courts as ineligible under § 101. *See, e.g.*, *Alice*, 134 S.Ct. at 2358 ("Stating an abstract idea while adding the words 'apply it with a computer' simply combines these two steps, with the same deficient result."); *Becton Dickinson and Co. v Baxter Intern., Inc.*, 127 F. Supp. 3d 687, 694 (W.D. Tex. 2015), *aff'd*, 639 F. App'x. 652 (2016) (holding ineligible remote viewing technology to supervise pharmacy employees because it "merely [applies] existing technology to the abstract and arguably age-old process of supervising and verifying the work of a nonpharmacist . . . rather than having created a technological innovation"); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (finding no inventive concept in CET's use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry such as scanning and digitizing information).

Tropp again belabors the fact that there are details, such as an "identification structure," "special procedure," and "manner" of marketing the "special lock," that prove the non-routine and non-conventional nature of this claim. But, as mentioned already, Tropp's arguments only highlight the generic nature of these alleged details. Simply adding the adjective "special"

---

[7] "The difference between what the second step of *Alice* examines, and that which a court would examine in analyses under §§ 102 and/or 103, is that step two of *Alice* is limited to claimed benefits and improvements, versus true novelty or obviousness as measured against prior art." *Verint Systems Inc. v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190, 199 (S.D.N.Y. 2016).

throughout a claim does not create an inventive concept.

Tropp also argues, albeit briefly, that regardless of whether the locks are "conventional" "implementing a well-known technique with particular devices in a specific combination . . . can be inventive." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019). While this is certainly true, there is no evidence of that inventive combination here. The claim combination of a dual-access lock with an indicia of some sort, described using its generic functions, to the well-known technique of inspecting luggage lacks anything inventive. Nor does adding a generic "prior agreement" element or a routine marketing element create an inventive combination. *See Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 716 (Fed. Cir. 2014) (adding routine steps to the advertising process does not transform an abstract idea into patent-eligible subject matter). It is a cold, hard fact that Tropp's proffered "combination" does not significantly deviate from the use of dual access locks and master key rings already available on the market. TS 56.1 ¶¶ 59, 61, 66, 70, 71, 74; Tropp 56.1 ¶¶ 59, 61, 66, 70, 71, 74; *compare Cellspin Soft*, 927 F.3d at 1318 (finding that because Cellspin had pointed to evidence showing how its implementation of Bluetooth using a two-step, two-device structure had not been implemented in a similar way, changed the order of data transmission to make data capture devices smaller, cheaper, and with less hardware and software, there was an inventive concept that added "significantly more" than "merely apply[] an abstract idea to a 'particular technological environment'").

The Court is also unpersuaded that any of the purported advantages and improvements of Tropp's claim demonstrate anything inventive. Tropp contends that his claims provide a number of improvements in the field of luggage screening that go beyond merely increasing the efficiency of the luggage screening process such as creating a less intrusive and more

18

comfortable search for the passenger and ensuring that the "special lock" need not be broken. Tropp Br. at 15.[8] What Tropp has described, however, is simply the advantages of having a dual access lock with a master key provided to baggage personnel during luggage inspection. And while there are certainly advantages to having this combination, there is nothing inherently inventive in applying this conventional technology to this particular environment. Tropp does not, nor can he, claim to have invented any specialized technology to perform any of these functions.

In sum, there is no evidence that any of the elements of Tropp's claims, either individually or as an ordered combination, contain an inventive concept sufficient to save his patent claims from ineligibility. Consequently, his claims are patent ineligible under 35 U.S.C. § 101.

---

[8] Tropp also claims that Travel Sentry made several admissions about the numerous advantages to Tropp's claimed invention in its other motions for summary judgment. But the evidence cited refers to Travel Sentry's claims about its own system and general improvements in efficiency to the luggage screening process in the context of 28 U.S.C. § 1498. The cited paragraphs are not, as Tropp attempts to characterize them, admissions about Tropp's claims. Further Tropp's arguments are unpersuasive since, as mentioned, arguments about improving the efficiency of methods of organizing a human activity, such as luggage inspection, do not equate to an innovative concept.

<u>Conclusion</u>

For the foregoing reasons, the Court concludes that Tropp's claims are patent ineligible under 35 U.S.C. § 101. Travel Sentry's motions to strike are granted in part with respect to the patent ineligibility section of the Laabs report and denied as moot in all other respects. The remaining motions for summary judgment are similarly denied as moot. The Clerk of Court is directed to enter judgment accordingly in each case and to close both cases.

 So Ordered.

Dated: Brooklyn, New York
       March 14, 2021

                                            /s/ ENV
                                          ERIC N. VITALIANO
                                          United States District Judge